No. 15-2849

===

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

===

ROBERTO G. ALAMO,

*Plaintiff-Appellant*,

v.

THE CITY OF CHICAGO,
CHARLIE BLISS, and
PATRICK STEFAN,

*Defendants-Appellees.*

===

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 12-cv-04327
The Honorable Sharon Johnson Coleman, District Judge

―――――――――――

# BRIEF AND REQUIRED SHORT APPENDIX
# OF PLAINTIFF-APPELLANT

―――――――――――

Douglas B. Harper
The Law Office of Douglas B. Harper
70 West Madison Street, Suite 1400
Chicago, Illinois 60602
(312) 214-2454

*Attorney for Plaintiff-Appellant*
ROBERTO G. ALAMO

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 15-2849

Short Caption: Roberto G. Alamo v. The City of Chicago, et. al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]**    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Roberto G. Alamo

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

The Law Office of Douglas B. Harper

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

N/A

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ Douglas B. Harper    Date: April 27, 2016

Attorney's Printed Name: _____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☒ **No** _____

Address: The Law Office of Douglas B. Harper

70 West Madison Street, Suite 1400, Chicago, IL 60602

Phone Number: (312) 214-2454    Fax Number: (312) 212-4102

E-Mail Address: douglasharper@dbharperlaw.com

rev. 01/15 GA

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A).   Ethnic Name-calling and Physical Violence . . . . . . . . . . . . . . . . 3

    B).   More Violence and Chief Chickorotis's Request
        Not to Involve the Police . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C).   Alamo's Medical Leave and the Hurdles in
        Returning to Work . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1).   The First Hurdle . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        2).   The Second Hurdle . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        3).   The Third Hurdle . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        4).   The Fourth Hurdle and the EEOC Charge . . . . . . . . . . . 7

        5).   The Fifth Hurdle and the Underlying Litigation . . . . . . 7

        6).   The Sixth Hurdle . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        7).   The Seventh Hurdle . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D).   The Subsequent Proceedings in the District Court . . . . . . . . . . 8

    E).   The Rule 12(b)(6) Motion to Dismiss . . . . . . . . . . . . . . . . . . . 9

        1).   Defendants' Motion and Arguments . . . . . . . . . . . . . . . 9

        2).   Alamo's Response . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        3).   Defendants' Reply . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    F).   The Judgment Order Now Being Appealed . . . . . . . . . . . . . . . 10

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    I.    Count I States a Claim for Title VII Hostile
        Work Environment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        A.    The harassment was severe because it involved
            the unambiguously racial epithets, "spic"
            and "fucking Puerto Rican" . . . . . . . . . . . . . . . . . . . . . . . 14

        B.    The harassment was severe because it involved
            ethnically motivated physical violence against Alamo . 15

        C.    The harassment was severe because it involved
            ethnically motivated physical violence to Alamo's
            personal property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        D.    The District Court relied, in part, on the wrong
            standard, that "only a hellish workplace is
            actionable as a hostile work environment", and
            that standard should be expressly overruled . . . . . . . 18

    II.    Count II states a Claim for Title VII Disparate Treatment . . 22

        A.    Excessive detailing is an adverse employment
            action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        B.    The hurdles in returning to work were imposed
            in a manner inconsistent with lawful conduct . . . . . . . 24

    III.    Count III States a Claim for Title VII Retaliation . . . . . . . . . 28

        A.    The hurdles in returning to work were imposed
            in a manner inconsistent with lawful conduct . . . . . . . 28

        B.    To the extent causation is required at the pleading
            stage, there is a causal link between the hurdles in
            returning to work and the harassment . . . . . . . . . . . . . 28

    IV.    Count IV States a Claim Under 42 U.S.C. § 1983 . . . . . . . . . 30

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CIRCUIT RULE 30(d) STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

ATTACHED REQUIRED SHORT APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . .

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal* ("*Iqbal*"),
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

*Baskerville v. Culligan Intern. Co.*,
50 F.3d 428 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bell Atlantic Corp. v. Twombly* ("*Twombly*"),
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 25

*Brill v. Lante*,
119 F.3d 1266 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Brooks v. Ross*,
578 F.3d 574 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27

*Brown v. Shinseki*,
892 F.Supp.2d 1019 (N.D. Ill. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Burrell v. United Parcel Service, Inc.*,
__ F.Supp.3d __, 2016 WL 612854 (N.D. Ill. Feb. 16, 2016) . . . . . . . . . . . . 22

*Carlson v. CSX Transportation, Inc.*,
2013 WL 869762 (S.D. Ind. March 5, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Carlson v. CSX Transportation, Inc.*,
758 F.3d 819 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21, 28

*Cerros v. Steel Technologies, Inc.*,
288 F.3d 1040 (7th Cir. 2002) ("*Cerros I*") . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*Cerros v. Steel Technologies, Inc.*,
398 F.3d 944 (7th Cir. 2005) ("*Cerros II*") . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Chaparro v. City of Chicago*,
47 F.Supp.3d 767 (N.D.Ill. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Conley v. Gibson*,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Daniels v. Essex Group, Inc.*,
937 F.3d 1264 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Dear v. Shinseki*,
578 F.3d 605 (7th Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*EEOC v. Ceisel Masonry, Inc.*,
594 F.Supp.2d 1018 (N.D. Ill. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Esquivel v. International Union of Operating Engineers, Local 150*,
573 F.Supp.2d 1052 (N.D. Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Eversole v. Spurlino Materials of Indianapolis, LLC.*,
804 F.Supp.2d 922 (S.D. Ind. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ezell v. Potter*,
400 F.3d 1041 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Ford v. Minteq Shapes and Services, Inc.*,
687 F.3d 845 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Harris v. Forklift Systems, Inc.*,
510 U.S. 17 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

*Hatchett v. Shinseki*,
957 F.Supp.2d 960 (S.D. Ind. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hostetler v. Quality Dining, Inc.*,
218 F.3d 798 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Huri v. Office of the Chief Judge of the Circuit Court of Cook County*,
804 F.3d 826 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23, 30

*Jackson v. County of Racine*,
474 F.3d 493 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

*Jansen v. Packaging Corp of America*,
123 F.3d 490 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jenkins v. Shinseki*,
641 F.Supp.2d 754 (C.D. Ill. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Johnson v. Revenue Management Corporation,*
169 F.3d 1057 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Larry v. Bagcroft Papercon I, LLC.,*
933 F.Supp.2d 1050 (N.D. Ill. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lavalais v. Village of Melrose Park,*
734 F.3d 629 (7th Cir. 2013)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24

*Lee v. City of Chicago,*
330 F.3d 456 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lewis v. City of Chicago,*
No. 98 C 5596, 2005 WL 693618 (N.D. Ill. Mar. 22, 2005) . . . . . . . . . . . . . . 4

*Luevano v. Wal-Mart Store, Inc.,*
722 F.3d 1014 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22, 29

*McCauley v. City of Chicago,*
671 F.3d 611 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27

*Monell v. Department of Social Services,*
436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Oyebad v. Boston Scientific Corp.,*
955 F.Supp.2d 920 (S.D. Ind. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Perry v. Harris Chernin, Inc.,*
126 F.3d 1010 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Quinones v. Szorc,*
771 F.2d 289 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Randolph v. LaRue D. Carter Memorial Hospital,*
670 F.Supp.2d 850 (S.D. Ind. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rizvi v. J.P. Morgan Chase,*
619 F.Supp.2d 546 (N.D. Ill. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Swanson v. Citibank, N.A.,*
614 F.3d 400 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27, 29

*Turner v. The Saloon, Ltd.*,
491 F.Supp.2d 753 (N.D. Ill. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Warrick v. Pierce*,
554 F.Supp. 895 (S.D.Ind.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Williams v. Bristol-Myers Squibb Co.*,
85 F.3d 270 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Vance v. Ball State University*,
133 S.Ct. 2434 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## <u>Statutes</u>

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 9, 11, 26, 30

42 U.S.C. § 2000e ("Title VII") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

42 U.S.C. § 12117 ("ADA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 10, 11, 12

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 13

## JURISDICTIONAL STATEMENT

This action was filed in the United States District Court for the Northern District of Illinois, Eastern Division, invoking 42 U.S.C. § 2000e, *et seq.*, ("Title VII"), 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 12117 ("The ADA"), and Illinois assault and battery. (A18).[1] Plaintiff Roberto Alamo is a Latino citizen of Puerto Rican descent. (A19 ¶4). Defendants[2] are The City of Chicago and fire department officers Captain Patrick Stefan and Lieutenant Charles Bliss, in their individual capacities. (A19 ¶¶5,6,7).

The District Court[3] had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. On July 28, 2015, the District Court (Coleman, J.) entered a judgment of dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). (A1). A timely notice of appeal was filed on August 27, 2015. (D118).

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The appeal arises from a final decision of a district court, and direct review by the Supreme Court of the United States is not available.

---

[1] The record consists of specific documents that were filed in the District Court. Citations to documents in the Appendix appear as "A" followed by the Appendix page number. Citations to the Third Amended Complaint also include "¶" and the paragraph number where the averment occurs. Citations to documents that are *not* included in the Appendix appear as "D" followed by the CM/ECF docket number, and where a specific page of the document must be identified, the citation also includes "at" followed by the CM/ECF page number.

[2] References to "Defendants" refers to Defendant-Appellants in the instant case.

[3] References to "the District Court" refer to the district court in the instant case.

## STATEMENT OF THE ISSUES

1.    Whether Count I states a claim for Title VII hostile work environment based on national origin against the City of Chicago where Alamo is a Latino of Puerto Rican descent, and co-workers called him a "spic" and a "fucking Puerto Rican" and physically assaulted him and his personal property.

2.    Whether the disfavored rule of law, that "only a hellish workplace is actionable as a hostile work environment", should be expressly overruled because it demands more than required by *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), and it was disfavored in *Jackson v. County of Racine*, 474 F.3d 493 (7th Cir. 2007), but it continues to be cited by district courts in this Circuit.

3.    Whether Count II states a claim for Title VII disparate treatment based on national origin against the City of Chicago where Alamo was excessively detailed, meaning, excessively given brief assignments to work at different locations, and his return to work from medical leave was delayed, and non-Latino firefighters were not treated that way.

4.    Whether Count III states a claim for Title VII retaliation against the City of Chicago where Alamo's return to work was delayed *after* he complained of the harassment at his firehouse and *after* he called the police to report the ethnically motivated assault committed against him by Capt. Stefan.

5.    Whether Count IV states a Section 1983 claim against Lt. Charlie Bliss for violation of the Equal Protection Clause where it relies on the same basis of liability as the Count I hostile work environment claim.

2

## STATEMENT OF THE CASE

Plaintiff Roberto Alamo is a Latino of Puerto Rican descent. In 2006, he began working as a firefighter in the Chicago Fire Department ("CFD"). (A19 ¶4). In 2009, he was transferred to Engine Company 55 where other firefighters called him derogatory racial names including "spic" and "fucking Puerto Rican". (A20 ¶¶14, 15). He was detailed excessively compared to his colleagues, meaning, excessively assigned to work at different locations. (A21 ¶16; A56; A91). Additionally, several incidents occurred where other firefighters stole his food or threw it out. (A21 ¶16). Alamo was treated this way beginning shortly after the transfer in 2009, and "continuing throughout 2010 and 2011". (A20 ¶15). The non-Latino firefighters were not treated this way. (A21 ¶16).

Alamo's immediate supervisor was Defendant Lieutenant **Charlie Bliss** ("Lt. Bliss"), and Alamo complained to him about the treatment he was facing. (A19 ¶6; A21 ¶15). Alamo made numerous complaints including in July, August, and November of 2010; and also in April, July, and August of 2011. (A20-21 ¶15). Defendant Lt. Bliss did nothing to address it. (A21 ¶16).

## A).   Ethnic Name-calling and Physical Violence

In addition, Alamo also faced ethnic-name calling accompanied by violence. In March 2011, fellow firefighter Dan Sheehan made derogatory comments to Alamo about his Puerto Rican national origin and then physically assaulted him. (A21 ¶16). Alamo complained about it to Defendant Lt. Bliss and Battalion Chief Curt Annis but nothing was done about it. (A21 ¶16).

3

A second incident of violence, also in 2011, involved Defendant Captain **Patrick Stefan** ("Capt. Stefan"). Stefan held a captain's rank but was assigned to a different truck than Alamo and was not Alamo's immediate supervisor. (A19 ¶7; A21 ¶18). On September 13, 2011, at around 8:30 PM, Alamo was at work but feeling ill, and he was sleeping in the television room. (A21 ¶18). Around 9:45 PM, Capt. Stefan woke Alamo by yelling profanities and saying:

> I don't like your kind, you better put in a transfer and get out of this firehouse because I don't want you here.

(A21-22 ¶18). Capt. Stefan began "chest bumping" Alamo and directing more profanity and derogatory comments at him. (A22 ¶18). Alamo felt physically threatened and he walked away and called his uncle to pick him up. (A22 ¶18).

## B). More Violence and Chief Chickorotis's Request Not to Involve The Police

In a third incident, later on September 13, 2011, Defendant Capt. Stefan physically assaulted Alamo again, pushing him against a wall multiple times in view of Defendant Lt. Bliss. (A22 ¶19; A23 ¶25). Alamo called 911, and when the police arrived, he told them he wanted Stefan arrested. (A22 ¶¶19, 20).

Soon after, Alamo received a call from CFD Chief Chickorotis[4] who "pleaded with Alamo" to wait for him to arrive before doing anything. (A22 ¶21).

---

[4] An unreported district court order suggests "Chickorotis" is a misspelling and should be spelled "Chikerotis". *See Lewis v. City of Chicago*, No. 98 C 5596, 2005 WL 693618, at *13 (N.D. Ill. Mar. 22, 2005) (refers to trial testimony given by Chicago Fire Chief and Assistant Director of Training, Steve Chikerotis). The instant Brief uses the spelling "Chickorotis" merely to maintain continuity with the spelling used in the record.

When Chief Chickorotis arrived, he repeatedly asked Alamo not to bring charges and let him resolve the incident without involving the police. (A22 ¶21). He also said, if Alamo did not press charges, he would help Alamo with the harassment at the firehouse. (A22 ¶21). Alamo agreed but asked the police to make a correct report about the incident with Stefan. (A22 ¶22).

Later that evening, Chickorotis brought Alamo to a different firehouse and they met privately. (A23 ¶23). Chickorotis asked Alamo, "What can we do to make this go away?" (A23 ¶23). Alamo said he wanted the Fire Department to do the right thing. Chickorotis become angry and said he was done talking to him. (A23 ¶23). Alamo found out later that Chickorotis met privately with Battalion Chief Annis, Defendant Capt. Stefan, and the police officers who responded to the 911 call; and the police ultimately prepared a report that described the incident with Capt. Stefan inaccurately. (A22-23 ¶22).

## C).   Alamo's Medical Leave and the Hurdles[5] in Returning to Work

The next day, on September 14, 2011, at about 6:00 AM, after he finished his duty shift and was on the way home from work, Alamo felt "terrible chest pains, dizziness, and migraines". (A23 ¶24). He went to a hospital emergency room and was diagnosed with a work related chest contusion, stress, and possible post-traumatic stress disorder. (A23 ¶25).

---

[5] The description of these events as "hurdles" appears in Alamo's Third Amended Complaint. (A27 ¶44, A30 ¶58, A31 ¶63). The District Court adopted that description in its order of dismissal. (A7, A10, A11).

The day after, on September 15, 2011, Alamo met with his primary care doctor who referred him to a psychologist and a psychiatrist, and ordered medical leave due to the incident with Defendant Capt. Stefan. (A23 ¶26; A24 ¶29). That same day, Alamo reported to CFD that he was beginning medical leave. At that time, Sylvia Tienda ("Tienda") was the Medical Section Chief and had authority to decide whether or not firefighters could return to work after medical leave. (A19 ¶8). Tienda told Alamo she would not consider his injury work-related, and CFD would not pay for any hospital or medical treatment, because he did not report the incident while on duty. (A24 ¶28).

### 1).   The First Hurdle

Six months later, on March 13, 2012, Tienda told Alamo he was running out of medical leave time, and he needed to obtain a release order from his treating physician "to return to full duty status without restrictions". (A24 ¶31). On March 16th, Alamo gave Tienda a letter from his treating physician which authorized him to return to work without restrictions. (A25 ¶32).

### 2).   The Second Hurdle

On March 16, 2012, after receiving the letter, Tienda told Alamo for the first time of another requirement he had to satisfy in order to return to work: he needed a doctor's prescription note authorizing a Functional Capacity Evaluation. (A25 ¶33). On March 19th, Alamo sent the doctor's prescription note to Tienda, and then he followed up with the CFD Medical Section a few days later. (A25 ¶¶33,34).

### 3).    The Third Hurdle

On March 21, 2012, Alamo was told for the first time about another requirement to return to work: provide progress notes from *all* of his treating physicians. (A25 ¶34). He complied and followed up with Tienda. (A26 ¶37).

### 4).    The Fourth Hurdle and the EEOC Charge

On April 3, 2012, Alamo learned for the first time of another requirement: provide medical records dating back to 2009, and undergo more medical tests including two days of psychological tests with Dr. Cavanaugh. (A26 ¶¶39-40). The next day, April 4th, Alamo filed a charge against CFD with the U.S. Equal Employment Opportunity Commission (EEOC). (A20 ¶11, A38).

### 5).    The Fifth Hurdle and the Underlying  Litigation

On May 1, 2012, when Alamo went to Dr. Cavanaugh for the first day of testing, he learned the second day of testing had been put on hold and CFD would contact him about it. (A26 ¶40). On May 8th, the Medical Section asked Alamo for more medical records dating back several years. On May 14th, Alamo had a lawyer ask the Medical Section several times, why were the additional records needed, what else did Alamo need to provide, and when would the second day of testing be scheduled. (A26-27 ¶¶41-42). The lawyer received no response. (A26-27 ¶42). On June 4th, Alamo filed a discrimination suit in the District Court against three defendants.[6] (D1).

---

[6] The Complaint named Defendants Capt. Stefan and Lt. Bliss, and also Tienda.

### 6).    The Sixth Hurdle

At some point between May 14, 2012, and July 3, 2012, the Medical Section asked him for medical records *from before he had been hired* at CFD, and personnel records *from his prior employer*. He asked the Medical Section several times why it needed these records but received no response. (A27 ¶42).

### 7).    The Seventh Hurdle

On or about July 3, 2012, Alamo received a letter from CFD Human Resources that required him to make a decision: return to work, resign, take leave of absence, or be "absent without authorized leave". (A27 ¶43). He had a lawyer respond with a letter asking he be returned to work. (A27 ¶43). By July 6, 2012, CFD stopped paying his salary and benefits. (A27 ¶44). He went several months with no salary or benefits before being reinstated. (A28 ¶45). Non-Latino firefighters did not face these hurdles after medical leave. (A27 ¶44).

## D).    The Subsequent Proceedings in the District Court

Alamo amended his complaint[7] and the EEOC issued a right to sue letter. Alamo filed a second amended complaint[8] within 90 days. (A20 ¶13). He filed his Third Amended Complaint[9] on August 1, 2014. Count I pleaded Title VII hostile

---

[7] The Amended Complaint named Defendants Capt. Stefan and Lt. Bliss, and also Tienda. (D20).

[8] The Second Amended Complaint named Defendants City of Chicago, Capt. Stefan, and Lt. Bliss, and also Tienda, Dr. Morcos, and Dr. Russell. (D50).

[9] The Third Amended Complaint named Defendants City of Chicago, Capt. Stefan, and Lt. Bliss. (A18).

work environment against the City. (A28). Count II pleaded Title VII disparate treatment against the City based on excessive detailing and the hurdles in returning to work. (A29). Count III pleaded Title VII retaliation against the City, alleging the hurdles were retaliation for reporting the harassment. (A31). Count IV pleaded a Section 1983 equal protection claim against Lt. Bliss regarding the hostile work environment. (A32). Count V pleaded an ADA claim against the City for failure to accommodate returning to work. (A33). Counts VI and VII pleaded assault and battery against the City and Capt. Stefan. (A35-36).

### E).     The Rule 12(b)(6) Motion to Dismiss

#### 1).     Defendants' Motion and Arguments

On September 8, 2014, Defendants filed a motion to dismiss raising seven points: (1) the Title VII claims, the ADA claim, and the assault and battery claims were untimely; (2) the Title VII and ADA claims were not filed within 90 days of the right to sue letter; (3) the Title VII claims were not filed within 300 days of the conduct, the name-calling was not severe or pervasive, the hurdles in returning to work were consistent with lawful conduct, and excessive detailing was not an adverse action because "A brief assignment to a different location would be at most a mere inconvenience"; (4) the Title VII retaliation failed because the hurdles were consistent with lawful conduct; (5) the ADA claim failed to plead denial of accommodation; (6) the 1983 claim failed because there was no hostile work environment; and (7) the assault and battery claims were not actionable and were time-barred. (A49-50, A52, A57, A60-61).

9

### 2).   Alamo's Response

Alamo's response argued: (1) the Title VII claims, the ADA claim, and the assault and battery claims were not unduly delayed; (2) the Title VII and ADA claims related back to a prior pleading; (3) the Title VII claims were not belated, the harassment was severe and pervasive, and the hurdles in returning to work caused loss of pay; (4) the adverse action in the Title VII retaliation was the loss of pay; (5) the denial of accommodation in the ADA claim was the delayed return to work; (6) the 1983 claim relied on a hostile work environment; and (7) the assault and battery claims  were actionable and they were not time-barred. (A67, A70, A77-79, A81-82).

### 3).   Defendants' Reply

Defendants repeated the arguments in their motion including calling excessive detailing "a brief assignment to a different location". (A90-91).

## F).   The Judgment Order Now Being Appealed

On July 28, 2015, the District Court dismissed the Third Amended Complaint. (A2). The dismissal order addressed all of the Title VII claims together, and the Section 1983, ADA, and assault and battery claims separately.

In dismissing the Count I hostile work environment claim, the court correctly cited the elements including severe or pervasive harassment, but also cited authority that "only a 'hellish' workplace is actionable as a hostile work environment." (A8). The court found the ethnic slurs "spic" and "fucking Puerto Rican" were merely offensive but not severe or pervasive. (A9). The court did not

consider the assault by Capt. Stefan because Alamo began medical leave within 24 hours after it occurred and did not report it to Lt. Bliss. (A9 n.2).

In dismissing the Count II claim for disparate treatment based on excessive detailing, the court ruled that, even with detailing read to mean "a temporary transfer", detailing was not an adverse employment action because no facts showed it caused a change in salary, status or benefits. (A11). In dismissing the Count II claim for disparate treatment based on the hurdles in returning to work, the court ruled the hurdles were consistent with lawful conduct because Alamo withheld medical records from Dr. Cavanaugh, and CFD wanted to be sure he was fit to return to work; and there was no link between the harassment and either Dr. Cavanaugh or the Medical Section. (A12-13).

In dismissing the Count III claim for retaliation based on the hurdles in returning to work, the court ruled the hurdles were not retaliation because (as the court found regarding Count II) they were consistent with lawful conduct.

The Count IV Section 1983 claim was dismissed for the same reason as the hostile work environment claim: no severe or pervasive conduct. (A13).

Lastly, the Count V ADA claim was dismissed as untimely and lacking the denial of a request for accommodation. (A13). The Count VI and VII claims for assault and battery were found not actionable at common law and dismissed without prejudice, with leave to file them in state court. (A15).[10]

---

[10] Alamo is *not* appealing the dismissal of the ADA claim in Count V or the Illinois assault and battery claims in Counts VI and VII.

## SUMMARY OF ARGUMENT

Count I states a Title VII hostile work environment claim against the City because Alamo is a Latino of Puerto Rican descent, his co-workers called him the unambiguously derogatory racial epithets "spic" and "fucking Puerto Rican", he was physically assaulted in connection with the use of racial epithets, and co-workers damaged his personal property, and these events spanned a three year period. Additionally, in dismissing Count I, the District Court relied in part on the wrong standard, that "only a hellish workplace is actionable as a hostile work environment", and that rule of law should be expressly overruled.

Count II states a Title VII disparate treatment claim against the City because Alamo was excessively detailed, meaning, excessively given brief assignments to work at different locations as compared to his colleagues, and the hurdles in returning to work were imposed in a needlessly piece-meal, needlessly incrementally onerous manner, and non-Latino firefighters were not treated that way.

Count III states a Title VII retaliation claim against the City because the hurdles in returning to work occurred *after* he refused Chief Chickorotis's request not to involve the police in Stefan's racially motivated assault, and *after* he filed an EEOC charge that complained about the hostile work environment.

Count IV states a Section 1983 claim against Defendant Lt. Bliss for violating of equal protection based on hostile work environment because it relied on the same basis of liability as the Count I hostile work environment claim.

# ARGUMENT

## Standard of Review

Review of a Rule 12(b)(6) dismissal is *de novo,* viewing the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor". *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

## I.

## Count I States a Claim for Title VII Hostile Work Environment

In deciding the scope of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e), the Supreme Court has held that, "Title VII prohibits the creation of a hostile work environment." *Vance v. Ball State University*, 133 S.Ct. 2434, 2441 (2013). A hostile work environment claim must plead the following:

> To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability.

*Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 833-834 (7th Cir. 2015) (reversing Rule 12(b)(6) dismissal of Title VII hostile work environment claims based on national origin and religion).

In the instant case, the District Court ruled Count I lacks severe or pervasive harassment. The court cited *Ford v. Minteq Shapes and Services, Inc.*,

687 F.3d 845 (7th Cir. 2009), and *Ezell v. Potter*, 400 F.3d 1041 (7th Cir. 2005), which affirm summary judgment for defendants on Title VII claims. In *Ford*, the African American plaintiff was called "black man" and "black African American", he was told not to fear termination because the company wanted to look integrated, and he was called a gorilla. On appeal, no harassment was found because the "black man" and "black African American" comments were reported only once with no follow-up, and the other comments occurred only once and were not severe. *Ford* at 847-48. In *Ezell,* the Caucasian plaintiff's African American supervisor made offensive comments to the Caucasian workers "on a regular basis". On appeal, no harassment was found because the comments were not "physically threatening", many were simply overheard but not directed at plaintiff, and no details explained if "regular basis" meant daily, weekly, monthly, or yearly. *Ezell* at 1048. Both cases are distinguishable because, unlike the instant case, they did not involve unambiguously racial epithets, violence to plaintiff's body, or violence to plaintiff's personal property.

A.     **The harassment was severe because it involved the unambiguously racial epithets, "spic" and "fucking Puerto Rican"**

Unambiguously racial epithets fall on the more severe end of the spectrum of severe or pervasive harassment. *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040 (7th Cir. 2002) (*"Cerros I"*). The plaintiff in *Cerros I* was an Hispanic employee whose supervisors called him ethnic slurs including "spic". *Id.* at 1042. His Title VII hostile work environment claim ended with a defense

verdict after a bench trial. On appeal, this Court reversed and ruled:

> While there is no magic number of slurs that indicate
> a hostile work environment, we have recognized
> before that an unambiguously racial epithet falls on
> the more severe end of the spectrum.

*Cerros I,* 288 F.3d at 1047. After *Cerros I,* this Court had occasion to consider its facts again on subsequent appeal. *See Cerros v. Steel Technologies, Inc.*, 398 F.3d 944 (7th Cir. 2005) (*"Cerros II"*). This Court observed, "[W]e find it difficult to imagine epithets more offensive to someone of Hispanic descent than those directed at Cerros". *Cerros II*, 398 F.3d at 951-52. This Court has cited *Cerros I* for the rule that, "in the case of racial and ethnic slurs, some words are so outrageous that *a single incident* might qualify for a hostile environment claim". *Ezell*, 400 F.3d at 1048 (citing *Cerros I*, 288 F.3d at 1047) (emphasis added).

The instant case involves the unambiguously racial epithets, "spic" and "fucking Puerto Rican". Like *Cerros I,* these epithets fall on the severe end of severe or pervasive harassment. Like *Cerros II,* it is hard to imagine anything more offensive to an Hispanic person. Like *Ezell,* the epithets are so outrageous that *even one single incident* might qualify for a hostile work environment. And because this treatment occurred, starting in 2009 and "continuing throughout 2010 and 2011" (A20 ¶20), it involved more than just one single incident.

## B. The harassment was severe because it involved ethnically motivated physical violence against Alamo

"Assaults within the workplace create an objectively hostile work environment even when they are isolated." *Hostetler v. Quality Dining, Inc.*, 218

15

F.3d 798, 808-09 (7th Cir. 2000) (reversing summary judgment for employer in Title VII hostile work environment claim where co-worker subjected plaintiff to non-consensual violent kiss and forcefully attempted to unfasten her bra).

Even the *threat* of physical violence is relevant in Title VII cases. *See Daniels v. Essex Group, Inc.*, 937 F.3d 1264 (7th Cir. 1991). *Daniels* involved a lone African American plaintiff whose co-workers told "nigger jokes" and teased him for talking with white women at work. *Id.* at 1266. The harassment escalated to include "a human sized dummy with a black head" and simulated blood on its clothing, that was found hanging in a doorway at the workplace. *Id.* at 1266. Graffiti began appearing in the bathrooms, proclaiming racist epithets including, "All niggers must die." Some graffiti was directed at plaintiff by name and signed "KKK". Plaintiff filed suit and won a judgment at trial on a Title VII hostile work environment claim. Defendant appealed. This Court affirmed, and recognized the significance of the *threat* of immediate violence:

> We agree with the district court that the racial incidents described by Daniels were immediately threatening to him and that they would have adversely affected the work performance and well-being of a reasonable person.

*Daniels* at 1274 (citations and quotations omitted).

In the instant case, Alamo experienced ethnic slurs followed by actual violence. Sheehan called him a "fucking Puerto Rican" and assaulted him. Defendant Capt. Stefan told him, "I don't like your kind", followed by "chest bumping" and pushing against a wall, resulting in a "work related chest

16

contusion." (A23 ¶¶24,25). Where *Daniels* recognized the significance of the mere threat of violence, its actual occurrence should be at least as relevant.

### C. The harassment was severe because it involved ethnically motivated physical violence to Alamo's personal property

In deciding whether harassment created a hostile work environment, this Court has recognized the significance of violence to plaintiff's personal property. *See Cerros I* at 1046. In *Cerros I*, the tires on plaintiff's car were slashed while his car was parked at work. The act had no apparent racial significance by itself, but it was relevant where it occurred in an environment where racial epithets were being directed at plaintiff and the employer did nothing to correct it:

> In addition, racial epithets and slogans were pained on bathroom walls. Some were about Hispanics. Others touted the KKK and White Power. Some were racially derogatory statements about Cerros himself, by name. **On top of that, the tires on Cerros's car were slashed while he had it parked at work**. Although Cerros did not know who slashed his tires or why, he did notify [defendant] Steel about the incident, and Steel did nothing in response.

*Cerros I*, at 1046 (emphasis added).

Like *Cerros I,* the instant case also involves violence directed at plaintiff's personal property in an environment where epithets were directed at the plaintiff– Alamo's food was thrown out by his co-workers and his employer took no action to address it. Because the violence was viewed as significant in *Cerros I*, even though the perpetrator was unknown, it should be *at least* as significant in the instant case where it was committed by Alamo's co-workers.

17

### D. The District Court relied, in part, on the wrong standard, that "only a hellish workplace is actionable as a hostile work environment", and that standard should be expressly overruled

In dismissing a case, it is not enough for a district court merely to cite the correct standard; the court also must apply that standard and not apply the wrong standard. *See Carlson v. CSX Transportation, Inc.*, 758 F.3d 819 (7th Cir. 2014); *Johnson v. Revenue Management Corporation*, 169 F.3d 1057, 1059 (7th Cir. 1999); *Quinones v. Szorc*, 771 F.2d 289, 290 n.3 (7th Cir. 1985). Of these opinions, *Carlson* is most recent and most relevant.

In *Carlson*, the plaintiff was a female railway clerk who encountered difficulty advancing, and she filed her first of two sex discrimination lawsuits. While the first suit was pending, she was promoted to yardmaster and then into a manager training program. When the lawsuit settled, however, her superiors in the program began belittling her, assigning her extra work, and giving her unjustified poor evaluations, causing her to leave. She was not allowed to return to her yardmaster position and was passed-up for other yardmaster positions. Those positions were ultimately filled with less qualified male employees. Plaintiff brought a second Title VII sex discrimination suit which was dismissed. She appealed and this Court reversed in *Carlson*, 758 F.3d 819.

It is instructive to read both the dismissal order and its reversal in *Carlson*. The dismissal order cited to the correct rules of law:

> To comply with the pleading requirements in Federal Rule of Civil Procedure 8(a)(2), a complaint must "give the defendant fair notice of what the ... claim is

18

and the ground on which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint need not make detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, but it must contain more than "an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 137 L.Ed.2d 868 (2009).

*Carlson v. CSX Transportation, Inc.*, 2013 WL 869762 at *4 (S.D. Ind. March 5, 2013). On appeal, however, *Carlson* found the lower court used wrong standard:

In rejecting all but two of Carlson's claims for failing to state a plausible claim for relief, the district court applied the wrong standard. The court repeatedly faulted her for not providing "evidence" in support of her claims, see *Carlson*, 2013 WL 869762, at *6-7, though of course evidence is not required at the pleading stage.

*Carlson*, 758 F.3d at 827. Reading both together, the point becomes clear that merely citing the right standard is insufficient if the wrong standard is applied.

In the instant case, the District Court correctly cited *Dear v. Shinseki,* 578 F.3d 605, 611 (7th Cir. 2009), for the elements of a hostile work environment claim including "severe or pervasive" harassment. (A08). The court, however, also cited *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997), for the rule that "only a 'hellish' workplace is actionable as a hostile work environment." (A08). The hellish workplace rule was disfavored in *Jackson v. County of Racine,* 474 F.3d 493 (7th Cir. 2007), as demanding more than required by *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

19

As background, the reference to a hellish workplace first appeared in this Circuit, in *dicta,* in *Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (observing, "The concept of sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women"). It next appeared, still only in *dicta*, in *Brill v. Lante*, 119 F.3d 1266, 1274 (7th Cir. 1997) (observing, "Brill's third claim is sexual harassment, a concept "designed to protect working women from the kind of male attentions that can make the workplace hellish for women"), and *Jansen v. Packaging Corp of America*, 123 F.3d 490, 533 (7th Cir. 1997) (observing, "[t]he concept of [hostile work environment] sexual harassment is designed to protect working women from the kind of male attentions that can make the workplace hellish for women"). In *Perry*, 126 F.3d 1010, however, this Court cited *Baskerville* and announced the hellish workplace standard as a rule of law:

> Not every unpleasant workplace is a hostile environment. The "occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers" would be neither pervasive nor offensive enough to be actionable. *Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 430 (7th Cir.1995). **The workplace that is actionable is the one that is "hellish."**

*Perry*, 126 F.3d at 1013 (emphasis added).

Once announced, the rule remained in place until 2007 when this Court viewed it with disfavor, as requiring more than required by *Harris*, 510 U.S. 17:

> Before concluding, however, we note that all parties in this case seem to think that a working environment must be "hellish" before a Title VII suit

20

> can succeed. The Supreme Court's decision in *Harris* establishes that something short of the Ninth Ring may violate the statute.... We trust that in the future counsel will avoid the use of a single, overwrought word like "hellish" to describe the workplace and focus on the question whether a protected group is experiencing abuse in the workplace, on account of their protected characteristic, to the detriment of their job performance or advancement.

*Jackson,* 474 F.3d at 500 (internal quotations and citations omitted).

In the instant case, because the District Court cited the hellish workplace standard, the dismissal should be reversed. *See Carlson*, 758 F.3d at 827. The District Court could not have applied the correct standard that a pleading states a claim if the harassment is "severe or pervasive", and also the rule that "only a hellish workplace is actionable". (A08). And because the District Court found no harassment even with unambiguously racial epithets ("spic" and "fucking Puerto Rican"), ethnically motivated violence, and violence to personal property, it appears the District Court not only *cited* the wrong standard but also *applied* in deciding to dismiss the Third Amended Complaint.

As an additional matter, even though this Court viewed the hellish workplace standard with disfavor in *Jackson*, this Court did not expressly overrule that standard. Presently, there is confusion in this Circuit regarding the status of the hellish workplace rule. Even after *Jackson* viewed that standard with disfavor, thirteen reported district court opinions in this Circuit have decided dispositive motions in Title VII cases and cited the hellish

21

workplace rule.[11] An even larger number of *unreported* district court orders have decided dispositive motions and cited this rule, and the instant case is among them. Alamo respectfully urges that stronger clarification is needed from this Court, to make clear it is no longer the law in this Circuit that only a hellish workplace is actionable in a Title VII hostile work environment claim. That disfavored rule of law should be expressly overruled.

## II.

### Count II states a Claim for Title VII Disparate Treatment

A complaint alleging national origin discrimination need only allege the employer instituted a specified adverse employment action against the plaintiff because of national origin. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013); *Luevano v. Wal-Mart Store, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). Alamo's Count II is sufficient because it complains his employer instituted the excessive detailing and the hurdles in returning to work because

---

[11] *See Burrell v. United Parcel Service, Inc.*, __ F.Supp.3d __, 2016 WL 612854, *8 (N.D. Ill. Feb. 16, 2016); *Chaparro v. City of Chicago*, 47 F.Supp.3d 767, 776 (N.D.Ill. 2014); *Hatchett v. Shinseki*, 957 F.Supp.2d 960, 977 (S.D. Ind. 2013); *Oyebad v. Boston Scientific Corp.*, 955 F.Supp.2d 920, 940 (S.D. Ind. 2013); *Larry v. Bagcroft Papercon I, LLC.*, 933 F.Supp.2d 1050, 1060 (N.D. Ill. 2013); *Brown v. Shinseki*, 892 F.Supp.2d 1019, 1027 (N.D. Ill. 2012); *Eversole v. Spurlino Materials of Indianapolis, LLC.*, 804 F.Supp.2d 922, 935 (S.D. Ind. 2011); *Randolph v. LaRue D. Carter Memorial Hospital*, 670 F.Supp.2d 850, 856 (S.D. Ind. 2009); *Jenkins v. Shinseki*, 641 F.Supp.2d 754, 766 (C.D. Ill. 2009); *Rizvi v. J.P. Morgan Chase*, 619 F.Supp.2d 546, 555 (N.D. Ill. 2009); *EEOC v. Ceisel Masonry, Inc.*, 594 F.Supp.2d 1018, 1023 (N.D. Ill. 2009); *Esquivel v. International Union of Operating Engineers, Local 150*, 573 F.Supp.2d 1052, 1056 (N.D. Ill. 2008); and *Turner v. The Saloon, Ltd.*, 491 F.Supp.2d 753, 766 (N.D. Ill. 2007).

of his Puerto Rican national origin. The District Court, however, ruled excessive detailing was undefined and not an adverse employment action, and the hurdles were consistent with lawful conduct. Alamo urges this Court to disagree.

## A.    Excessive detailing is an adverse employment action

A complaint is sufficient if it gives a defendant "fair notice of what the claim is and the grounds upon which it rests". *Huri*, 804 F.3d at 832. Alamo satisfied that requirement by pleading he was "detailed excessively compared to his colleagues" (A21 ¶16). No definition was needed because, as used in the context of employment as a Chicago firefighter, "detailing" was understood perfectly well by Defendant City of Chicago, Fire Department Captain Stefan, and Fire Department Lieutenant Bliss. Their understanding is apparent because they never argued they did not know what the term meant, and their own motion to dismiss and reply memorandum correctly noted it meant,"A brief assignment to a different location". (A56; A91). Because Defendants understood the term, they had fair notice of the claim as required by *Huri*, 804 F.3d at 832.

"Excessive detailing" also states an adverse employment action. See *Lavalais v. Village of Melrose Park*, 734 F.3d 629 (7th Cir. 2013), which holds:

> [A] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, *or other indices that might be unique to a particular situation*."

*Lavalais* at 634 (citations omitted, emphasis added). Using Defendants'

definition of detailing, Alamo received an excessive number of brief assignments to different locations because he was Puerto Rican, which falls into the category of "other indicies" unique to his situation. *See Lavalais,* 734 F.3d at 634.

In finding no adverse employment action, however, the District Court disregarded Defendants' definition. Instead, the court took its definition from *Warrick v. Pierce,* 554 F.Supp. 895, 902 (S.D.Ind.1983), where detailing referred to a desirable lateral transfer. The plaintiff in *Warrick* complained he had been passed over for promotions to vacant supervisory positions, with the positions were being filled by "pre-selected" employees who were first "detailed" into the positions on a temporary basis, allowed to gain the experience to compete for the positions on a merit basis, and then promoted into the positions permanently. *Warrick*, at 897. That definition of detailing did not apply to the instant case.

In the instant case, and using the wrong definition of detailing, the District Court then took guidance from *Williams v. Bristol-Myers Squibb Co.,* 85 F.3d 270 (7th Cir. 1996), where this Court affirmed a summary judgment against a plaintiff who complained of age discrimination because he received a single lateral transfer from one sales division to another. *Williams* is inapposite. Alamo urges this Court to use Defendants' definition which shows excessive detailing to be an adverse employment action. *See Lavalais,* 734 F.3d at 634.

### B.     The hurdles in returning to work were imposed in a manner inconsistent with lawful conduct

The disparate treatment claim based on hurdles should not have been

dismissed because it has "the factual heft required to survive a motion to dismiss." *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).

*McCauley* involved a suit by the administrator of the estate of a woman killed by a parolee who previously assaulted her. The estate sued the city and various officials and raised, among other things, an equal protection *Monell*[12] claim that the city failed to have practices in place to protect domestic violence victims. *McCauley*, 671 F.3d at 614. It was dismissed, plaintiff appealed, and this Court affirmed and ruled the case involved "a lawful allocation of limited police resources" that was "entirely consistent with lawful conduct." *Id.* at 619.

In deciding *McCauley*, this Court obtained guidance by comparing its decision in *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) (affirming dismissal, where plaintiff complained government officials investigated him), its decision in *Swanson v. Citibank*, N.A., 614 F.3d 400 (7th Cir 2010) (reversing dismissal, where plaintiff complained bank denied her a loan). Clearly, the acts of conducting an investigation and denying a loan both describe conduct that is arguably consistent with lawful conduct. Here, however, the complaints in the two cases pleaded the conduct differently enough not only to require different results, but also to lead this Court to view a comparison of the two cases as illustrative: "*Brooks* and *Swanson* help illustrate the factual heft required to survive a motion to dismiss after *Twombly* and *Iqbal*." *McCauley* at 617.

---

[12] Citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

In *Brooks*, the plaintiff was a former Prison Review Board member who voted to grant parole to a notorious prisoner. *Brooks* at 577. He was later charged with accepting a bribe for his vote. After his acquittal, he filed a Section 1983 complaint against his accusers for prosecuting him. The case was dismissed and he appealed. In affirming, this Court noted the complaint merely alleged the commission of lawful acts without anything more. It alleged that some defendants produced investigative reports, some gave interviews, and some assisted in interviews. *Brooks* at 581. That conduct was "as consistent with lawful conduct as it was with wrongdoing." *Id.* at 581.

In *Swanson*, however, the African American plaintiff applied for a home equity loan with Citibank. Initially, Citibank conditionally approved a loan using her estimation her home was worth $270,000. Later, Citibank hired an appraiser who determined the home was worth only $170,000, and Citibank denied the loan. Plaintiff obtained her own appraisal that the home was worth $240,000. She sued and claimed Citibank and its appraisers "deliberately lowered the appraised value of her home *far below its actual market value*, so that they would have an excuse to deny her the loan". *Swanson*, 614 F.3d at 403 (emphasis added). The district court granted dismissal and this Court reversed as to that claim. *Id.* at 406. *Swanson* does not specifically say that plaintiff's $240,000 appraisal was the dispositive fact that made the complaint survive dismissal, and *McCauley* does not specifically point to that fact either, but the inclusion of that fact does make her argument plausible.

26

As between the two cases, the instant case is more like *Swanson* than *Brooks*. The hurdles were imposed in a needlessly piece-meal, and needlessly incrementally onerous manner. For each one he cleared, a new one appeared, more onerous than the last. The pattern is consistent with making compliance impossible, so CFD would have an excuse to deny reinstatement. The First Hurdle required only a doctor's authorization. When he complied, the Second Hurdle required a prescription note. When he complied, the Third Hurdle required progress notes from *all* of his treating physicians. When he complied, the Fourth Hurdle required medical records from 2009 and two days of testing. When he complied with the first day of testing, the Fifth Hurdle required more medical records dating back several years and put the second day of testing on hold. When his lawyer questioned these demands, the Sixth Hurdle required medical records *from before he had been hired*, and personnel records *from his prior employer*. When he questioned these new demands, the Seventh Hurdle required him to decide either to return to work, resign, take leave of absence, or be absent without authorized leave. When he complied by choosing return to work, his response was ignored. CFD stopped his salary and benefits.

The District Court ruled CFD was merely trying to ensure Alamo was fit to return to work, but surely his fitness could have been determined in a more straight-forward and less burdensome manner. The needlessly piece-meal, and needlessly incrementally onerous manner in which these hurdles were imposed provides the "factual heft" to survive dismissal. *See McCauley,* 671 F.3d at 617.

27

III.

**Count III States a Claim for Title VII Retaliation**

Title VII prohibits retaliation for engaging in a protected activity. *Carlson*, 758 F.3d at 828. "Pleading a retaliation claim under Title VII requires the plaintiff to allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result". *Id.* Alamo's Count III pleaded he engaged in the protected activity of complaining about the hostile work environment (to Lt. Bliss, the EEOC, and the police), and then was subjected to the hurdles in returning to work. That pleading provided all that was required. *See Carlson*, 758 F.3d at 828. The District Court, however, dismissed Count III and ruled the hurdles were consistent with lawful conduct, and there was no causal link between the reports of harassment and the hurdles since Alamo did not allege that Lt. Bliss or Capt. Stefan colluded to keep him from returning to work. Alamo asks this Court to disagree.

    A.    **The hurdles in returning to work were imposed in a manner inconsistent with lawful conduct**

Alamo incorporates his arguments at heading II(B) (*infra*, at 24-27), as his arguments in this section, to reverse the ruling that the hurdles in returning to work were not retaliation because they were consistent with lawful conduct.

    B.    **To the extent causation is required at the pleading stage, there is a casual link between the hurdles in returning to work and the harassment**

Evidence of a causal link is not required at the pleading stage of a

28

retaliation claim. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013) (reversing dismissal of Title VII retaliation claim and ruling, "Even at the summary judgment stage, an employee need not present proof of a causal link between the protected expression in which the employee engaged and the adverse employment action").

Additionally, the District Court did not rule that the retaliation claim is not plausible, and the pleadings give no cause for concern. The allegations about Chief Chickorotis satisfy the requirement of providing "enough details about the subject-matter of the case to present a story that holds together." *See Swanson*, 614 F.3d at 404. Chickorotis was linked to the harassment, empowered to take action against Alamo, and motivated to retaliate. The link is shown because Chickorotis called Alamo after the 911 call, pleaded with Alamo to wait for him to arrive, and traveled to Alamo's firehouse to persuade Alamo not to involve the police. Empowerment is shown because Chickorotis held the rank of Chief, he told Alamo he could help with the harassment at the firehouse (implying he had power to take action affecting firehouse employees including Alamo), and he asked Alamo to let him resolve the assault by Stefan without involving the police (implying, again, he had power to take such action). Lastly, motive to retaliate is shown because Chickorotis tried to talk Alamo out of involving the police, he failed, and he became angry with Alamo because of it. These facts provide sufficient detail as to present a retaliation claim that holds together at the pleading stage. *See Swanson*, 614 F.3d at 404.

## IV.

### Count IV States a Claim Under 42 U.S.C. § 1983

A Section 1983 claim for violation of equal protection based on hostile work environment survives dismissal if it relies on the same basis of liability as a viable Title VII harassment claim. *Huri*, 804 F.3d at 835.

The District Court dismissed Count IV only because it ruled the Count I hostile work environment claim lacked severe or pervasive harassment. (A13). However, because Count I states a viable hostile work environment claim (*infra*, at 13-22), his Section 1983 claim survives dismissal. *See Huri*, 804 F.3d at 835.

### CONCLUSION

**WHEREFORE**, Plaintiff-Appellant Roberto Alamo respectfully requests that this Court enter an order which reverses the dismissal of Counts I, II, III, and IV of the Third Amended Complaint, remands the case back to the district court with directions to reinstate the proceedings, and expressly overrules the disfavored rule of law in this Circuit that only a hellish workplace is actionable in a Title VII hostile work environment claim.

Respectfully Submitted,

By:/s/Douglas B. Harper
Douglas B. Harper
The Law Office of Douglas B. Harper
70 West Madison Street, Suite 1400
Chicago, Illinois 60602
(312) 214-2454

*Attorney for Plaintiff-Appellant*
ROBERTO G. ALAMO

30

✓

# CERTIFICATE OF SERVICE

### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on _____April 27, 2016_____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/___Douglas B. Harper_____

# CERTIFICATE OF SERVICE

### Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                          address:

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

s/_____

## CIRCUIT RULE 30(d) STATEMENT

The undersigned counsel for Appellant Roberto Alamo certifies that the Required Short Appendix and the Separate Appendix of Appellant Roberto Alamo contains and includes all materials required by parts (a) and (b) of Circuit Rule 30 of the United States Court of Appeals for the Seventh Circuit.

By: /s/Douglas B. Harper
Douglas B. Harper

_____

## REQUIRED SHORT APPENDIX

## OF PLAINTIFF-APPELLANT

_____

# INDEX TO APPENDIX[13]

## Documents in Required Short Appendix

Judgment [Dkt. 112]
July 28, 2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

Memorandum Opinion and Order [Dkt. 111]
July 28, 2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A2-17

## Documents in Separate Appendix

Plaintiff's Third Amended Complaint [Dkt. 86]
August 1, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A18-39

Defendants' Motion to Dismiss [Dkt. 92]
September 8, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A40-43

Defendants' Brief re: Motion to Dismiss [Dkt. 98]
September 8, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A44-64

Plaintiff's Response to Motion to Dismiss [Dkt. 99]
October 17, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A65-84

Defendants' Reply to Motion to Dismiss [Dkt. 105]
November 7, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A85-100

---

[13]    For the convenience of the Court and counsel, this Index identifies the documents contained in the entire Appendix (the Required Short Appendix and also the Separate Appendix).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Roberto G. Alamo,

Plaintiff(s),

v.

The City of Chicago, Charles Bliss and Patrick
Stefan, in their individual Capacities,

Defendant(s).

Case No.  12 C 4327
Judge Sharon Johnson Coleman

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $    ,

        which ☐ includes    pre–judgment interest.
                  ☐ does not include pre–judgment interest.

    Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

    Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
and against plaintiff(s)

.

    Defendant(s) shall recover costs from plaintiff(s).

---

☒    other: Judgment is entered in favor of defendants and against plaintiff.

---

This action was *(check one)*:

☐ tried by a jury with Judge    presiding, and the jury has rendered a verdict.
☐ tried by Judge    without a jury and the above decision was reached.
☒ decided by Judge Sharon Johnson Coleman on a motion to dismiss.

Date:  7/28/2015

Thomas G. Bruton, Clerk of Court

/s/ Robbie Hunt , Deputy Clerk

A001

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTO G. ALAMO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 12-cv-4327 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| THE CITY OF CHICAGO, CHARLIE BLISS | ) | |
| and PATRICK STEFAN, in their Individual | ) | |
| Capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a former Chicago firefighter, Roberto G. Alamo ("Alamo") filed a seven-count complaint against the City of Chicago (the "City"), his former superior Lieutenant Charlie Bliss ("Bliss"), and former coworker Patrick Stefan ("Stefan") (together "defendants"), alleging claims of discrimination and retaliation based on his national origin in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1983, a claim for failure to accommodate under the Americans with Disabilities Act (the "ADA"), and claims against the City and Stefan for common law assault and battery. Defendants moved to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motion to dismiss.

**Background**

The following facts are taken from the third amended complaint and accepted as true for the purposes of ruling on the instant motion. Alamo, who is Puerto Rican, was employed by the Chicago Fire Department in 2006. In 2009, he was transferred from Chicago Fire Department Engine Company 89 to Company 55. His supervisor at Company 55 was Lieutenant Bliss.

A002

Shortly after Alamo started with Company 55 and through 2011, he experienced verbal and physical harassment from his fellow firefighters, including name calling related to his race and national origin. In March 2011, one firefighter negatively commented on Alamo being a Puerto Rican and "physically assaulted" him. He also claimed that his fellow firefighters stole or threw out his food. Additionally, he complained about being "detailed excessively" (or reassigned as explained below) as compared to his colleagues. He reported the harassment to Bliss on numerous occasions and in a written complaint to his battalion chief and Bliss, without response.

On September 13, 2011, Alamo reported to work but was not feeling well due to allergies and informed Bliss and a colleague that he would be in the television room and might be sleeping. About an hour later, Stefan, a captain on a different truck than Alamo and thus not his supervisor, woke Alamo up, yelled profanities at him and said "I don't like your kind, you better put in a transfer and get out of this firehouse because I don't want you here." Stefan then chest bumped Alamo, used more profanity and threatened physical violence. Later Alamo was again pushed against a wall by Stefan, which was witnessed by Bliss. Alamo called 911 for assistance and spoke to officers when they arrived, but did not press charges because a chief assigned to Engine Headquarters 42 asked him to try to keep the incident in house.

On September 14, 2011, at 6:00 am, Alamo was relieved of his duty by a fellow firefighter and took the bus on his route home. Alamo exited the bus after a few blocks due to chest pain, dizziness and a migraine. He called a friend to pick him up and take him to the hospital where he explained to the emergency room doctor that he had been chest bumped and pushed at work the day before. The doctor diagnosed him with a work-related chest contusion and work-related stress and possible post-traumatic stress disorder ("PTSD"). Alamo met with his primary care physician the next day, who referred Alamo to a psychologist and a psychiatrist

2

and diagnosed him with work-related anxiety. His doctor ordered a medical leave as of September 14, 2011, due to the workplace incident with Stefan. Alamo reported the leave to the captain of Company 55 and provided him with the paperwork from his physician and the emergency room.

On March 13, 2012, Sylvia Tienda ("Tienda"), Chicago Fire Department medical section chief, informed Alamo that he was running out of medical leave time and directed him to get a release from this treating physician to return to full duty status without restrictions. He met with his treating physician the next day, who authorized Alamo to return to work without restriction. On March 16, 2012, Alamo gave the authorization letter to Tienda, who informed him that he also needed a prescription note authorizing a Functional Capacity Evaluation. Alamo obtained the prescription and delivered it to Tienda. On March 21, 2012, a doctor in the medical section, Dr. Issac Morcos, told Alamo that they needed progress notes from his treating physicians before clearing him to return to work. His doctors sent their notes in the following days. Alamo filed an inquiry with Tienda on March 30, 2012, about his work status and received a response from her on April 3, 2012, that Dr. Morcos was requesting his medical records dating back to 2009, and wanted Alamo to undergo further psychological and physical testing before clearing him to return to work.

On April 4, 2012, Alamo filed an EEOC charge alleging discrimination and retaliation against the Fire Department. About two weeks later Tienda scheduled Alamo for physiological testing with Dr. Cavanaugh to occur on May 1 and May 24, 2012. Alamo attended the first session, however, Dr. Cavanaugh refused to continue his evaluation without reviewing additional medical records requested from Alamo, which he chose not to provide. On July 3, 2012, Alamo received a letter from the Fire Department's human resources deputy commissioner explaining

that his leave time was exhausted and that if he did not return to work, resign or go on a leave of absence, in about two weeks he would be designated as "absent without authorized leave."  On July 6, 2012, the Fire Department stopped paying Alamo his salary and benefits.  Several months later, Alamo was reinstated as a firefighter.

Alamo filed his initial complaint on June 4, 2012, against Stefan, Bliss and Tienda, asserting against each claims of race discrimination under Sections 1981 and 1983.  Those defendants moved to dismiss the complaint and in response Alamo sought leave to file an amended complaint to assert additional allegations related to his unauthorized leave status.  The Court allowed the amendment.  Those defendants again moved to dismiss the complaint.  After the defendants' motion was fully briefed, in a written statement the Court granted in part and denied in part the motion and allowed Alamo leave to file an amended complaint.  Alamo then filed his second amended complaint, adding the City, Dr. Morcos and Dr. Hugh Russell as defendants, and a claim against the City for race discrimination under Title VII.  Those defendants answered the complaint and the parties engaged in written discovery and were attempting to schedule Alamo's deposition when his counsel sought leave to withdraw.  The Court allowed Alamo to substitute counsel and to file an amended complaint, and struck the discovery deadlines.  Alamo then filed the instant complaint, against which defendants have moved to dismiss.

**Legal Standard**

A court must dismiss any action which lacks subject matter jurisdiction.  The party asserting jurisdiction has the burden of establishing it under Rule 12(b)(1).  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009).  "On a motion to dismiss for lack of subject matter jurisdiction, the court is not bound to accept the truth of the allegations in the

A005

complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt." *Bastien v. AT & T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000). However, when reviewing a defendant's Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true … state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the complaint's factual content allows the Court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Id.*

**Discussion**

*1. Title VII Claims*

Alamo seeks recovery from the City under Title VII asserting claims for national origin discrimination, both hostile work environment and disparate treatment, and retaliation, Counts 1, 2 and 3 respectively. Defendants argue that these claims should be dismissed because Alamo failed to file them in a federal court complaint within 90 days of receiving his EEOC right-to-sue letter. Alamo received his letter on May 2, 2013, from the EEOC charge he filed against the Chicago Fire Department for discrimination based on national origin and disability, and retaliation. Accordingly, his 90-day deadline to file a civil action based on that charge was July 31, 2013. Alamo's instant complaint was filed on August 1, 2014. Thus, Alamo's claims only survive as timely if they were made in or relate back to a previous complaint.

A006

Alamo argues that his Title VII claims were timely filed in his second amended complaint because it included national origin discrimination "allegations," and in any event, the claims relate back to that complaint pursuant to Rule 15(c). The second amended complaint, filed on July 18, 2013, contained three claims: "Title VII Race Discrimination," against the City, "Section 1981 Race Discrimination" against Stefan, and "Section 1983 Race Discrimination" against Bliss, Tienda, and Drs. Morcos and Russell. The Title VII claim alleged the following:

> 46. Alamo is a member of a protected class by race or national origin, specifically he is Latino;
>
>        *   *   *
>
> 48. Alamo suffered an adverse employment action in that he was verbally and physically harassed at work because of his race or national origin, and he has had hurdles and challenges placed before him in his attempts to return to work after a medical leave of absence because of his race or national origin.

Alamo argues that it is plain from these allegations that he was asserting a national origin discrimination claim. However, defendants contend that Alamo's claim is one of race discrimination (given its title), which is "not synonymous" with national origin discrimination. Even Alamo recognizes this distinction, substituting "a Latino," "derogatory and racist comments," "racial harassment," "racial discrimination," and disparate treatment from similarly situated "white" and "non-Latino" firefighters for, in the instant complaint, a "Puerto Rican Latino," harassment "because of his national origin" and that he suffered "national origin discrimination." While courts treat 'Puerto Rican' as both a racial and a national origin classification, [1] the distinction is not necessary to this analysis (or resolution of his claim, per

---

[1] *See, e.g., Velez v. City of Chicago*, 442 F.3d 1043, 1049-1050 (7th Cir. 2006) (national origin); *Hampson v. Bd. of Educ.*, 81 C 6425, 1986 WL 8369, at *3-5 (N.D. Ill. July 21, 1986) (national origin); *Rosado v. Chicago Transit Auth.*, 13 C 5594, 2014 WL 237937, at *2 (N.D. Ill. Jan. 22, 2014) (race); *Hansborough v. City of Elkhart Parks & Rec. Dep't*, 802 F. Supp. 199, 206-208 (N.D. Ind. 1992) (race); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987) (race). The Court notes, however, that in this case a claim based on national origin discrimination may be appropriate. "The term 'national origin' on its face refers to the country where a person was born, or more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94 S. Ct. 334, 336, 38

below) because the Court finds that Alamo's Title VII claims in the instant complaint are founded on the same conduct and therefore relate back to his second amended complaint. *See* Rule 15(c)(1)(B). Despite their timeliness, Alamo's Title VII claims nonetheless fail.

To state a claim for hostile work environment discrimination, Alamo must set out factual allegations to plausibly show: (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on his membership in a protected class; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009). The Court looks at the totality of the circumstances to determine whether the conduct is sufficiently severe or pervasive to be actionable, including the frequency of the discriminatory conduct, whether a reasonable person would find it offensive, whether it is physically threatening or humiliating conduct as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the victim. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002). Only a "hellish" workplace is actionable as a hostile work environment. *Perry v. Harris Chernin Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997). Defendants argue that Alamo fails to plead the requisite severe or pervasive harassment necessary to assert a hostile work environment claim, given the facts alleged in the complaint. The Court agrees.

Here, Alamo alleges that he reported to Bliss the following incidents occurring between 2009 and 2011, which created a hostile work environment: "fellow firefighters" called him a "spic" and a "fucking Puerto Rican," and used the term "Nigger" around the firehouse; in March 2011, a firefighter directed derogatory comments towards him regarding his national origin and

---

L.Ed.2d 287 (1973); *see also* 29 C.F.R. § 1606.1 (EEOC defines as denial of equal employment opportunity because of individual's, or his or her ancestor's, place of origin, or characteristic of a national origin group). Here, Alamo claims to be of Puerto Rican descent, and while Puerto Rico is presently a territory of the United States, at one point it was a sovereign island populated by aboriginal peoples.

"physically assaulted" him; and several instances of coworkers stealing or throwing out his

food.[2]  The incidents here do not meet the requisite standard of severe or pervasive conduct.

While Alamo alleges an instance of physical assault, the derogatory comments that were directed

towards him ("spic" and "fucking Puerto Rican") were not physically threatening or intimidating

either by their frequency or their content.  Although these comments are insensitive and

inappropriate for the workplace, offensive utterances do not raise the level of harassment to

severe or pervasive.  *See, e.g.*, *Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir.

2009) ("Title VII is not … a general civility code and will not find liability based on the sporadic

use of abusive language.")  Further, these few incidents were not pervasive, occurring over a

span of three years, thus diluting their effect and severity.  And other than Alamo's conclusion,

there are no facts alleged to support that the disappearance of his food was motivated by his

national origin, or that any of the above incidents unreasonably interfered with his work

performance.  While these incidents may be evidence of certain racist individuals in his

workplace, they do not constitute harassment so "severe or pervasive to alter the conditions of

employment and create an abusive working environment."  *Ezell v. Potter*, 400 F.3d 1041, 1047

(7th Cir. 2004).

> Alamo also fails to state a claim under Title VII for disparate treatment and retaliation.

Both claims require Alamo to plead an adverse employment action.  *See Stephens v. Erickson*,

569 F.3d 779, 786 (7th Cir. 2009) (Title VII retaliation requires a plaintiff to demonstrate that he

engaged in a legally protected activity, suffered an adverse employment action, and causal

connection between the two); and *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir.

---

[2] The incident with Stefan, while colorful, is not considered in this analysis because it cannot form the basis for
employer liability as Alamo left the workplace for medical leave less than 24-hours after the encounter and it was
not alleged to be a part of those incidents Alamo reported to Bliss.  *See Cerros v. Steel Tech., Inc.*, 398 F.3d 944,
(7th Cir. 2005) ("employers are liable for a coworker's harassment only when they have been negligent either in
discovering or remedying the harassment").

2014) (A complaint alleging discrimination under Title VII need only aver that the employer instituted a specified adverse employment action against the plaintiff on the basis of his national origin.) "[N]ot everything that makes an employee unhappy is an actionable adverse action. For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). While Alamo is not required to plead a prima facie case at this stage, he nonetheless retains the burden of alleging facts sufficient to state all the required elements of his claim. *Twombly*, 550 U.S. at 569-70. Alamo fails to do so here.

Alamo generally alleges that he was retaliated against for reporting harassment in that the City placed "hurdles and challenges before him in his attempts to return to work after a medical leave of absence." In addition to this allegation, in support of his discrimination claim he also alleges that he was "detailed excessively." Defendants argue that excessive detailing (being reassigned) is not an adverse action, but at most a mere inconvenience, and that the alleged "hurdles and challenges" faced by Alamo fail to qualify as materially adverse because they did not change his pay, benefits or title. Alamo does not directly respond to these arguments, rather he claims that defendants' actions are part of a larger and coordinated course of conduct which resulted in his eventual removal from active employment status. His argument, however, is inconsistent with his complaint and not well-taken. Alamo alleges in his complaint that his active employment status changed when *he* reported to a captain that he needed to take a doctor-ordered medical leave. (Dkt. # 86, ¶¶ 27, 29.) He also alleges that he was later reinstated as a firefighter. (*Id.* ¶ 45.) Further he does not allege, and none of his allegations suggest, that Bliss and Stefan or any of the third parties in the medical section mentioned in the complaint

9

coordinated or colluded to remove him from active status.

Regarding the sufficiency of his claim, Alamo does not allege any supporting facts regarding "detailing," including what it is or that it is a significant change in employment status, or that it caused him a significant change in benefits. This alone is an indication that the claim should fail. The Court understands detailing to be akin to a temporary transfer. *See, e.g., Warrick v. Pierce*, 554 F. Supp. 895, 902 (S.D. Ind. 1983) ("'Detailing' is the practice of temporarily assigning persons to other positions pending permanent staffing."). "[A] purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Here, Alamo has failed to allege that detailing in his situation led to decreased wages or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or any other indicia of a significant change in status. *Cf. Lavalais v. Village of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013). The Court finds that "excessive detailing" as alleged here is not an adverse employment action.

With respect to the alleged hurdles and challenges to returning to work after medical leave, Alamo alleges that he was directed to get a release from his treating physician to return to full duty without restrictions, a prescription authorizing a Functional Capacity Evaluation, progress notes from treating physicians, medical records dating back to 2009, and to undergo further psychological and physical testing. Alamo complied with all the directives except through counsel he informed the medical section that we would not provide the additional medical records. Dr. Cavanaugh refused to continue the psychological evaluation of Alamo without reviewing his medical record, and thus he could not be cleared by the medical section to return to work. His leave time subsequently exhausted and the City stopped paying Alamo his

10

salary and benefits because he had not returned to work. While a change in pay and benefits may amount to an adverse employment action, defendants argue and the Court agrees that defendants' actions are consistent with lawful conduct and therefore not actionable. Alamo responds, without a basis, that this argument should be rejected and points to the allegations in his complaint.

However, the alleged behavior is as consistent with lawful conduct as it is with wrongdoing, thus Alamo fails to suggest a plausible factual basis for his legal conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009). The complaint's allegations must "plausibly" suggest that the plaintiff is entitled to relief; if the allegations give rise to an "obvious alternative explanation," then the complaint may fail to adequately state a claim. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 550 U.S. at 557; *Twombly*, 550 U.S. at 567). The facts alleged here demonstrate that Alamo's delay in return to work was due to his failure to provide requested medical records for an exam Dr. Cavanaugh felt was necessary for him to return to duty following a medical leave. Alamo had been on a medical leave for six months with a diagnosis of a chest contusion, stress, possible PTSD and anxiety, all being work-related. An "obvious alternative explanation" is that the fire department, as an agency in the public service, wanted to be certain that its firefighter was mentally and physically fit to return to duty. *See Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 566 (7th Cir. 2009) (fire departments have the "obligation to the public to ensure that its workforce is both mentally and physically capable of performing what is doubtless mentally and physically demanding work.") Thus, "[a]s between that 'obvious alternative explanation' [ ] and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." *Iqbal*,

A012

556 U.S. at 682 (internal citation omitted).  Further, Alamo has failed to allege any causal link between his reports of harassment to Bliss and the subsequent actions of the medical section personnel, Tienda and Drs. Marcos and Cavanaugh.  Indeed it was Dr. Cavanaugh, not alleged to have had knowledge of or to have participated in any national origin discrimination, who refused to continue his evaluation without reviewing medical records.

For all these reasons, Alamo's Title VII claims fail and are dismissed.

*2. Section 1983 Claim*

Alamo's § 1983 claim is based on hostile work environment race discrimination in violation of the Equal Protection Clause, a claim for which severe or pervasive conduct is required.  *Lavalais*, 734 F.3d at 635 (*citing Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011) (Title VII and § 1983 race discrimination employment claims are analyzed under the same standards)).  Here Alamo alleges, as set forth above, that Bliss was aware that other employees were harassing him because of his race and national origin, but failed to remedy the alleged hostile work environment.  Accordingly, Alamo's § 1983 claim fails for the reasons above, failure to plausibly show severe or pervasive conduct.

*3. ADA Claim*

In Count 5, Alamo claims that the City violated his rights under the ADA for failure to accommodate his PTSD disability.  Defendants argue that his claim should be dismissed as untimely because Alamo failed to file it in a complaint within 90 days of receiving his May 2, 2013, EEOC right-to-sue letter.  As stated above, his 90-day deadline to file a civil action based on his disability charge was July 31, 2013.  Alamo's instant complaint was filed on August 1, 2014.  Thus, Alamo's claims only survive as timely if they were made in or relate back to a previous complaint.  His second amended complaint, filed on July 18, 2013, does not contain an

A013

ADA claim and is completely void of any allegations regarding disability.

Further, his ADA claim does not relate back to the second amended complaint. Rule 15(c)(1)(B) states that "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." The conduct or occurrence set out in the second amended complaint is, essentially, that Alamo's coworkers harassed him due to his race or national origin, that his supervisor knew of the harassment and did nothing to stop it, and that personnel in the department's medical section discriminated against him based on his race by failing to clear him to return to work. Here, he alleges that he "made repeated requests to return to work, thereby asking the City to make a reasonable accommodation to his disability." Accordingly, Alamo's ADA claim is based on different conduct not set out – or attempted to be set out – in the second amended complaint and therefore does not relate back.

Notwithstanding its untimeliness, Alamo's claim fails. To state a claim for failure to accommodate under the ADA, a plaintiff must allege that (1) he is a qualified individual with a disability, (2) his employer was aware of the disability, and (3) his employer failed to reasonably accommodate that disability. *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009). Defendant argues that Alamo has failed to plead facts suggesting any of the required elements, while Alamo contends that his complaint satisfies each. Even taking the facts alleged in the light most favorable to Alamo, that he is qualified with a PTSD disability and that the City was aware of the disability, he fails to allege that he requested an accommodation or that the City failed to reasonably accommodate his PTSD. Alamo alleges only that he made requests to return to work, "thereby" asking the City to accommodate his disability. As with his other claims,

13

Alamo makes generalized conclusory statements, failing to provide the necessary connecting facts. Essentially, Alamo claims that the accommodation he "reasonably" requested was that he get his job back, which is what he argues in his brief. (Dkt. # 99, p. 16.) This is a confusing allegation indeed, as the ADA requires an employer to make reasonable accommodations to enable a disabled employee to perform his job duties. An employer must be "willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work." *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995). Here, Alamo asks nothing of the City other than re-employment. This is not a request for an accommodation, and further not an "accommodation" as envisioned by the ADA. *Id.* Accordingly, his claim is dismissed.

*4. Assault and Battery Claims*

Having dismissed Alamo's federal claims, this Court ultimately has discretion over whether to exercise supplemental jurisdiction over his remaining state law assault and battery claims. *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866, 173 L.Ed.2d 843 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...."). This Court declines to exercise jurisdiction over Alamo's state law claims.

The Court notes that even if it were to exercise jurisdiction over these claims, they nonetheless would be dismissed. Alamo's assault and battery claims arise out of an incident that occurred in the fire station during which fellow firefighter defendant Stefan allegedly verbally harassed, chest bumped and pushed Alamo. Defendants argue that the Illinois Workers' Compensation Act ("IWCA") preempts Alamo's assault and battery claims because they are

14

A015

workplace injuries.  The Court agrees.

"Workplace assaults and batteries are generally compensable under the IWCA, and, therefore, not actionable at common law."  *Damato v. Jack Phelan Chevrolet Geo, Inc.*, 927 F. Supp. 283, 291 (N.D. Ill. 1996); *see also Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 323 (7th Cir. 1992) (quoting *Rodriquez v. Indus. Comm'n*, 95 Ill.2d 166, 447 N.E.2d 186, 190 (1992)).  In order to avoid preemption, Alamo must show that the City committed, commanded, or expressly authorized Stefan to commit an intentional tort.  *Tessendorf v. Edward Hines Lumber Co.*, 393 F. Supp. 2d 686, 692 (N.D. Ill. 2005) (citing *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 464, 564 N.E.2d 1222 (1990)).

Here, it is clear from the complaint's allegations that the alleged assault and battery took place at Alamo's workplace during work hours and in the course of his duties as an employee. Further, Alamo does not allege, nor is it suggested by his complaint, that the City commanded or authorized Stefan to inflict injuries on Alamo or to conduct himself in a discriminatory manner. Alamo does not dispute the nature of his claims as workplace injuries, rather he argues, without authority to support his interpretation of the statue, that as a firefighter he is not subject to the IWCA for claims other than those resulting in serious and permanent disfigurement from burns. While the IWCA specifically allows for such claims, it is not the exclusive means by which firefighters can receive compensation.  *See* 820 ILCS 305/8(c) (noting that compensation is also payable under paragraphs (d), (e) or (f)).  Therefore, Alamo is not exempt from the IWCA and the Court finds his claims for assault and battery would be preempted by the Act.

Having determined that all of Alamo's claims will be dismissed, the Court finds that allowing leave to amend in this case would be futile and a waste of judicial resources.  This is Alamo's fourth complaint.  With the exception of his ADA claim, Alamo has attempted to

A016

properly assert the claims in the instant complaint since his original filing. The Court previously dismissed some of these same claims and has allowed amendment on two occasions. Given the nature of this case, any additional allegations that would move his claims from possible to plausible were surely known to Alamo in 2012, when he opened this case and possibly during the seven months of discovery in late 2013, and early 2014. Because he has had several opportunities to properly plead claims and remedy deficiencies, including this most recent seven-count, twenty-page complaint, the Court will not allow further amendment.

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss [92] is granted. Alamo's federal claims, Counts 1, 2, 3, 4 and 5, are dismissed with prejudice. His state law claims, Counts 6 and 7, are dismissed without prejudice, so that Alamo may file his claims in state court if he so chooses.

SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  July 28, 2015

16

A017