No. 15-2849

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

ROBERTO G. ALAMO,

*Plaintiff-Appellant,*

v.

THE CITY OF CHICAGO,
CHARLIE BLISS, and
PATRICK STEFAN,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
Case No. 12-cv-04327
The Honorable Sharon Johnson Coleman, District Judge

———————————

SEPARATE APPENDIX
OF PLAINTIFF-APPELLANT

———————————

Douglas B. Harper
The Law Office of Douglas B. Harper
70 West Madison Street, Suite 1400
Chicago, Illinois 60602
(312) 214-2454

*Attorney for Plaintiff-Appellant*
ROBERTO G. ALAMO

# INDEX TO APPENDIX[1]

## Documents in Required Short Appendix

Judgment [Dkt. 112]
July 28, 2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1

Memorandum Opinion and Order [Dkt. 111]
July 28, 2015. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A2-17

## Documents in Separate Appendix

Plaintiff's Third Amended Complaint [Dkt. 86]
August 1, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A18-39

Defendants' Motion to Dismiss [Dkt. 92]
September 8, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A40-43

Defendants' Brief re: Motion to Dismiss [Dkt. 98]
September 8, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A44-64

Plaintiff's Response to Motion to Dismiss [Dkt. 99]
October 17, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A65-84

Defendants' Reply to Motion to Dismiss [Dkt. 105]
November 7, 2014. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A85-100

---

[1]     For the convenience of the Court and counsel, this Index identifies the documents contained in the entire Appendix (the Required Short Appendix and also the Separate Appendix).

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTO G. ALAMO, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| vs. | ) | |
| | ) | No. 12-CV-04327 |
| THE CITY OF CHICAGO, CHARLIE | ) | |
| BLISS and PATRICK STEFAN, in their | ) | |
| Individual Capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT**

Plaintiff Roberto G. Alamo ("Alamo" or "Plaintiff"), by his attorneys, complains of

Defendants the City of Chicago ("the City" or "Chicago'"), Charlie Bliss ("Bliss'") and Patrick

Stefan ("Stefan") as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for racial and/or national origin discrimination, disability

discrimination, retaliation, assault and battery.  Plaintiff brings this action pursuant to Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Title VII), the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution pursuant to

the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"), The Americans With

Disabilities Act (the "ADA") 42 U.S.C. §12117 and Illinois law, seeking to redress the

Defendants' unlawful employment practices on the basis of race and/or national origin and

disability, and the Defendants' other Illinois state offenses.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper under 28 U.S.C. § 1391, because all of the parties reside in this district and because all of the conduct complained of occurred within this district.

## PARTIES AND OTHER INDIVIDUALS

4.      Plaintiff Alamo is a Latino citizen of Puerto Rican descent who works as a firefighter with the Chicago Fire Department ("CFD").  Alamo has worked for the CFD since 2006.

5.      At all times relevant to this complaint, Defendant the City of Chicago is a municipal corporation in Cook County, Illinois, organized under the laws of the State of Illinois.

6.      At all times relevant to this complaint, Defendant Bliss was a Lieutenant on Engine Company 55 and Alamo's immediate supervisor.  Bliss is sued in his individual capacity for his unlawful acts under color of law.

7.      At all times relevant to this complaint, Defendant Stefan was a Fire Captain on Truck 44.   Stefan is sued in his individual capacity for his unlawful acts under Illinois state law.

8.      At all times relevant to this complaint, Sylvia Tienda ("Tienda") was the CFD Medical Section Chief. As such, Tienda has authority over which firefighters can return for duty after taking medical leave.

9.      At all times relevant to this complaint, Dr. Issac Morcos ("Morcos") was an occupational health physician with the CFD.  As such, Morcos has authority for deciding which firefighters can return for duly after taking medical leave.

A019

10.    At all times relevant to this complaint, Dr. Hugh Russell ("Russell") was the Medical Director of the CFD. As such, Russell has authority to approve which firefighters can return for duty after taking medical leave.

## PROCEDURAL BACKGROUND

11.    On April 4, 2012, Alamo timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging national origin and disability discrimination and retaliation.    A true and correct copy of that Charge is attached hereto as Exhibit A.

12.    On May 2, 2013, the EEOC issued Alamo a Notice of Right to Sue entitling him to institute a civil action within ninety (90) days of the date of receipt of said Notice.  A true and correct copy of that Notice is attached hereto as Exhibit B.

13.    Alamo filed his Second Amended Complaint in the instant action within ninety (90) days of receiving the EEOC Notice of Right to Sue.  Alamo has fulfilled all conditions precedent to the institution of his allegations under Title VII.

## ALLEGATIONS OF FACT

14.    In or around 2009, Alamo was transferred from CFD Engine Company 89 to CFD Engine Company 55.  When Alamo joined Engine Company 55, he met with his superior officer, Lieutenant Bliss. At that time, Alamo told Bliss about the discrimination Alamo had faced when he was with Engine Company 89.  Bliss told Alamo that he had received calls from Engine Company 89 speaking poorly about Alamo, but told Alamo that he should not worry about it, and that he should consider Engine Company 55 a fresh start.

15.    Shortly after Alamo started with Engine Company 55, however, and continuing throughout 2010 and 2011, he was harassed and verbally abused by other firefighters in his

3

company. Alamo informed Bliss on numerous occasions, including in July, August and November of 2010, and April, July and August of 2011, of the harassment that he endured from his fellow firefighters, including, but not limited to, name-calling, derogatory and racist comments, including his national origin, such as calling Alamo a "spic" and a "fucking Puerto Rican," and that other firefighters used the term "Nigger" around the fire house.  Alamo even faced physical violence.

16.    Alamo filed a harassment complaint with Battalion Chief Curt Annis and Bliss about the harassment he was experiencing with Engine Company 55, including, but not limited to the fact that Alamo was detailed excessively compared to his colleagues, several incidents of co-workers stealing or throwing out Alamo's food at the firehouse, and an incident with firefighter Dan Sheahan, who directed racist and derogatory comments regarding Alamo's Puerto Rican national origin and verbally harassed and physically assaulted Alamo in or around March of 2011. Despite Alamo's complaints, Bliss did nothing to address this harassment and this intimidating, hostile, and/or offensive work environment. In addition, other, non-Latino firefighters were not subjected to this harassment.

17.    On September 13, 2011, Alamo reported to work but was not feeling well due to allergies. Alamo informed Bliss and several colleagues that he was not feeling well. Around 8:30 p.m., Alamo informed Bliss and firefighter Korba that he would be in the television room, and asked them to come get him if the bell rang for Engine 55 since he was not feeling well and might be sleeping.

18.    At around 9:45 p.m., Stefan, who is assigned to a different truck than Alamo and was not Alamo's immediate supervisor, suddenly woke Alamo up, yelled profanities at him, called him names, and said, among other things, "I don't like your kind, you better put in a

A021

transfer and get out of this firehouse because I don't want you here." Stefan than began chest bumping Alamo, used more profanity and derogatory terms, and again threatened physical violence.  Alamo became upset and wa1ked away since he felt threatened. Alamo called his uncle to pick him up because he was fearful of getting into a fight with Stefan.

19.    After Engine Company 55 returned from a run, the firehouse bell rang for an extended period of time to call all firefighters to the apparatus floor, Alamo came downstairs and, when he did so, he was pushed against the wall by Stefan. At that time, Bliss saw this physical altercation, and asked what was going on there. Alamo told Bliss that he could not handle Stefan's harassment and violence any longer and he left the firehouse to call 91l for assistance.

20.    When police officers arrived, Alamo explained what had happened and told the officers that he wanted Stefan arrested.

21.    Shortly thereafter, Alamo received a call from Chief Chickorotis, the Fire Chief assigned to Engine 42 Headquarters, who asked Alamo to wait for him to arrive before doing anything.  Alamo explained to Chief Chickorotis that he had already called 911 and was going to proceed with filing charges, but Chief Chickorotis pleaded with Alamo to wait until he arrived. When Chief Chickorotis arrived, he repeatedly asked Alamo not to press charges against Stefan, to try to keep the incident in house, and to let him resolve the issue without the police.  Chief Chickorotis promised that if Alamo did not press charges, Chickorotis would help him with the national origin and racial harassment and intimidating, hostile, and/or offensive work environment Alamo had been enduring at the firehouse.

22.    Based on Chief Chickorotis' requests, Alamo did not press charges.  However, Alamo asked the responding police officers to make sure they documented the incident fully

5

and accurately. Alamo later learned that the responding police officers had held a private meeting with Stefan, Chief Chickorotis, Battalion Chief Curt Annis and other Alamo co-workers, and the subsequently prepared police report was inaccurate.

23.    After Alamo had completed his interview with the police officers, Chief Chickorotis took Alamo to Engine Company 42, which is located at a different firehouse. Once there, Chief Chickorotis privately asked Alamo, "'What can we do to make this all go away?" Alamo told him that he wanted the CFD to do the right thing. Chief Chickorotis seemed angered at Alamo's comments and told him he was done talking to him.

24.    On September 14, 2011 at approximately 6:00a.m., Alamo was relieved of his duty by firefighter Frost. Alamo took a bus to get home and after a couple blocks, he got off because he had terrible chest pain, dizziness and a migraine. Alamo called a friend to pick him up at Belden and Halsted streets and the friend took him to St. Joseph Hospital.

25.    Alamo arrived at the emergency room and explained to the doctor the events from September 13th and earlier the morning of September 14th, including that he was pushed multiple times, chest bumped, and the victim of battery. The doctor diagnosed him with work related chest contusion, stress, and possible post-traumatic stress disorder. The emergency room doctor directed Alamo to follow-up with his primary care doctor.

26.    On September 15, 2011. Alamo met with his primary care doctor, Dr. Carlos Reynes, and informed him of what happened on September 13 and 14, 2011. Dr. Reynes referred Alamo to a psychologist and a psychiatrist and diagnosed Alamo with work-related anxiety.

6

27.     Also on September 15, 2011, Alamo reported to Captain Al Kiefer of Engine Company 55 that his doctor put him on medical lay-up and provided Kiefer with the documents from his doctors and from the hospital emergency room.

28.     Alamo then reported to the CFD medical section, and was informed by Tienda that she would not consider Alamo's injury work-related because he failed to report the injury while he was on duty. Alamo informed Tienda that all of the medical documents described the incidents from his workplace on September 13th and September 14th and explained that he was the victim of workplace violence and discrimination.  Despite this, Tienda refused to consider his injuries work-related, and said that she would not authorize any payment to the hospital or treating physicians.

29.     Alamo went on a doctor-ordered medical leave September 14, 2011 because of the workplace incident with Stefan on September 13, 2011.

30.     On several occasions over the course of Alamo's medical leave, the CFD medical section ordered different engine companies to conduct well-being checks on Alamo at his residence. These well-being checks, however, were harassing in nature and, on at least one occasion, the firefighters damaged Alamo's gate and embarrassed Alamo in from of his friends and neighbors. On information and belief, other firefighters who took a medical leave of absence were not harassed by the medical section and did not receive disruptive well-being checks that caused damage to the employee's property.

31.     On March 13, 2012, Alamo was informed by Tienda that he was running out of medical leave time, and she directed him to get a release order from his treating physician to return to full duty status without restrictions. However, Alamo also learned that day from

A024

Commander Edgar Ignacio that Tienda had calculated his furloughs improperly, and Alamo actually had an additional 68 days of time for medical leave under the CFD union contract.

32,     On March 14, 2012, Alamo met with his treating physician, Dr. Martinez, who authorized Alamo to return to work without restriction. Dr. Martinez gave Alamo a letter to give to CFD that detailed this authorization to return to work.

33.     On March 16, 2012, Alamo gave Tienda the authorization to work from Dr. Martinez. She said that, in addition to that authorization he needed a prescription note authorizing him for a Functional Capacity Evaluation.  Alamo received such a prescription from Dr. Martinez and forwarded it to Tienda on March 19, 2012.

34.     On March 21, 2012. Alamo followed up with the CFD medical section, and was then told by Dr. Morcos that the medical section "administration" now also needed progress notes from his treating physicians before it would release him to go back to work. This request had not been mentioned to Alamo in his previous conversations with Tienda. Alamo had his treating physicians, Dr. Martinez. Dr. Reynes and Dr. Terry Brennan all forward on their progress notes on March 22, 2012 and on March 26, 2012.

35.     On March 26, 2012, Tienda confirmed that she had received all the medical notes from Alamo's treating physicians. She did not ask Alamo for any other information or inform him that he needed to provide anything further. Dr. Morcos and Dr. Russell did not ask Alamo for any further information at this time either.

36.     On March 26, 2012, Alamo contacted his Union, Local 2, and met with his union representative regarding why the CFD would not allow him to return to work when he had been cleared by his treating physicians.

37.     On March 30, 2012, Alamo filed an inquiry with Tienda about his work status and requested CFD's reasons for keeping him on leave when he was authorized by his doctors to return to work. Alamo received no response to this inquiry.

38.     On April 4, 2012 Alamo filed an EEOC charge regarding the CFD's discriminatory and retaliatory treatment of him.

39.     Tienda finally called Alamo on April 3, 2012 and told him that Dr. Morcos with the CFD medical section was now requesting medical records for Alamo dating back to 2009, which was two years prior to the assault on Alamo at the firehouse, and wanted Alamo to undergo further psychological testing. physical testing and other medical information before clearing Alamo for work.

40.     On April 19, 2012, Tienda scheduled Alamo for psychological testing with Dr. Cavanaugh on May 1 and May 24, 2012. Alamo submitted to this testing on May 1, 2012, but was told by the doctor's office that CFD would be in touch with Alamo to schedule the second part of the test because the May 24, 2012 date had to be rescheduled.

41.     On May 8, 2012, Dr. Russell in the medical section asked Alamo for several more medical records dating back several years for Alamo to turn over to the CFD. On May 14, 2012, Alamo, through counsel, sent a letter to Dr. Russell seeking clarification regarding the necessity of these additional medical records and inquiring as to when the second part of the psychological testing with Dr. Cavanaugh would take place.

42.     Over the course of the ensuing month, Alamo's counsel called the medical section several times and sent letters to Tienda and medical section Commander Ignacio seeking clarification as to what else Mr. Alamo needed to provide in order to return to work. The clarification was necessary because the medical records release form Tienda and the CFD

9

A026

medical section provided to Alamo stated that his decision to release records was voluntary. However, the consequence of choosing not to release these confidential medical and personnel records was that Tienda would not release Alamo to return to work because Dr. Cavanaugh refused to continue his evaluation of Alamo without reviewing medical records dating back several years (including prior to Alamo's employment at the CFD), as well as personnel records from Alamo's previous employment with the Illinois State Police. Despite several attempts to contact Tienda and Ignacio, Alamo received no response to his clarification inquiries.

43.    On or about July 3, 2012, the CFD Deputy Commissioner of Human Resources Adrianne Bryant sent Alamo a letter explaining that he had exhausted his lay-up time and had not returned to work nor signed paperwork separating from the CFD. The letter requested that Alamo either return to work, resign, or go on a leave of absence. The letter further stated that if Alamo did not comply with the request by July 16, 2012, his employment status would be designated as "absent without authorized leave." Alamo's counsel sent a letter to Bryant on July 11, 2012 requesting that Alamo be allowed to return to work. To date Alamo's counsel has not heard back from Bryant.

44.    On or around July 6, 2012 the CFD stopped paying Alamo his salary and stopped his benefits due to Tienda's refusal to allow Alamo to return to work. On information and belief, other, non-Latino firefighters have not been subjected to the hurdles, obstacles, and challenges in their attempts to return to work after a medical leave of absence, as detailed above.  Further, on information and belief, other firefighters who did not file complaints about discrimination in the workplace were not subjected to these hurdles, obstacles, and challenges when returning to work, as detailed above.

45.     After a several month delay with no pay or benefits, Alamo was finally reinstated as a firefighter.

46.     The actions complained of in paragraphs 14 through 45 prevented Alamo from engaging in his chosen profession, caused him to lose his salary and benefits and have jeopardized his financial security.

47.     The actions complained of in paragraphs 14 through 45 have caused Alamo to lose wages, incur expenses and to suffer mentally and physically from stress, anger, humiliation, and frustration.

### COUNT I
### Title VII- National Origin Discrimination/Hostile Work Environment
### (Against Defendant the City of Chicago)

48.     Alamo realleges paragraphs 1 through 47 of this Third Amended Complaint as and for this ¶48 as though fully set forth herein.

49.     Alamo is a member of a protected class by national origin, specifically he is a Puerto Rican Latino.

50.     Alamo, in all respects, was performing his job in a manner that was consistent with the City's legitimate business expectations.

51.     Alamo suffered an adverse employment action in that he was verbally and physically harassed and intimidated at work because of his national origin, such conduct was condoned or tolerated by those in a position to stop it because of Alamo's national origin.

52.     Defendant City was aware of and was made aware of the above described conduct; yet, Defendant City did not take any reasonable steps to protect Alamo from said intimidating, hostile, and/or offensive work environment.

A028

53.     Defendant City violated Alamo's rights in that the City required Alamo to work in an intimidating, hostile, and/or offensive work environment and to work under supervisors who allowed these actions to go on because of Alamo's national origin without taking steps to prevent them.

54.     As a direct and proximate result of said unlawful employment practices and in disregard of Alamo's rights and sensibilities, Alamo has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Plaintiff Alamo prays that this Court:

A.     Enter judgment in favor of Alamo and against Defendant City of Chicago for violation of Alamo's rights under Title VII:

B.     Declare that the actions of the Defendant the City of Chicago were discriminatory;

C.     Award Alamo compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress;

D.     Award Alamo his costs, attorneys' fees and non-taxable expenses in this action;

E.     Grant Alamo such other and further relief as the Court deems equitable and just.

### COUNT II
### Title VII- National Origin Discrimination/Disparate Treatment
### (Against Defendant the City of Chicago)

55.     Alamo realleges paragraphs 1 through 54 of this Third Amended Complaint as and for this ¶55 as though fully set forth herein.

56.     Alamo is a member of a protected class by race or national origin, specifically he is a Puerto Rican Latino.

57.     Alamo, in all respects, was performing his job in a manner that was consistent with the City's legitimate business expectations.

58.     Alamo suffered an adverse employment action in that he was detailed excessively and he has had hurdles and challenges placed before him in his attempts to return to work after a medical leave of absence because of his national origin. These acts are detailed in the paragraphs above.

59.     Upon information and belief, similarly situated white employees of the City have not suffered the excessive detailing or the difficulties in returning to work following a medical leave of absence that Alamo has endured.

60.     Defendant City's actions in its agents and employees intentionally engaging in and condoning national origin discrimination against Alamo has caused him great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Plaintiff Alamo prays that this Court:

A.     Enter judgment in favor of Alamo and against Defendant City of Chicago for violation of Alamo's rights under Title VII:

B.     Declare that the actions of the Defendant the City of Chicago were discriminatory;

13

A030

C.      Award Alamo compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress;

D.      Award Alamo his costs, attorneys' fees and non-taxable expenses in this action;

E.      Grant Alamo such other and further relief as the Court deems equitable and just.

**COUNT III**
**Retaliation in Violation of Title VII**
**(Against Defendant the City of Chicago)**

61.     Alamo realleges paragraphs 1 through 60 of this Third Amended Complaint as and for this ¶61 as though fully set forth herein

62.     Alamo reported national origin harassment and an intimidating, hostile and/or offensive work environment resulting from other members of CFD to his superiors at CFD pursuant to his rights under Title VII, and CFD's policies and procedures.

63.     Defendant City of Chicago has retaliated against Alamo for reporting that harassment and an intimidating, hostile and/or offensive work environment by preventing him from returning to work and placing hurdles and challenges before him in his attempts to return to work after a medical leave of absence in retaliation for his reports to his superiors and others at CFD of harassment and an intimidating, hostile and/or offensive work environment based on his national origin.

WHEREFORE, Plaintiff Alamo prays that this Court:

A       Enter judgment in favor of Alamo and against Defendant The City of Chicago for violation of Alamo's rights under Title VII;

B.      Declare that the actions of the Defendant the City of Chicago were discriminatory;

14

A031

C.      Award Alamo compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress;

D.      Award Alamo punitive damages in such amount as the Court deems proper;

E.      Award Alamo his costs, attorneys' fees and non-taxable expenses in this action;

F.      Grant Alamo such other and further relief as the Court deems equitable and just.

**COUNT IV**
**Section 1983- Race Discrimination/Hostile Work Environment**
**(Against Defendant Charlie Bliss)**

64.     Alamo realleges paragraphs 1 through 63 of this Third Amended Complaint as and for this ¶64 as though fully set forth herein.

65.     The actions of Defendant Bliss complained of in paragraphs above, deprived Alamo of his equal protection rights as a Firefighter employed by the City of Chicago.

66.     The actions of Bliss complained of in the paragraphs above, were done under color of law in that they were undertaken by Defendant Bliss in and through his official capacity.

67.     The actions complained of in paragraphs above were done because of Alamo's race.  Defendant Bliss subjected Alamo to discriminatory and harassing treatment by failing to remedy the intimidating, hostile, and/or offensive work environment. Specifically as to Bliss, he was aware that other employees were physically and verbally harassing Alamo because of his race and national origin, but did nothing to stop it, though it was his job to do so.  Upon information and belief, he would not (and has not) permitted such physical and verbal harassment of similarly situated non-Latino firefighters.

15

A032

68.     The result of these unlawful actions has been to deprive Alamo of equal employment opportunities because of his race, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

WHEREFORE, Plaintiff Alamo prays that this Court:

A     Enter judgment in favor of Alamo and against the defendants for violation of Alamo's rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

B.     Declare that the actions of the Defendant Charlie Bliss were discriminatory;

C.     Award Alamo compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress;

D.     Award Alamo punitive damages in such amount as the Court deems proper;

E.     Award Alamo his costs, attorneys' fees and non-taxable expenses in this action;

F.     Grant Alamo such other and further relief as the Court deems equitable and just.

## COUNT V
### Violation of the ADA- Failure To Accommodate
### (Against Defendant the City of Chicago)

69.     Alamo realleges paragraphs 1 through 47 of this Third Amended Complaint as and for this ¶69 as though fully set forth herein.

70.     At all times relevant hereto, Alamo was an individual with a "disability" and/or was considered to have a "disability," as that term is defined in §3(2) of the ADA, 42 U.S.C. § 12102, in that he suffered from Post-Traumatic Stress Disorder ("PTSD").

71.     The ADA prohibits an employer from discriminating against an individual based upon (amongst other things) his disability.

16

A033

72.    The ADA requires an employer to provide reasonable accommodations to its disabled employees.

73.    In early 2012, Alamo made repeated requests to return to work, thereby asking the City to make a reasonable accommodation to his disability, and Alamo also provided medical clearance for that return from his treating medical professionals.

74.    The City refused these repeated requests.

75.    Alamo's requested accommodation was reasonable and would not have been unduly burdensome for the City.

76.    As a direct and proximate result of said unlawful employment practices and in disregard of Alamo's rights and sensibilities, Alamo has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

WHEREFORE, Plaintiff Alamo prays that this Court:

A    Enter judgment in favor of Alamo and against the Defendant the City of Chicago for violation of Alamo's rights under The Americans With Disabilities Act;

B.    Declare that the actions of the Defendant the City of Chicago were discriminatory;

C.    Award Alamo compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress;

D.    Award Alamo punitive damages in such amount as the Court deems proper;

E.    Award Alamo his costs, attorneys' fees and non-taxable expenses in this action;

F.    Grant Alamo such other and further relief as the Court deems equitable and just.

17

A034

**COUNT VI**
**State Law Assault**
**(Against Defendants Patrick Stefan/the City of Chicago)**

77.     Alamo realleges paragraphs 4 through 47 of this Third Amended Complaint as and for this ¶77 as though fully set forth herein

78.     Defendant Stefan owed a duty to use reasonable care in his interactions with Alamo.

79.     Defendant Stefan breached his duty by yelling profanities at Alamo, calling him names, and physically menacing Alamo, and thereby placed Alamo in fear of imminent physical force.

80.     Defendant Stefan is liable to Alamo under Illinois law for assault.

81.     Defendant City of Chicago is liable to Alamo pursuant to the doctrine of *respondeat superior*.

82.     That as a direct and proximate result of one or more of the aforesaid acts, Alamo sustained severe and personal and pecuniary injuries, of an economic and non-economic nature, including but not limited to medical expenses, hospital expenses, loss of earnings, pain and mental anguish and distress.

WHEREFORE, Plaintiff Alamo prays that this Court:

A.     Enter judgment in favor of Alamo and against Defendants Patrick Stefan and the City of Chicago for assault against Alamo;

B.     Award Alamo compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses;

C.     Award Alamo compensation for non-economic damages of pain and suffering and mental anguish and distress.

18

A035

D.      Grant Alamo such other and further relief as the Court deems equitable and just.

### COUNT VII
### State Law Battery
### (Against Defendant Patrick Stefan/the City of Chicago)

83.      Alamo realleges paragraphs 4 through 47 and 77 through 82 of this Third

Amended Complaint as and for this ¶83 as though fully set forth herein.

84.      As alleged above, Defendant Stefan chest bumped and pushed Alamo against a

wall.

85.      This physical contact by Defendant Stefan was offensive and injurious, and

against Alamo's will.

86.       Defendant Stefan owed a duty to use reasonable care in his interactions with

Alamo.

87.      Defendant Stefan breached his duty to Alamo by intentionally chest bumping

Alamo and pushing Alamo against a wall.

88.      Defendant Stefan is liable to Alamo under Illinois law for battery.

89.      Defendant City of Chicago is liable to Alamo pursuant to the doctrine of

*respondeat superior*.

90.      That as a direct and proximate result of one or more of the aforesaid acts, Alamo

sustained severe and personal and pecuniary injuries, of an economic and non-economic nature,

including but not limited to medical expenses, hospital expenses, loss of earnings, pain and

suffering and mental anguish and distress.

WHEREFORE, Plaintiff Alamo prays that this Court:

A.      Enter judgment in favor of Alamo and against Defendants Patrick Stefan and the

City of Chicago for battery against Alamo;

A036

B.   Award Alamo compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses;

C.   Award Alamo compensation for non-economic damages of pain and suffering and mental anguish and distress.

D.   Grant Alamo such other and further relief as the Court deems equitable and just.

**JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues herein.

Respectfully submitted,
MICHAEL A. FACCENDA

By: /s/ Michael A. Faccenda
     One of His Attorneys

Michael A. Faccenda
Matthew P. Barrette
Sullivan Hincks & Conway
120 West 22nd Street, Suite 100
Oak Brook, IL 60523
Tel: (630)573-5021
michaelfaccenda@shlawfirm.com
ARDC # 6239317
mattbarrette@shlawfirm.com
ARDC # 6274523

20

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2012-03052 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Roberto G. Alamo | (773) 319-4599 | 06-07-1969 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2172 N. Mango Ave, Chicago, IL 60639 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| CHICAGO FIRE DEPARTMENT | 500 or More | (312) 746-1213 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1338 S. Clinton,  Chicago, IL 60607 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

**DATE(S) DISCRIMINATION TOOK PLACE**
Earliest — Latest: 09-13-2011
☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with Respondent on or about February 1, 2006. My current position is Fire Fighter. Respondent is aware of my disability. During my employment, I was subjected to different terms and conditions of employment than non-Puerto Rican employees, including but not limited to, work assignments. I was also subjected to ethnic harassment. I complained to Respondent to no avail. Subsequently, Respondent will not allow me to return to work.

I believe I have been discriminated because of my national origin, Puerto Rican, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I also believe I have been discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the American with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Apr 04, 2012 _____ Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |



A038



**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
2011 6924

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

May 2, 2013

Mr. Roberto G. Alamo
c/o Karyn L. Bass Ehler, Esquire
Law Offices of Hughes, Socol, et al.
70 West Madison Street
Suite 4000
Chicago, IL  60602

Re:  EEOC Charge Against Chicago Fire Dept.
     No. 440201203052

Dear Mr. Alamo:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Thomas E. Perez
Assistant Attorney General
Civil Rights Division

by *Karen J. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Chicago District Office, EEOC
    Chicago Fire Dept.

EXHIBIT

B

A039

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTO G. ALAMO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  12-cv-04327 |
| | ) | |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| THE CITY OF CHICAGO, CHARLIE | ) | |
| BLISS and PATRICK STEFAN, in their | ) | |
| Individual Capacities, | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendants City of Chicago (the "City"), Charlie Bliss, and Patrick Stefan (collectively, "Defendants"), by their attorney, Stephen R. Patton, Corporation Counsel for the City, hereby move to dismiss Plaintiff's Third Amended Complaint in its entirety.  In support of this motion, Defendants incorporate herein their Memorandum of Law and state as follows:

1.    Plaintiff, "a Latino citizen of Puerto Rican descent," alleges that he has worked for the City as a Firefighter with CFD since 2006.  (Dkt. 86, ¶ 4.)  He filed his Third Amended Complaint on August 1, 2014.  (Dkt. 86.)  Despite having pursued race discrimination claims pursuant to Title VII and Section 1983 for over two years, Plaintiff radically has changed course with his Third Amended Complaint, asserting six entirely new counts in his new complaint including national origin harassment, national origin discrimination, retaliation, the Americans with Disabilities Act (the "ADA"), as well as state law assault and battery.  (Dkt. 86.)

2.    Plaintiff asserts four new counts against the City:  Count I – National Origin Discrimination/Hostile Work Environment (Dkt. 86, ¶¶ 48-54); Count II – National Origin

A040

Discrimination/Disparate Treatment (*id*. at ¶¶ 55-60); Count III – Retaliation in Violation of Title VII (*id*. at ¶¶ 61-63); and Count IV – Violation of the ADA/Failure to Accommodate (*id*. at ¶¶ 69-76). Plaintiff asserts one count against Bliss alone, Count IV – Race Discrimination / Hostile Work Environment. (*Id*. at ¶¶ 64-68.) Plaintiff asserts two new state law counts against both Stefan and the City, Count VI – State Law Assault (*id*. at ¶¶ 77-82) and Count VII – State Law Battery (*id*. at ¶¶ 83-90). All of these counts should be dismissed.

3.    Plaintiff should not be allowed to bring six new counts against Defendants where the Second Amended Complaint has been answered and the parties already have engaged in written discovery on the now-abandoned claims. (*See* Dkts. 51, 69.) The district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendant, or where the amendment would be futile. *See Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F. 3d 750, 759 (7th Cir. 2002). As such, Plaintiff should not be allowed to proceed on these new claims.

4.    Even if Plaintiff were to be allowed to go forward with the new claims in his Third Amended Complaint, his Title VII (Counts I-III) and ADA (Count V) claims should be dismissed for failure to file within 90 days of receiving his right-to-sue letter from the EEOC. *See Davis v. Int'l Union of Operating Eng'rs Local Union No. 965*, 134 F. App'x 950, 951 (7th Cir. 2005).

5.    Counts I-III and V also should be dismissed for failure to state a claim. Counts I and II fail as Plaintiff has not pleaded actionable national origin harassment or discrimination under Title VII. *See Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 550 (7th Cir. 2002). Plaintiff cannot proceed on these claims in the absence of facts suggesting that he experienced severe or pervasive harassment or a materially adverse employment action. Count

2

A041

III (Retaliation in Violation of Title VII) also is subject to dismissal for failure to allege a materially adverse employment action. *See Pettis v. L.A. Fitness*, No. 12-cv-2806, 2012 WL 5936296, at *2 (N.D. Ill. Nov. 27, 2012) (Guzman, J.) (dismissing claims of Title VII discrimination and retaliation for failure to state a claim), *aff'd* 508 F. App'x 565 (7th Cir. 2013). Count V, Violation of the ADA — Failure to Accommodate, also fails to state a claim. Plaintiff concludes that he suffers from Post-Traumatic Stress Disorder (Dkt. 86, ¶ 70), but has not alleged facts suggesting that he has a disability or what accommodation he requested, or to whom he made such requests. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013).

6.      Count IV fails to state a claim for Section 1983 Race Discrimination/Hostile Work Environment against Bliss. (Dkt. 86, ¶¶ 64-68.) Because Plaintiff has failed to allege that he suffered severe or pervasive harassment actionable under Title VII, he cannot allege that the harassment he experienced rose to the level of violating the constitution. Without constitutional harassment to condone, there can be no supervisor liability under Section 1983. *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

7.      Counts VI (State Law Assault) and VII (State Law Battery) against the City and Stefan should be dismissed as they are preempted and time-barred. "Workplace assaults and batteries are generally compensable under [the Illinois Workers' Compensation Act], and, therefore, not actionable at common law." *Damato v. Jack Phelan Chevrolet Geo, Inc.,* 927 F. Supp. 283, 290-91 (N.D. Ill. 1996). Moreover, the state law claims are time-barred under Section 8-101 of the Illinois Governmental and Governmental Employees Tort Immunity Act (the "ITIA"). "Section 8-101 . . . provides that a civil action sounding in tort asserted against a local entity or any of its employees must be 'commenced within one year from the date that the

3

injury was received or the cause of action accrued.'" *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004) (quoting 745 ILCS 10/8-101). Plaintiff alleges state law assault and battery claims for the first time in his Third Amended Complaint, filed in August 2014. (Dkt. 86.) Plaintiff alleges that the actions resulting in the purported assault and battery occurred on September 13, 2011. (Dkt. 86, ¶¶ 18-19.) As such, Plaintiff's state law claims also should be dismissed as they are time-barred.

8.      Additionally, this Court should strike Plaintiff's requests for punitive damages in Counts III and V. (Dkt. 86, ¶¶ 63(D), 76(D).) Municipalities, such as the City, are immune from punitive damages. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

WHEREFORE, for the reasons set forth above, and as explained more fully in their Memorandum of Law, Defendants respectfully request that this Court dismiss Plaintiff's Third Amended Complaint in its entirety, with prejudice, and strike his requests for punitive damages against the City.

**DATED**:       September 8, 2014                    Respectfully submitted,

                                                      STEPHEN R. PATTON
                                                      Corporation Counsel of the City of Chicago

                                            By:      */s/ Alison D. Alvarez*_____
                                                      ALISON D. ALVAREZ
                                                      MELANIE PATRICK NEELY
                                                      Assistants Corporation Counsel

City of Chicago Law Department
Employment Litigation Division
30 North LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-4939/5453

4

A043

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTO G. ALAMO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  12-cv-04327 |
| | ) | |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| THE CITY OF CHICAGO, CHARLIE | ) | |
| BLISS and PATRICK STEFAN, in their | ) | |
| Individual Capacities, | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

A044

Defendants City of Chicago (the "City"), Charlie Bliss, and Patrick Stefan (collectively, "Defendants"), by their attorney, Stephen R. Patton, Corporation Counsel for the City, submit the following memorandum of law in support of their Motion to Dismiss Plaintiff's Third Amended Complaint.

## INTRODUCTION

Over two years after filing his original complaint in this matter, Roberto G. Alamo ("Plaintiff") now brings his seven-count Third Amended Complaint (or the "Complaint"). (Dkt. 86). Plaintiff's Complaint should be dismissed for the reasons that follow. Initially, six of the seven counts alleged in Plaintiff's Third Amended Complaint are brand new. Thus, despite having had two opportunities to properly amend his complaint, Plaintiff now largely abandons his race discrimination claims that the parties have been litigating for over two years, and upon which basis the parties exchanged extensive written discovery. Should these improper amendments be allowed to proceed at this late stage, Defendants would be unduly prejudiced, as they will be required to start the entire discovery process over from the beginning. Moreover, Plaintiff brings entirely new state law claims against now retired Captain Stefan that could have been asserted much earlier if not for Plaintiff's undue delay.

Even if he is allowed to proceed on this almost entirely new Complaint, Plaintiff's national origin Title VII and ADA claims would be time-barred in that he did not file them within 90 days of receiving his right to sue letter from the EEOC. Moreover, all of those counts, as well as his Section 1983 claim against Bliss, fail to state a claim. Plaintiff's brand new state law claims against the City and Stefan for assault and battery should be dismissed as they are preempted and time-barred. Accordingly, because Plaintiff has now had four bites at the apple

1

and still fails to plead plausible claims that would entitle him to relief, Plaintiff's Third Amended Complaint should be dismissed with prejudice.

## **LEGAL STANDARD**

When considering a motion to dismiss brought pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), the court must assume all well-pleaded allegations in the complaint are true and must construe them in a light most favorable to the plaintiff. *See Peters v. Village of Clifton*, 498 F.3d 727, 730 (7th Cir. 2007); *see also Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002). Still, to meet federal pleading standards, and to survive a motion to dismiss, a complaint must overcome two hurdles. "First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (2007) (internal quotations omitted). Second, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and not merely speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). A district court must consider the "speculative," "implausible and ungrounded" nature of the allegations when deciding "whether the complaint has enough substance to warrant putting the defendant to the expense of discovery." *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). Conclusory allegations do not assist the plaintiff in stating a claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011) (disregarding all legal conclusions and holding that the remaining factual allegations were insufficient to state a claim). Under the applicable standards, Plaintiff's Complaint fails to state a claim, and therefore, should be dismissed.

A046

## BRIEF SUMMARY OF THE PROCEDURAL HISTORY
## AND RELEVANT FACTUAL ALLEGATIONS

Plaintiff, "a Latino citizen of Puerto Rican descent," alleges that he has worked for the City as a Firefighter with CFD since 2006.[1] (Dkt. 86, ¶ 4.) Bliss is alleged to be a Lieutenant on Engine Company 55 and Plaintiff's immediate supervisor. (*Id*. at ¶ 6.) Stefan is alleged to be a Fire Captain on Truck 44. (*Id*. at ¶ 7.) Bliss and Stefan currently are the only individual defendants in the current iteration of Plaintiff's complaint. Plaintiff had filed an EEOC charge on April 4, 2012 alleging national origin discrimination, disability discrimination and retaliation. (Dkt. 86, ¶ 11; Dkt. 86-1.) His right to sue letter issued on May 2, 2013. (*Id*. at ¶ 12; Dkt. 86-2.)

Plaintiff filed his original complaint in June 2012 and his First Amended Complaint in September 2012. (Dkts. 1, 20.) Plaintiff then filed his Second Amended Complaint on July 18, 2013, in which the City, Dr. Isaac Morcos and Dr. Hugh Russell were first added as defendants. (Dkt. 50.) The Second Amended Complaint alleged only one count against the City for "Title VII—Race Discrimination." (Dkt. 50, ¶¶45-50). It also included a "Section 1981 – Race Discrimination" claim against Stefan in Count II (*id*. at ¶¶ 51-54) and a "Section 1983 – Race Discrimination" claim against Bliss, Tienda, Morcos and Russell, in Count III (*id*. at ¶¶ 55-59). Defendants answered the Second Amended Complaint (Dkt. 51) and the parties engaged in written discovery related to these claims (*see* Dkt. 69). Defendants were attempting to schedule the deposition of Plaintiff when Plaintiff's counsel of record suddenly withdrew. (Dkt. 73.)

Plaintiff, through his new counsel (Dkt. 78), now brings his Third Amended Complaint, but this time, only against the City, Bliss and Stefan. (Dkt. 86.) Plaintiff asserts four new counts against the City: Count I – National Origin Discrimination/Hostile Work Environment (*id*. at ¶¶ 48-54); Count II – National Origin Discrimination/Disparate Treatment (*id*. at ¶¶ 55-60); Count

---

[1] The facts Plaintiff alleges are taken as true only for purposes of Defendants' Motion to Dismiss.

A047

III – Retaliation in Violation of Title VII (*id.* at ¶¶ 61-63); and Count IV – Violation of the

ADA/Failure to Accommodate (*id.* at ¶¶ 69-76).  Plaintiff asserts one count against Bliss, Count

IV – Race Discrimination/Hostile Work Environment.  (*Id.* at ¶¶ 64-68.)  Plaintiff asserts two

new state law counts against both Stefan and the City:  Count VI – State Law Assault (*id.* at ¶¶

77-82) and Count VII – State Law Battery (*id.* at ¶¶ 83-90).

Ostensibly in an effort to support his race claims as to Bliss, Plaintiff specifies for the

first time that he informed Bliss "in July, August and November of 2010, and April, July and

August of 2011, of the harassment that he endured from his fellow firefighters, including, but not

limited to, name-calling, derogatory and racist comments, including his national origin, such as

calling [him] a 'spic' and a 'fucking Puerto Rican."  (Dkt. 86 at ¶ 15.)  Plaintiff states that he

"filed a harassment complaint with Battalion Chief Curt Annis and Bliss" about the harassment

he was experiencing with Engine Company 55, including being detailed excessively and an

incident with firefighter Dan Sheahan, who purportedly directed racist and derogatory comments

regarding Plaintiff's Puerto Rican national origin and verbally harassed and physically assaulted

him in or around March of 2011.  (*Id.* at ¶ 16.)  Plaintiff claims that Bliss did not take any action

to address Plaintiff's concerns.  (*Id.*)

As to Stefan, Plaintiff's only allegations involve a single discrete incident that occurred

on September 13, 2011.  (Dkt. 86 at ¶¶ 18-20.)  Plaintiff was sleeping in the television room

when his Engine Company (Engine Company 55) went for a run.  (Dkt. 86 at ¶¶ 17-18.)  Stefan,

a Fire Captain on Truck 44, found Plaintiff sleeping in the television room when he should have

been out on a run with his co-workers on Engine Company 55.  (*Id.* at ¶¶ 18-19.)  Stefan woke

Plaintiff up, "yelled profanities at him, called him names," and then "began chest bumping

[Plaintiff], used more profanity and derogatory terms, and again threatened physical violence."

(*Id*. at ¶ 18.)  Plaintiff says "he was fearful of getting into a fight with Stefan."  (*Id*.)  When

Plaintiff's Engine Company came back from the run that Plaintiff slept through, Plaintiff claims

that he came downstairs and "was pushed against the wall by Stefan."  (*Id.* at ¶ 19.)

      Plaintiff completed the rest of his shift at Engine Company 42, which ended at 6:00 a.m.

on September 14, 2011.  (Dkt. 86 at ¶ 24.)  Plaintiff was on the bus on his way home, but then

called a friend to pick him up.  The friend took him to St. Joseph's Hospital where he was

diagnosed with "chest contusion, stress, and possible post-traumatic stress disorder."  (*Id*. at ¶

25.)  Plaintiff began a medical leave starting September 14, 2011.  (*Id*. at ¶ 29.)  Plaintiff's

personal doctor diagnosed Plaintiff with "work-related anxiety" on September 15, 2011.  (*Id*. at ¶

26.)  CFD's Dr. Russell requested medical records from Plaintiff on May 8, 2012.  (*Id*. ¶ 41.)

Plaintiff does not allege that he provided these requested records to CFD.  (*Id*.)  On July 6, 2012

CFD stopped paying Plaintiff because, as stated in a letter, he had "exhausted his [medical leave]

lay-up time and had not returned to work nor signed paperwork separating from CFD."  (*Id*. at ¶¶

43-44.)  After several months, he was "reinstated as a firefighter."  (*Id*. at ¶ 45.)

<u>**LEGAL ANALYSIS**</u>

**I.**     **THE SIX BRAND NEW COUNTS IN PLAINTIFF'S THIRD AMENDED COMPLAINT SHOULD BE DISMISSED.**

      Plaintiff alleges seven counts in his Third Amended Complaint.  Six of these counts are

brand new — Counts I-III and V-VII.  (*Compare* Dkt. 86 *with* Dkt. 50.)  Plaintiff should not be

allowed to bring six new counts against Defendants where the Second Amended Complaint has

been answered and the parties already have engaged in extensive written discovery on the now-

abandoned claims.  (*See* Dkts. 51, 69.)  District courts have broad discretion to deny leave to

amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure

deficiencies, undue prejudice to the defendant, or where the amendment would be futile.  *See*

*Thompson v. Ill. Dep't of Prof'l Reg.*, 300 F. 3d 750, 759 (7th Cir. 2002).  Plaintiff's motion for an extension of time to file a motion for leave to file an amended complaint (Dkt. 83) was granted as an "unopposed motion for extension of time to 8/1/2014 to file amended complaint" without the proposed Third Amended Complaint attached (Dkt. 85).  As such, Defendants did not have the opportunity to review or oppose the Third Amended Complaint before it was filed. [2]  Had Defendants been informed that Plaintiff sought to assert for the first time six new claims against the City and Stefan, they certainly would have opposed those amendments.  Accordingly, Defendants now challenge the Third Amended Complaint to the extent that Plaintiff is asserting new claims after two years of substantial litigation, including written discovery.  Plaintiff's undue delay in asserting these six belated claims prejudices Defendants as they would now need to begin anew with written discovery in a 2012 case.  Plaintiff already had enjoyed leave to amend on two different occasions (Dkts. 19, 49).  Furthermore, radically changing the legal landscape of the complaint after two years of litigation begs the question of why these claims were not asserted earlier if they were appropriate for this case.  It would be unfair to the City and retired Captain Stefan to be required to begin written discovery anew simply because Plaintiff's previous attorney withdrew and his new counsel views the allegations differently.  Allowing these amendments would effectively punish the City and Stefan while rewarding Plaintiff's undue delay.  For all of these reasons, Counts I-III and V-VII of Plaintiff's Third Amended Complaint should be dismissed.

## II.     PLAINTIFF'S TITLE VII AND ADA CLAIMS SHOULD BE DISMISSED FOR FAILURE TO FILE WITHIN 90 DAYS OF THE RIGHT-TO-SUE LETTER.

Plaintiff's Title VII and ADA claims (Dkt. 86, ¶¶ 48-63, 69-76) should be dismissed for failure to file within 90 days of receiving his right-to-sue letter from the EEOC.  A potential Title

---

[2] Defense counsel was aware that Plaintiff intended to dismiss his claim against Stefan under Section 1981, but was not aware of any other anticipated substantive legal amendments to the Complaint.

6

VII and ADA plaintiff must file a lawsuit within 90 days of receiving a right-to-sue letter from

the EEOC. *Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999); *Davis v. Int'l*

*Union of Operating Eng'rs Local Union No. 965*, 134 F. App'x 950, 951 (7th Cir. 2005)

(affirming the lower court's decision granting the motion to dismiss because the lawsuit was

filed more than 90 days after the right-to-sue notice was issued); *Knight v. City of Milwaukee*,

172 F.3d 53 (7th Cir. 1998) (table) (same).

Here, Plaintiff alleges that the EEOC issued his right-to-sue letter on May 2, 2013.  (Dkt.

86 at ¶ 12.)  The right-to-sue letter specifically states:  "If you choose to commence a civil

action, such suit must be filed in the appropriate Court within 90 days of your receipt of this

Notice."  (Dkt. 86-2).  Nevertheless, Plaintiff first filed suit asserting claims for Title VII

national origin discrimination and retaliation, and for failure to accommodate under the ADA on

August 1, 2014, or 456 days after the EEOC issued his right-to-sue letter.  (Dkt. 86, ¶¶ 48-63,

69-76.)  Plaintiff's Second Amended Complaint included no ADA claim or related allegations

and only one count under Title VII — a claim for race discrimination.  Race discrimination and

national origin discrimination, however, are not synonymous.  *See Padron v. Wal-Mart Stores,*

*Inc.*, 783 F. Supp. 2d 1042, 1048-49 (N.D. Ill. 2011) (finding that Plaintiff who self-identified as

Cuban had not brought charge of race discrimination).  In the context of the timely filing

requirements of such claims, "strict adherence to the procedural requirements specified by the

legislature is the best guarantee of evenhanded administration of the law."  *Nat'l R.R. Passenger*

*Corp. v. Morgan*, 536 U.S. 101, 108 (2002) (*quoting Mohasco Corp. v. Silver*, 447 U.S. 807, 826

(1980)).  As such, Counts I, II, III and V should be dismissed because Plaintiff failed to file them

within 90 days of receiving the right-to-sue letter.

A051

III.   **PLAINTIFF FAILS TO PLEAD ACTIONABLE TITLE VII NATIONAL ORIGIN DISCRIMINATION IN COUNTS I AND II.**

Even if Plaintiff could be considered to have timely filed his Title VII national origin discrimination claims, Plaintiff still fails to plead an actionable claim.

A.     **The Actionable Time-Period For Plaintiff's National Origin Harassment Claim Is June 2011 To April 2012.**

Plaintiff's allegations that occurred prior to June 9, 2011, or that exceed the scope of his administrative charge, are not actionable.  In Illinois, a complainant must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act.  *See Doe v. Oberweis Dairy*, 456 F.3d 704, 708 (7th Cir. 2006).  Failure to file an EEOC charge within that time frame "renders the charge untimely."  *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999).  Additionally, a plaintiff may assert in his federal complaint only those Title VII claims that were included in his EEOC charge.  *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).  A plaintiff may proceed on a claim not explicitly set forth in the underlying charge only when the claim is "like or reasonably related to the EEOC charges, and the claim in the complaint reasonably could be expected to grow out of an EEOC investigation of the charge."  *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (internal punctuation marks and citation omitted).   The aforementioned requirements afford the EEOC an opportunity to investigate the charge, to decide whether to sue, and to attempt to conciliate the dispute between the employee and employer.  *See Oberweis Dairy*, 456 F.3d at 708. They also ensure that the employer has sufficient notice of the complainant's charges.  *See Cheek*, 31 F.3d at 500.  A plaintiff asserting a hostile environment claim must file a charge "as soon as the harassment becomes sufficiently palpable that a reasonable person would realize [he] had a substantial claim under Title VII." *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 703 (7th Cir. 2001).

In Count I of his Third Amended Complaint, Plaintiff alleges that "he was verbally and physically harassed and intimidated at work because of his national origin," the City was made aware of this harassment, and did not take reasonable steps to protect Plaintiff.  (Dkt. 86 at ¶ 51.) Plaintiff does not allege any national origin harassment at work after August 2011, yet he failed to file his charge until April 4, 2012.  (*Id*. at ¶ 11, 15-16; Dkt. 86-1.)  Accordingly, Plaintiff's limitations period thus extends back only to June 9, 2011.  *See Shanoff*, 258 F.3d at 703.

**B.      Plaintiff Does Not Plead Severe Or Pervasive Harassment.**

Not all harassment is actionable:  Title VII is not a code of civility.  Instead, it only makes harassment actionable when the workplace is permeated with discriminatory intimidation, ridicule, which is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  *Pryor v. Seyfarth, Shaw,* 212 F.3d 976, 978 (7th Cir. 2000).  The elements of a hostile work environment claim include that: (1) the work environment was both subjectively and objectively offensive; (2) the plaintiff's national origin was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there was a basis for employer liability.  *See Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014), *petition for cert. filed*, 38 U.S.L.W. 3017 (U.S. Jun. 23, 2014) (No. 13-1540); *Peters*, 307 F.3d at 552 (affirming finding that the plaintiff did not suffer severe or pervasive harassment where the offensive and insensitive conduct was infrequent (six incidents in a 18-month period) and the conduct complained of was only mildly offensive, with the exception of a "n-word" comment that was not directed to the plaintiff).  *See also Benders v. Bellows & Bellows*, 515 F.3d 757, 768 (7th Cir. 2008) (affirming dismissal of harassment claim based on hostile work environment for failure to state a claim); *Stone v. Bd. of Trustees of N. Ill. Univ.*, --- F. Supp. 2d ---, No. 13-cv-04089, 2014 WL 3845164, at *5 (N.D. Ill. Aug. 5, 2014) (Kapala, J.) (dismissing hostile work environment claim where complaint lacked any factual allegations plausibly suggesting either

9

the severity or pervasiveness of the identified harassment); *Triplett v. Starbucks Coffee*,  No. 10-cv-5215, 2011 WL 3165576, at *4-5 (N.D. Ill. July 26, 2011) (Kendall, J.) (finding that the plaintiff failed to state a claim for a hostile work environment)[3].  Courts look to "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance.  Offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840-41 (7th Cir. 2009).

Despite this being Plaintiff's fourth complaint, his factual allegations still fail to suggest that the purportedly harassing conduct may have been sufficiently severe or pervasive to state a claim for Title VII harassment.   Plaintiff does not actually allege that he suffered any national origin harassment between June 2011 and April 2012.  (*See* Dkt. 86, ¶¶ 15-16.)  Instead, Plaintiff alleges only that he *informed* Bliss of harassment from co-workers in July and August 2011. (*Id*.)  Further, even if the alleged instances of "harassment" did occur in July and August 2011, they are insufficient to support a claim of severe and pervasive national origin harassment. Plaintiff alleges only two comments that even arguably implicate his national origin — his claim that fellow firefighters called him a "spic" and "fucking Puerto Rican." (*Id*. at ¶ 15.)[4]  Although "simply calling someone of Puerto Rican descent a 'Puerto Rican' is not a racial epithet." *Hernandez v. Forest Preserve Dist. of Cook Cnty.*, No. 08–cv–5731, 2011 WL 4398136, at * 6 (N.D. Ill., Sept. 21, 2011) (Dow, J.) (finding no hostile work environment where the events

---

[3] All unpublished decisions are attached hereto as Exhibit 1.
[4] Plaintiff does not allege that the term "Nigger" was directed to him or that it was used by a supervisor. (Dkt. 86, ¶ 15.)  *See Peters*, 307 F.3d at 552 (affirming finding of no hostile work environment where, in part, the plaintiff complained of "second-hand" harassment by a co-worker, including the use of the word "nigger" by a co-worker).  Additionally, Plaintiff does not allege that he was "excessively detailed" or that his food was stolen because of his Puerto Rican national origin.  (Dkt. 86, ¶ 16.)  And, the incident involving Firefighter Dan Sheahan occurred outside of the actionable time period, in March 2011.  (*Id*.)

described by the plaintiff were sporadic, isolated, and, at worst, rude and offensive).  Moreover, evidence of a supervisor's occasional or sporadic use of a slur directed at an employees' race, ethnicity, or national origin generally is not enough to support a claim under Title VII.  *Nazaire v. Trans World Airlines, Inc.*, 807 F.2d 1372, 1380 (7th Cir. 1986), *abrogated on other grounds* (*see Lewis v. Russe*, 713 F. Supp. 1227 (N.D. Ill. 1989)).  Here, Plaintiff has not alleged that any supervisors used any even arguably offensive terms.  Thus, without factual allegations suggesting the pervasiveness or severity of the identified harassment, Plaintiff's hostile work environment claim should be dismissed.  *See Triplett*, 2011 WL 3165576, at *4-5.

### C.    Plaintiff Does Not Plead An Actionable Adverse Employment Action.

Plaintiff's failure to plead an adverse action dooms Count II.  To survive a motion to dismiss on the basis of national origin discrimination, the plaintiff needs to allege that the employer instituted an adverse employment action against him on the basis of his national origin.  *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011) (affirming dismissal of, *inter alia*, gender discrimination claim where the allegations did not suggest that gender motivated any of the purported adverse actions).  "[N]ot everything that makes an employee unhappy is an actionable adverse employment action."  *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).  For discrimination claims, an employment action is materially adverse if there is a "significant change in the claimant's employment status, such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits."  *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).  The harm suffered by a plaintiff must be an economic injury and/or materially alter the terms of employment in order to constitute an adverse employment action.  *Markel v. Bd. of Regents*, 276 F.3d 906, 911 (7th Cir. 2002).

11

A055

Plaintiff's claim that he was "detailed excessively" is not an adverse action. (Dkt. 86, ¶ 58.) As an initial matter, this conduct is not alleged to have occurred during the actionable time period, nor is it alleged to have occurred because of Plaintiff's Puerto Rican national origin. (Dkt. 86, ¶ 16.) Moreover, it is not alleged to have resulted in economic injury or materially altered the terms of Plaintiff's employment. (*Id.*) A brief assignment to a different location would be at most a "mere inconvenience," which does not qualify as a materially adverse employment action. *Oest v. Ill. Dept. of Corrs.*, 240 F.3d 605, 612 (7th Cir. 2001); *see also Smart*, 89 F.3d at 441.

Plaintiff's claim that "he has had hurdles and challenges placed before him in his attempts to return to work after a medical leave of absence" similarly fails to qualify as a materially adverse employment action. (Dkt. 86, ¶ 58.) These allegations are outside the scope of the charge. As of April 2012 when Plaintiff filed his EEOC charge, he had not exhausted his medical lay-up time, so his pay, benefits and title were not changed. (*See id.* at ¶ 44.) Accordingly, as Plaintiff has failed to exhaust his administration remedies as to this purported adverse employment action, it is not actionable. *See Cheek*, 31 F.3d at 500. Moreover, the allegations in his Third Amended Complaint are not like or reasonably related to the allegations in his charge as they involve the actions of different people during different time periods. *See Peters*, 307 F.3d at 550-51. In April 2012, Plaintiff complained that Tienda and the physicians in the CFD medical section requested additional medical records and further evaluation. (Dkt. 86, ¶¶ 31-41.) Three months later, in July 2012, Plaintiff claims that CFD Deputy Commissioner of Human Resources advised him that his lay-up time was exhausted and he would be designated as "absent without authorized leave" if he did not return to work or complete the appropriate paperwork. (*Id.* at ¶ 43.) Furthermore, having "hurdles and challenges placed before him" is not

A056

a tangible adverse employment action as those hurdles and challenges did not change his pay, benefits or title.  (*Id*. at ¶ 58.)

Plaintiff's Third Amended Complaint also fails to suggest that Plaintiff's "challenges and hurdles" were instituted *because of* Plaintiff's national origin (even assuming that they could be considered a materially adverse employment action, which they cannot).  Rather, the facts alleged indicate that any delay in "reinstating" Plaintiff to his CFD position occurred because Plaintiff failed to timely provide the requested medical records.  (*Id*. at ¶¶ 39, 41-42, 45.)  Where a plaintiff alleges that the defendants' behavior is just as consistent with lawful conduct as with unlawful conduct, the plaintiff has failed to allege a plausible claim.  *See Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009) ("The behavior [the plaintiff] has alleged that the defendants engaged in is just as consistent with lawful conduct as it is with wrongdoing. Without more, [the plaintiff's] allegations are too vague to provide notice to defendants of the contours of his [] claim.").  Thus, in the absence of any facts suggesting that the City took an adverse employment action against Plaintiff on the basis of his national origin, Count II fails to state a claim and should be dismissed.  *See Joren*, 633 F.3d at 1146.

## IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR ACTIONABLE TITLE VII RETALIATION IN COUNT III.

Even if Plaintiff's Title VII retaliation claim were timely filed, he still fails to state a claim for actionable retaliation.  "To state a viable retaliation claim under [Title VII], [a] plaintiff must allege that he engaged in statutorily-protected activity, he was subjected to an adverse employment action and there is a causal link between the two." *Pettis v. L.A. Fitness*, No. 12-cv-2806, 2012 WL 5936296, at *2 (N.D. Ill. Nov. 27, 2012) (Guzman, J.) (dismissing claims of Title VII discrimination and retaliation for failure to state a claim), *aff'd* 508 F. App'x 565 (7th Cir. 2013).  The employment action must be objectively adverse:  "it does not protect an

13

employee from trivial harms, petty slights, nor minor annoyances." *Stephens v. Erickson*, 569

F.3d 779, 790 (7th Cir. 2009). For retaliation claims, adverse employment actions are those that

result in a materially adverse change in the terms, conditions or privileges of employment or are

actions that would "dissuade a reasonable worker from making or supporting a charge of

discrimination." *Burlington N. & Santa Fe. Ry. v. White*, 548 U.S. 53, 57 (2006); *accord Hobbs

v. City of Chicago*, 573 F.3d 454, 463 (7th Cir. 2009).

Even read in the light most favorable to Plaintiff, he pleads only trivial harms in Count

III. By alleging that his retaliation was based on his "report[ing] national origin harassment and

an intimidating, hostile and/or offensive work environment resulting from other members of

CFD to his superiors at CFD," (Dkt. 86 at ¶ 62) Plaintiff makes clear that his purported

retaliation was based on his reports to Bliss, a Lieutenant on Engine Company 55 in July and

August 2011 (*id*. at ¶¶ 6, 15-16). Plaintiff claims the City retaliated against Plaintiff for

reporting a hostile work environment by "preventing him from returning to work and placing

hurdles and challenges before him in his attempts to return work after a medical leave of

absence." (Dkt. 86, ¶ 63.) Hurdles and challenges, however, are not tangible employment

actions. (*See also supra* at III-C.) Furthermore, Plaintiff was not "prevented" from returning to

work between June 2011 and April 2012. (*Id*.) Before April 4, 2012, Plaintiff only had been

asked to provide additional medical records and schedule further testing. (Dkt. 86, ¶ 39.) Being

required to submit additional medical records or be medically evaluated in order to return to

work as a firefighter, a public safety position, after a 6-month medical leave of absence for

mental health reasons is at most a "mere inconvenience." *Oest*, 240 F.3d at 612. Indeed, the

Seventh Circuit has held that Fire Departments have the "obligation to the public to ensure that

its workforce is both mentally and physically capable of performing what is doubtless mentally

A058

and physically demanding work." *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 566 (7th

Cir. 2009) (affirming decision for Fire Department on discrimination and harassment claims

pursuant to Title VII, Section 1983 and the ADA).  As the City's actions in requesting additional

medical records/evaluation for Plaintiff's return to work (Dkt. 86, ¶¶ 39-42) is as consistent with

lawful conduct as it is with wrongdoing, Plaintiff has failed to state a plausible claim for Title

VII retaliation.  *See Brooks*, 578 F.3d at 581-82.  Plaintiff also fails to allege facts suggesting that

one could infer any causal link between his reports to Bliss and the subsequent actions of Dr.

Morcos and Tienda in the CFD Medical Section.  (Dkt. 86, ¶¶ 15-16, 39-42.)  For all of these

reasons, Plaintiff fails to state a claim of Title VII retaliation and Count III should be dismissed.

*See Pettis*, 2012 WL 5936296, at *2.

## V.    PLAINTIFF'S ADA CLAIM ALSO SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In Count V, Plaintiff purports to bring a claim for "Violation of the ADA – Failure to

Accommodate," but fails to allege sufficient facts to do so.  (Dkt. 86 ¶¶ 69-76.)  The elements of

a failure to accommodate claim include that "(1) [the plaintiff] is a qualified individual with a

disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably

accommodate the disability."  *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir.

2013).  To survive a motion to dismiss, a plaintiff may not simply make the conclusory statement

that he is disabled and that his disability substantially limits one or more major life activities.

*Jackson v. Northwestern Univ. School of Law*, No 10-cv-1986, 2010 WL 5174389, at *3 (N.D.

Ill. Dec. 15, 2010) (Dow, J.) (granting defendant's motion to dismiss the plaintiff's ADA claim).

Where a plaintiff "fail[s] to allege the nature of her disability as defined by the ADA, she fail[s]

to sufficiently allege facts that state a claim to relief that is plausible on its face."  *See, e.g.*,

*Phillips v. ITT Educ. Servs., Inc.*, No. 10-cv-2441, 2010 WL 4423953, at *4 (N.D. Ill. Oct. 25,

A059

2010) (St. Eve, J.) (granting motion to dismiss).   Because Plaintiff has failed to plead facts plausibly suggesting any of these required elements, Count V should be dismissed.

While Plaintiff concludes in the Third Amended Complaint that he was an individual with a "disability" in that he suffered from Post-Traumatic Stress Disorder ("PTSD") (Dkt. 86, ¶ 70), there are no factual allegations supporting his claim.  But conclusions are of no moment when attempting to state a claim.  *See McCauley*, 671 F.3d at 618.  Instead, the Third Amended Complaint mentions "possible post-traumatic stress disorder," but an actual diagnosis of "work-related anxiety."  (*Id*. at ¶¶ 25-26.)  Plaintiff fails to allege that his purported disability limited any major life activities.  Moreover, while Plaintiff also concludes that he "made repeated requests to return to work, thereby asking the City to make a reasonable accommodation to his disability," he fails to allege what accommodation he requested or to whom he made the alleged requests.  (Dkt. 86, ¶ 73.)  Without any facts suggesting that Plaintiff was disabled from his alleged PTSD, that he requested a reasonable accommodation in order to return to work or what accommodation he needed in order to return to work as a firefighter with PTSD, he has failed to state a claim under the ADA.  *See Jackson*, 2010 WL 5174389, at *3.  As conclusory allegations do not serve to advance the complaint over the plausibility threshold, Count V also should be dismissed for failure to state a claim under the ADA.

**VI.     PLAINTIFF FAILS TO STATE A SECTION 1983 CLAIM AGAINST BLISS.**

Plaintiff fails in his attempt to state an individual Section 1983 race discrimination/hostile work environment claim against Bliss in Count IV.  (Dkt. 86, ¶¶ 64-68.)  "To establish an individual capacity claim under [S]ection 1983 against a supervisory official, there must be a showing that the official was directly responsible for the improper conduct, and knowingly, willfully, or at least recklessly caused the alleged deprivation by [her] action or failure to act."  *McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 566 (7th Cir. 2000) (internal citations omitted)

16

(holding that the individual defendant was not personally liable under Section 1983 for discriminating against the plaintiff because of her race under either a disparate treatment or a hostile work environment theory), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).  The individual defendant must have violated Plaintiff's constitutional rights and have done so intentionally.  *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996).  Negligence by a defendant is insufficient to establish Section 1983 liability, as is a mere departure from an established practice.  *See Cooper v. City of Chicago Heights*, No. 09-cv-3452, 2011 WL 5104478, at *10 (N.D. Ill. Oct. 27, 2011) (Kendall, J.).

Plaintiff fails to state a claim against Bliss because he has not alleged that he suffered a constitutional deprivation.  Plaintiff alleges that Bliss was "aware that other employees were physically and verbally harassing [Plaintiff] because of his race and national origin, but did nothing to stop it." (Dkt. 86, ¶ 67.)  As discussed above, however, Plaintiff has failed to allege that he suffered severe or pervasive harassment actionable under Title VII, let alone that the harassment rose to the level of violating the constitution.  (*See supra* at III-B.)  Where there is no constitutional harassment to condone, the supervisor has no liability under Section 1983 for not addressing it.  *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (affirming judgment for supervising individual defendant where there was no underlying constitutional violation to condone.)  Accordingly, the Section 1983 action against Bliss should be dismissed.

**VII.  COUNTS VI (STATE LAW ASSAULT) AND VII (STATE LAW BATTERY) ARE PREEMPTED AND TIME-BARRED.**

**A.  The IWCA Preempts Plaintiff's State Law Claims.**

The Illinois Workers' Compensation Act (the "IWCA") preempts Plaintiff's state law claims of assault (Count VI) and battery (Count VII).  "Workplace assaults and batteries are generally compensable under the IWCA, and, therefore, not actionable at common law."

17

*Damato v. Jack Phelan Chevrolet Geo, Inc.,* 927 F. Supp. 283, 290-91 (N.D. Ill. 1996) (finding

that state law claim for battery was preempted); *see also Rodriguez v. Indust'l Comm'n*, 447

N.E.2d 186, 190-91 (7th Cir. 1983).  The exclusivity provision of the IWCA bars employees

from pursuing common law claims against their employers for injuries that were sustained

during the course of their employment.  *See* 820 ILCS 305/5(a); *Juarez v. Ameritech Mobile

Commns., Inc.*, 957 F.2d 317, 324 (7th Cir. 1992) (holding that state law claim based on the

misconduct of the plaintiff's superior was barred by IWCA).  To avoid the application of the

exclusivity provisions of the IWCA, a plaintiff must demonstrate that the alleged tortious acts are

not covered by the statute.  *Tessendorf v. Edward Hines Lumber Co.*, 393 F. Supp. 2d 686, 691-

92 (N.D. Ill. 2005) (dismissing the state law claims as preempted by, *inter alia*, the IWCA).  In

this case, the IWCA divests the Court of subject matter jurisdiction over Plaintiff's state law

claims, which are based entirely on the alleged intentional torts committed against Plaintiff by

Stefan.  Because Plaintiff does not (and cannot) allege that the City expressly authorized Stefan

to engage in the alleged conduct, the IWCA preempts Plaintiff's assault and battery claims.  *See

Tessendorf*, 393 F. Supp. 2d at 691-92.

      **B.**      **Plaintiff's Assault And Battery Claims Are Time-Barred.**

      Even if Plaintiff's state law assault and battery claims were not preempted, they should

still be dismissed as untimely pursuant to Section 8-101 of the Illinois Governmental and

Governmental Employees Tort Immunity Act (the "ITIA").  "Section 8-101 . . . provides that a

civil action sounding in tort asserted against a local entity or any of its employees must be

'commenced within one year from the date that the injury was received or the cause of action

accrued.'" *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004) (quoting 745 ILCS

10/8-101).  State law claims are not tolled by the filing of a discrimination charge with the

EEOC.  *Juarez*, 957 F.2d at 323.

A062

Plaintiff alleges for the first time state law claims for assault and battery in his Third

Amended Complaint, which was filed in August 2014.  (Dkt. 86, ¶¶ 77-90.)  According to the

Complaint, the only actions of Stefan toward Plaintiff occurred on September 13, 2011.  (Dkt. 86

¶¶ 18-19.)  As such, Plaintiff pleads himself out of court by alleging facts establishing that his

assault and battery claims accrued no later than September 2011, yet bringing his state law

claims for the first time in August 2014.  *See Renaud v. City of Chicago*, No. 12-cv-08758, 2013

WL 2242304, at *6 (N.D. Ill. May 21, 2013) (Aspen, J.) (granting Defendants' motion to dismiss

a state law tort claim as time-barred under Section 8-101)  For all of these reasons, Plaintiff's

state law claims should be dismissed.

## VIII.   PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES SHOULD BE STRICKEN.

Finally, even if this Court were to find Plaintiff's Third Amended Complaint sufficient to

withstand Defendants' motion to dismiss, the Court should strike his requests for punitive

damages in Counts III and V.  (Dkt. 86, ¶¶ 63(D), 76(D).)  Municipalities, such as the City, are

immune from punitive damages.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271

(1981); *Spanish Action Comm. v. City of Chicago*, 811 F.2d 1129, 1134 (7th Cir. 1987) (noting

that the City of Chicago as a municipality cannot be held liable for punitive damages).

Accordingly, Plaintiff's requests for punitive damages against the City should be stricken from

the Third Amended Complaint.

<u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that this Court dismiss

Plaintiff's Third Amended Complaint in its entirety, with prejudice, and strike his requests for

punitive damages against the City.

19

**DATED**:        September 8, 2014                 Respectfully submitted,

                                                    STEPHEN R. PATTON
                                                    Corporation Counsel of the City of Chicago

                                        By:     /s/ Alison D. Alvarez                 
                                                    ALISON D. ALVAREZ
                                                    MELANIE PATRICK NEELY
                                                    Assistants Corporation Counsel

City of Chicago Law Department
Employment Litigation Division
30 North LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-4939/5453

A064

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTO G. ALAMO, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Sharon Johnson Coleman |
| | ) | |
| vs. | ) | |
| | ) | No. 12-CV-04327 |
| THE CITY OF CHICAGO, CHARLIE | ) | |
| BLISS and PATRICK STEFAN, in their | ) | Magistrate Judge Sidney I. Schenkier |
| Individual Capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

NOW COMES the Plaintiff, ROBERTO G. ALAMO, by and through his
attorneys, Sullivan Hincks & Conway, and in response to the Defendants' Motion to
Dismiss the Plaintiff's Third Amended Complaint, states as follows:

**BACKGROUND**

The Plaintiff, Roberto G. Alamo ("Plaintiff"), filed the instant Third Amended
Complaint ("3rd Amended Complaint") on August 1, 2014. (Dkt. 86.) New counsel for
Plaintiff sought leave to file a motion for leave to amend Plaintiff's Complaint after
counsel had a sufficient period of time to review the entire case file. Plaintiff's
"unopposed motion for an extension of time to 8/1/2014 to file amended complaint."
(Dkt.83.) was granted by this Court as, "Plaintiff's unopposed motion for an extension of
time to 8/1/2014 to file amended complaint" which Plaintiff timely filed. (Dkt.85) On
August 28, 2014, Defendants filed an unopposed motion for an extension of time to
answer or otherwise plead to Plaintiff's 3rd Amended Complaint. (Dkt.89.) Defendants
did not object to the filing of Plaintiff's 3rd Amended Complaint at any time up to August
28, 2014. Defendants then filed a motion to dismiss (Dkt.92) and memorandum in

A065

support of their Motion on September 11, 2014. (Dkt.93.)

### STANDARDS OF REVIEW PURSUANT TO § 12(b)(6) & § 12(b)(1)

Defendants have moved to dismiss Plaintiff's 3rd Amended Complaint, citing Federal Rule of Civil Procedure §12(b)(6), asserting, for various reasons, that the Complaint fails to state a claim upon which relief can be granted. In addition, pursuant to §12(b)(1), Defendants allege that this Court lacks subject matter jurisdiction to adjudicate certain claims of the Plaintiff.

**A.      Standard for §12(b)(6) motions**

In order to survive a §12(b)(6) motion, a plaintiff is required to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]ourts must still approach motions under Rule 12(b)(6) by 'constru[ing] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor.'" *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009).

A 12(b)(6) motion does not test whether the plaintiff will ultimately prevail on its claim, but rather, whether the plaintiff has adequately stated a claim for relief. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). A complaint need not even state the correct legal theory to survive such a motion. *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011). It is enough that the facts as alleged could entitle the plaintiff to relief consistent with the allegations. *Bartholet v. Retschauer*, 953 F.2d 1073 (7th Cir. 1992).

**B.      Standard for §12(b)(1) motions**

When reviewing a motion to dismiss under §12(b)(1), the court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the

2

plaintiff. *Popnikolovski v. United States Dep't of Homeland Sec*., 726 F. Supp. 2d 953, 956 (N.D. Ill. 2010), *quoting*, *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008).

## ARGUMENT

### I.     PLAINTIFF'S NEW ALLEGATIONS WERE NOT UNDULY DELAYED.

Defendants initially claim that they would have objected to the filing of Plaintiff's 3rd Amended Complaint if they had seen it prior to filing. Defendants possessed Plaintiff's 3rd Amended Complaint for approximately 37 days before they raised an objection to its filing. Moreover, Defendants filed a motion for an extension of time to answer or otherwise plead a full 27 days after they received the 3rd Amended Complaint but did not raise an objection to its filing, therefore, Defendants' assertions that they would have objected to the 3rd Amended Complaint are without merit.

Defendants also argue that the 3rd Amended Complaint should be dismissed because of Plaintiff's undue delay in asserting six belated claims and that this delay prejudices Defendants as they renew written discovery. (Defendants' brief p.6). In addition, Defendants argue that the 3rd Amended Complaint will lead to a radically changed legal landscape after two years of litigation. Plaintiff respectfully disagrees. As will be established in this brief, Plaintiff's new claims are all proper under the law. Moreover, Plaintiff does not foresee anything more than discreet additional written discovery, perhaps related to Plaintiff's Americans With Disabilities Act ("ADA") Count V. Accordingly, Defendants' Motion to Dismiss Counts I-III and V-VII should be denied.

### II.    PLAINTIFF'S TITLE VII CLAIMS WERE TIMELY FILED AND EVEN IF NOT, THEY, ALONG WITH PLAINTIFF'S ADA CLAIM, RELATE BACK PURSUANT TO RULE 15 (c).

Defendants argue that Plaintiff's Title VII and ADA claims should be dismissed

A067

because of Plaintiff's alleged failure to file them within 90 days of receiving EEOC his right-to-sue. However, Plaintiff did file a Title VII claim asserting national origin discrimination within 90 days of receiving his right to sue letter when he filed his Second Amended Complaint ("2nd Amended Complaint")(Dkt.50) on July 18, 2013. Even if his Title VII national origin discrimination claims are found to be untimely, those claims, as well as his ADA claims, relate back to his 2nd Amended Complaint pursuant to Rule 15(c). Therefore, Defendants' Motion as to these counts should be denied.

### A. Plaintiff's National Origin Discrimination Allegations Were Timely Filed Within The 90 Days Required By The EEOC.

Plaintiff filed his 2nd Amended Complaint on July 18, 2013, a mere 75 days after receiving his EEOC right-to-sue, which included national origin discrimination allegations, and which was timely filed within the 90 days required by the EEOC. The 2nd Amended Complaint included a Count I partially titled, "Title VII-Race Discrimination." (Dkt.50 p.11.) That Count I, however, went on to allege the following:

> 46.     Alamo is a member of a protected class by race or national origin, specifically he is Latino;
>
> 48     Alamo suffered an adverse employment action in that he was verbally and physically harassed at work because of his race or national origin, and he has had hurdles and challenges placed before him in his attempts to return to work after a medical leave of absence because of his race or national origin.

(Dkt.50 ¶¶s 46 & 48.)

As such, Plaintiff timely filed a Title VII claim for national origin discrimination on July 18, 2013.

Generally, a case should not be dismissed because of inconsistencies between the original and amended complaint unless the circumstances are such that the court is required to fall back on the original complaint in the interest of justice. *Whitehouse v.*

A068

*Piazza*, 397 F.Supp.2d 935, 941(N.D. IL. 2005). To allow dismissals on this ground would defeat the purpose of allowing a plaintiff to amend; frustrate Rule 12(b)(6)'s requirement that all factual allegations be accepted as true; and complicate Rule 8(a)'s requirement that the pleadings only have to provide fair notice of the basis for plaintiff's claims. *Id*. In fact, it is not uncommon for a plaintiff to have inconsistencies within the body of one complaint or between complaints. *Id*. It is clear from a plain reading of Count I of Plaintiff's 2ⁿᵈ Amended Complaint that he was alleging national origin discrimination, and therefore the Defendants received fair notice under Rule 12(b)(6) of Plaintiff's national origin claims and this Court should deny Defendants' attempts to dismiss Counts I, II and III for failure to file within 90 days of receiving a right to sue.

**B. Plaintiff's National Origin Allegations And ADA Allegations Relate Back To Plaintiff's 2ⁿᵈ Amended Complaint Pursuant to Rule 15(c).**

Even if this Court determines that Plaintiff's Title VII national origin discrimination and ADA claims were untimely, these allegations relate back to Plaintiff's timely filed 2ⁿᵈ Amended Complaint pursuant to Rule 15(c). As stated by the United States Supreme Court in *Krupski v. Costa Crociere S. p.A.*, 130 S.Ct. 2485 (2010), the purpose of the relation back doctrine as contained in Rule 15(c) is to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits. *Krupski* 130 S.Ct. at 2494.

Under Rule 15 of the Federal Rules of Civil Procedure, an amendment to a complaint "relates back" to the date of the original complaint when "the law that provides the applicable statute of limitations allows relation back" and when "the amendment asserts a claim . . . that arose out of the . . . conduct, transaction, or occurrence set out…in

the original pleading. Fed.R.Civ.P. 15(c) (1) (A)-(B). Both Title VII and the ADA allow

relation back. *Donnelly v. Yellow Freight System, Inc*., 874 F.2d 402, 410 (7th Cir.1989);

*Smith v. Niles Township High School District 219*, 2006 U.S. Dist. LEXIS 12751, 38

(2006).[1] It is clear that Plaintiff's Title VII national origin discrimination and ADA

allegations arose out of the conduct, transaction, or occurrence set out in Plaintiff's

timely filed 2nd Amended Complaint. the factual allegations of the two complaints

confirm this. Each complaint involves Plaintiff's mistreatment as a result of his national

origin and the events before and after that treatment, as well as the Defendants'

subsequent failures to allow him to return to work following treatment for post-traumatic

stress disorder ("PTSD"). (Dkt.50; Dkt.86.) As such, Plaintiff's 3rd Amended Complaint

relates back to his 2nd Amended Complaint as to Counts I-III and Count V of the 3rd

Amended Complaint, and this Court should deny Defendants' Motion to Dismiss.

### III.    PLAINTIFF'S COUNT I AND II NATIONAL ORIGIN ALLEGATIONS ARE PROPERLY PLEAD CLAIMS FOR RELIEF.

Defendants argue that Plaintiff failed to establish actionable Title VII national

origin discrimination claims. Defendants' assert that Plaintiff: failed to bring actionable

allegations under the 300 day period required by the EEOC; failed to plead sufficient

severe or pervasive harassment, and failed to plead an actionable adverse employment

action. Each of these arguments falls short, however, as the Plaintiff has plead actionable

causes of action.

Rule 8(a)(2) requires a "short and plain statement of the claim," which must

contain a minimal level of factual detail, although that level is very minimal. *EEOC v.

Concentra Health Services, Inc.*, 496 F.3d 773, 779 (7th Cir. 2007). A complaint need

---

[1] This decision is attached hereto as Exhibit 1.

only be sufficiently detailed to, "give the defendant fair notice of what the…claim is and the grounds upon which it rests. *Id*. The intent of the liberal notice pleading system is to ensure that claims are determined on their merits rather than through missteps in pleading. *Id.* Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating the sufficiency of the complaint, [court] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610 (7th Cir. 2011). Plaintiff has satisfied these pleading requirements and has stated actionable claims for national origin discrimination, and this Court should deny Defendants' Motion to Dismiss counts I & II.

### A. Plaintiff's 3rd Amended Complaint Pleads Sufficient National Origin Discrimination Allegations Within The Proper Time Period.

Defendants' arguments that Plaintiff did not file his EEOC charge until April 4, 2012, and did not include any allegations after August 2011 is a confusing one. The time period for actionable Title VII national origin discrimination in this case is approximately June 9, 2011 until April 2, 2012. Plaintiff's 3rd Amended Complaint includes factual allegations as a result of national origin harassment that occurred in July and August of 2011(Dkt. 86 at ¶ 15), i.e., allegations that are properly within the period of time of Plaintiff's EEOC charge. Despite this, Defendants contend that "Plaintiff does not allege any national origin harassment at work after August 2011, yet he failed to file his charge until April 4, 2012." (Defendants' brief, p.9). The Plaintiff has filed actionable allegations under Title VII, and the allegations included which occurred prior to June 9, 2011, are properly plead and relevant background facts, and not grounds for dismissal.

**B. Plaintiff's Complaint Pleads Ample Severe Or Pervasive Conduct To Maintain An Action For Hostile Work Environment Under Title VII.**

The Defendants assert that the Plaintiff has failed to plead sufficient grounds for an actionable claim of national origin discrimination based on a hostile work environment under Title VII. The 3rd Amended Complaint, however, contains more than the sufficient facts necessary to properly maintain such an action. Therefore, this Court should reject Defendants' attempts to dismiss Counts I and II of the 3rd Amended Complaint.

To prove a hostile work environment claim, a plaintiff must show: (1) their work environment was both objectively and subjectively offensive; (2) the harassment was based on their membership in a protected class; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Scruggs v. Garst See Co*., 587 F.3d 832, 840 (7th Cir.2009).  The Defendants' maintain that the Plaintiff has not alleged sufficient grounds to prove the third element: severe or pervasive conduct.

The Plaintiff alleged that he informed Defendant Charlie Bliss ("Bliss") on numerous occasions, including in July, August and November of 2010, and April, July and August of 2011, of the harassment that he endured from his fellow firefighters, including, but not limited to, name-calling, derogatory and racist comments, including his national origin, such as calling Plaintiff a "spic" and a "fucking Puerto Rican," and that other firefighters used the term "Nigger" around the fire house. (Dkt. 86 ¶15.) In addition, Plaintiff alleged that he filed a harassment complaint with Bliss about the harassment he was experiencing, including, but not limited to, …, several incidents of co-workers stealing or throwing out Plaintiff's food at the firehouse. (Dkt. 86 ¶15.) Next was the September 13, 2011 incident which precipitated Plaintiff's medical leave. On that date Defendant Patrick Stefan ("Stefan") suddenly woke Plaintiff, yelled profanities at him,

8

A072

called him names, and said, among other things, "I don't like your kind, you better put in a transfer and get out of this firehouse because I don't want you here." (*Id.* at ¶18.) Stefan than began chest bumping Plaintiff, used more profanity and derogatory terms, and again threatened physical violence. *Id.* Not long later, Plaintiff encountered Stefan again, at which point Stefan pushed Plaintiff against a wall. (*Id.* at ¶19.) These allegations establish severe and pervasive actions on behalf of Defendants resulting in a hostile work environment for Plaintiff.

The cases cited by Defendants to argue that Plaintiff has not plead sufficient severe or pervasive acts are easily distinguished. In *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535 (7th Cir. 2002), the Seventh Circuit rejected the plaintiff's hostile work environment claim. First, the Seventh Circuit noted that many of the alleged actions were not directed at the plaintiff. *Id.* at 552. The *Peters* court then found that plaintiff only alleged three actions directed at him: 1) when a superior asked a Caucasian employee to carry money while plaintiff was also present to do so, 2) when the human resources director failed to say hello to plaintiff, and 3) when the defendant held diversity training interracial strife was revealed. *Id.* In this case, the Defendants' actions were directed at Plaintiff, and the actions against Plaintiff were clearly more severe or pervasive. Defendants cite *Benders v. Bellows*, 515 F.3d 757 (7th Cir. 2008) wherein the Seventh Circuit affirmed the dismissal of a hostile work environment claim. In *Benders*, however, the court found that plaintiff's hostile allegations were wholly conclusory and did not center on the plaintiff's sex but on a consensual sexual relationship she had with her employer's president. *Benders*, 515 F.3d at 768. In *Stone v. Bd. Of Trustees of N.Ill.*, 2014 WL 3845164, at *5 (N.D. Ill.Aug. 5, 2014)(Kapla, J.)(*attached to Defendants'*

9

A073

*brief)*, the female plaintiff alleges hostile work environment based only on a superior's sexual mistreatment of a male co-worker and because that superior asked her to scrub a toilet, both reasons were found insufficient.  In *Triplett v. Starbucks Coffee*, 2011 WL 3165576, at 4-5)*(attached to Defendants' brief)*, plaintiff's hostile work environment claim was rejected because it was based on one racially insensitive comment, an employer policy requiring employees to buy goods before they used the bathroom, and two racially based employment decisions.  None of these cases come close to rising to the level of the severe or pervasive actions alleged by Plaintiff here, and therefore this Court should reject Defendants' motion to dismiss Count I.

### C.  Plaintiff's Pleads An Actionable Adverse Employment Action.

Defendants argue that the Plaintiff has failed to allege that he suffered an adverse employment action based on his national origin.  This argument is flawed as it ignores specific allegations in the 3rd Amended Complaint and should therefore be denied.

The 7th Circuit defines adverse employment action broadly. *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits. *Id*. Plaintiff has asserted such an adverse employment action in his 3rd Amended Complaint. Plaintiff alleges a series of actions which culminated in his eventual removal from active employment status which resulted in loss of pay and benefits, amongst other things. This series of actions were: excessive detailing, prevention of his return to work, placement of hurdles and challenges in his attempts to return to work after a medical leave and removal from active employment

A074

status. (Dkt. 86, ¶¶s 44, 58-59 and 63.) These actions, or said another way, course of conduct, constitute an adverse employment action under Title VII and were directly attributable to Plaintiff's national origin.

The Defendants cite a number of cases which are easily distinguished. The Defendants cite the *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605 (7th Cir. 2000) case for the proposition that "detailing excessively," and having "hurdles and challenges placed before him in his attempts to return to work after a medical leave of absence" are not materially adverse employment actions. (Defendants' brief p.12.) In *Oest*, the Seventh Circuit concluded that neither negative performance evaluations nor oral or written reprimands, taken alone, were adverse employment actions. *Oest*, 240 F.3d at 613. More importantly, however, the *Oest* court concluded that, "even if the negative performance evaluations or reprimands cannot, standing alone, state a claim of discrimination, they can constitute relevant evidence of discrimination with respect to other employment actions that clearly are adverse employment actions under the statute. *Id*. The Defendants chose to only address part of Plaintiff's allegations here, when if the allegations are read as a whole, it is clear that Plaintiff has properly plead the existence of an adverse employment action.

The Defendants also cite *Oest* for their assertion that the simple act reassignment would be a "mere inconvenience," and is lawful conduct which cannot serve as the basis for a Title VII claim. Again the Defendants ignore the entirety of their actions in isolating one or two actions from a course of conduct. The Defendants actions in this case should not be isolated as they were not disjunctive, but part of a larger and coordinated course of conduct. Plaintiff alleges, amongst other things, that the hurdles imposed preventing him

from returning to work (including mental evaluations and records requests) were a direct result of and because of discrimination based on his national origin. It cannot be said that removal from active employment status resulting in loss of pay and benefits is a "mere inconvenience."

The Defendants also assert that the above actions are outside the scope of the EEOC charge because Plaintiff had not exhausted his medical lay-up time, so his pay, benefits and title were not changed at the time he filed his charge in April of 2012. Once again, Defendants actions, even before Plaintiff was put on unpaid status in July of 2012, were part of a concerted course of conduct. The Plaintiff filed his EEOC charge in April of 2012 and the EEOC investigated all of the facts associated with the Defendants' discriminatory actions based on Plaintiff's national origin. To suggest that the events which took place shortly after Plaintiff's April 2012 charge are not properly part of his charge is ridiculous. The Plaintiff's charge alleged the following: "I believe I have been discriminated because of my national origin, Puerto Rican, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended." (Dkt. 86, Ex. A) Even if this Court finds that Plaintiff's plead adverse employment actions are outside the scope of his EEOC charge as Defendants argue, the Defendants' own brief sets out the relevant law in this regard, noting that a plaintiff may proceed on a claim not explicitly set forth in the underlying charge only when the claim is "like or reasonably related to the EEOC charges, and the claim in the complaint reasonably could be expected to grow out of an EEOC investigation of the charge." (Defendants' brief, p.8, *citing*, *Cheek v. W.&S. Life Ins. Co*., 31 F.3d 497, 500 (7th Cir. 1994).

A076

Finally, Defendants argue that the Plaintiff fails to assert that his alleged adverse employment actions were instituted because of his national origin and that those allegations are just as consistent with lawful conduct as with unlawful conduct. Defendants' argument is fundamentally flawed and should be rejected. All of Defendants' actions related to the challenges and hurdles placed in front of Plaintiff preventing his return to work, and his eventual removal from paid status with resulting loss of not just pay but benefits, are attributable to Defendants' discrimination against Plaintiff on account of his national origin. Plaintiff's properly alleges all of these facts and circumstances and gives Defendants' notice. (Dkt. 86, ¶¶s 44, 58-59 and 63.) This was a course of conduct stemming from, continuing because of and culminating in further unlawful behavior. Plaintiff's allegations are clear, and therefore this Court should deny Defendants' motion to dismiss counts I and II.

## IV.    PLAINTIFF'S COUNT III FOR TITLE VII RETALIATION IS A PROPERLY PLEAD CLAIM FOR RELIEF.

Defendants' argue that Plaintiff's Count III fails to state a cause of action for Title VII retaliation. The Plaintiff, however, has plead all of the necessary facts for an actionable Title VII action for retaliation and this Court should deny Defendants' motion to dismiss Plaintiff's Count III.

To establish a claim for Title VII retaliation, a plaintiff must prove the following: (1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered an adverse action taken by the employer; and [3] there was a causal connection between the two. *Lewis*, 496 F.3d at 655. Defendants argue that the Plaintiff has failed to plead an objectively adverse employment action related to his protected Title VII activity.  The 7th Circuit broadly defines adverse employment action broadly.  *Lewis*, 496 F.3d at 653. For an

A077

employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits. *Id*. Plaintiff has asserted such an adverse employment event. Plaintiff alleges a series of actions which culminated in his eventual removal from active employment status which resulted in his losing pay and benefits amongst other things. This series of actions are: excessive detailing, prevention of his return to work, placement of hurdles and challenges in his attempts to return to work after a medical leave, eventual removal from active employment status. (Dkt. 86, ¶¶s 44, 58-59 and 63). These actions constitute adverse employment actions under Title VII.

The Defendants cite a number of cases which are distinguishable. Again, just as they did in section III-C of their brief, Defendants cite the *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605 (7th Cir. 2000) case for the proposition that "hurdles and challenges" are not tangible employment actions. (Defendants' brief p.14)  In *Oest*, the Seventh Circuit concluded that neither negative performance evaluations nor oral or written reprimands, taken alone, were adverse employment actions. *Oest*, 240 F.3d at 613. Moreover, the *Oest* court concluded that, "even if the negative performance evaluations or reprimands cannot, standing alone, state a claim of discrimination, they can constitute relevant evidence of discrimination with respect to other employment actions that clearly are adverse employment actions under the statute. *Id*.  Defendants only cite part of Plaintiff's allegations, but together they are adverse employment actions.

Again the Defendants cite *Oest* for their assertion that the simple acts of requiring additional medical records and requesting medical evaluations is a "mere inconvenience,"

A078

and lawful conduct which cannot serve as the basis for a Title VII claim. Again the Defendants ignore the totality of their actions and address but one or two of their actions. The Defendants also assert that the Seventh Circuit has ruled that Fire Departments have an obligation to the public to ensure that its workforce is both mentally and physically capable of performing. *Coffman v. Indianapolis Fire Dept*., 578 F.3d 559, 566 (7th Cir. 2009). Defendants' reliance upon *Coffman* is inapposite. In *Coffman*, the Plaintiff was referred for psychological treatment independent of her allegations of sexual harassment. *Id*. at 565. The Defendants actions here were not similarly independent of Plaintiff's allegations. Here the Plaintiff alleges that the hurdles imposed preventing him from returning to work (including mental evaluations and records requests) were a direct result of and in retaliation for his complaints about national origin discrimination. Therefore, it would be perverse for the Defendants to be able to avoid liability for their retaliatory actions simply by asserting that they have an obligation to protect the public from Plaintiff whose mental condition was caused by their own discriminatory actions.

For these reasons, this Court should deny the Defendants' Motion to Dismiss Count III of Plaintiff's 3rd Amended Complaint.

**V.    PLAINTIFF'S COUNT V PROPERLY PLEADS AN ADA CLAIM.**

Defendants' allege that Plaintiff has not plead sufficient grounds for an actionable ADA claim. Specifically, Defendants allege that Plaintiff's only concludes that he suffered from PTSD, did not specify how his PTSD limited his major life activities, and he did not specify what accommodation he sought from them, and therefore he did not allege sufficient facts to establish a sufficient cause of action under the ADA. Plaintiff,

however, alleged his disability, its effects and his requests for accommodation, and therefore Defendants' motion to dismiss Count V should be denied.

Again, Federal Rule of Procedure 8(a)(2) requires a "short and plain statement of the claim," which must contain a minimal level of factual detail, although that level is very minimal. *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 779 (7th Cir. 2007). A complaint need only be sufficiently detailed to, "give the defendant fair notice of what the…claim is and the grounds upon which it rests. *Id*. In order to establish a viable failure to accommodate claim under the ADA, a plaintiff must establish that: 1) he is qualified individual with a disability, 2) his employer was aware of the disability, and 3) his employer failed to reasonably accommodate that disability. *Reeves v. Jewel Food Stores, Inc*., 759 F.3d 698, 701 (7th Circuit 2014).

Plaintiff's 3rd Amended Complaint satisfies all of these elements. More specifically, Plaintiff alleges that he was treated for possible PTSD. (Dkt. 86, ¶¶s 17 &18). Plaintiff then alleges that he suffered from PTSD, not a conclusion but an ultimate fact. (Dkt. 86, ¶ 70). Plaintiff has sufficiently alleged the nature of his disability, and that his doctor put him on medical lay-up as a result of his condition. (*Id*., ¶27) Plaintiff has more than satisfied the minimal pleading requirements to give the Defendants notice of his ADA claims.[2] Finally, Plaintiff's repeated requests to return to work were his requested accommodation(s), and Defendants refused to meet him half way and engage in a flexible, interactive process to identify reasonable accommodations. *Reeves*, 759 F.3d at 701.

---

[2] Moreover, Defendants are in possession of Plaintiff's medical records which contain PTSD diagnoses resulting from the original battery and incidents in this case.

A080

The Defendants' reliance upon their cited ADA cases is misplaced. In *Jackson v. Northwestern Univ. School of Law* case, the plaintiff completely failed to both identify her purported disability and indicate what reasonable accommodations she requested. *Jackson v. Northwestern Univ. School of Law*, No.10-cv-1986, 2010 WL 51474389, at *3 (N.D.Ill. Dec, 15, 2010)(Dow, J.)(*attached to Defendants' brief*). Much of the same is true of the *Philips v. IIT Educ. Services, Inc.* case (*attached to Defendants' brief*) cited by the Defendants. In *Philips*, the plaintiff again completely failed to allege the nature of her disability. The Plaintiff has not only alleged the nature of his disability, PTSD, but he specified the effects of his disability and the reasonable accommodations he requested. Therefore, Defendants' Motion to Dismiss Count V should be denied.

**VI.    PLAINTIFF'S COUNT IV §1983 CLAIM IS PROPERLY PLEAD.**

The Defendants first appear to allege that Plaintiff has not plead a proper §1983 claim because he fails to allege an intentional but instead only a negligent deprivation of his constitutional rights. Then the Defendants argue that Plaintiff cannot maintain a proper §1983 claim because he did not plead a constitutional deprivation. The Defendants maintain that not only did Plaintiff fail to allege that he suffered a severe or pervasive harassment as required under Title VII or §1983, but that his allegations did not approach those necessary to maintain a §1983 claim. The Defendants are mistaken, however, as Plaintiff's §1983 claim is properly plead.

To state a claim under 42 U.S.C. §1983, a plaintiff must allege two elements: (1) the alleged conduct is committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution

A081

or the laws of the United States. *Doe v. Smith*, 470 F.3d 331, 338 (7th Cir. 2006),

*abrogated on other grounds* (*see Trentadue v. Redmon*, 619 F.3d 648(7th Cir.2010)).

      Plaintiff alleged that he informed Bliss on numerous occasions, including in July,

August and November of 2010, and April, July and August of 2011, of the harassment

that he endured from his fellow firefighters, including, but not limited to, name-calling,

derogatory and racist comments, including his national origin, such as calling Alamo a

"spic" and a "fucking Puerto Rican," and that other firefighters used the term "Nigger"

around the fire house. (Dkt. 86 ¶15). In addition, Plaintiff alleged that he filed a

harassment complaint with Bliss about the harassment he was experiencing with Engine

Company 55, including, but not limited to, …, several incidents of co-workers stealing or

throwing out Plaintiff's food at the firehouse. (Dkt. 86 ¶15). Bliss was aware of these

constitutional violations and did nothing, thus a §1983 claim is proper, and Defendants'

Motion to Dismiss Count IV should be denied.

## VII. PLAINTIFF WAS NOT SUBJECT TO THE WORKERS' COMPENSATION ACT AND THEREFORE HIS STATE LAW BATTERY AND ASSAULT CLAIMS ARE NOT PREEMPTED.

      Defendants' assertions that Plaintiff's state law claims for battery and assault are

preempted are based upon a false premises: that Plaintiff was subject to the Illinois

Workers' Compensation Act ("IWCA"). He was not. Under the definition of "employee"

in the IWCA, the statute reads, "A duly appointed member of a fire department in any

city, the population of which exceeds 500,000 according to the last federal or state

census, is an employee under this Act only with respect to claims brought under

paragraph (c) of Section 8. *See* 820 ILCS 305/1(b). §8(c) provides compensation, "For

any serious and permanent disfigurement to the hand, head, face, neck, and arm, leg

18

below the knee or the chest above the axillary line." §8(c) then goes on to provide, "A duly appointed member of a fire department in a city, the population of which exceeds 500,000 according to the last federal or State census, is eligible for compensation under this paragraph only where such serious and permanent disfigurement results from burns." This Court can take judicial notice, as it is a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, that as of the 2010 census, Chicago's population was 2,896,016 residents. FRE 201(b)(2); *See* 2010 U.S. Census, U.S. Census Bureau Public Law 94-171. Therefore, the Plaintiff, a Chicago firefighter, working in a city with a population over 500,000, who is not asserting a claim of assault and battery resulting in serious and permanent disfigurement from burns, was not subject to the IWCA in this case. As a result, Plaintiff's state law claims for assault and battery are not preempted.

## VIII.   PLAINTIFF'S STATE LAW BATTERY AND ASSAULT COUNTS ARE NOT TIME-BARRED BUT RELATE BACK TO PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO RULE 15(c).

Plaintiff's assault and battery claims arise out of an incident during which Stefan, a Chicago Fire Captain, battered and assaulted Plaintiff, a Chicago firefighter on September 13, 2011. Plaintiff filed his original two-count complaint within a year of the incident on June 4, 2012. (Dkt. 1.) On August 1, 2014, Plaintiff amended his complaint to add Counts VI and VII, alleging that Stefan and the City of Chicago are liable for Plaintiff's injuries. Defendants move to dismiss both counts arguing they are time-barred by the Illinois Local Government and Governmental Employees Tort Immunity Act ("ITIA"), which sets forth a one-year statute of limitations for claims like Plaintiff's Counts VI and VII. *See* 745 Ill. Comp. Stat. 10/8-101. Defendants argue that because

Counts VI and VII were alleged over a year after the initial assault and battery, they are untimely. Defendants' argument fails, however, because Plaintiff's Counts VI and VI relate back to the date of his original and timely June 4, 2012 complaint.

Again, under Rule 15 of the Federal Rules of Civil Procedure, an amendment to a complaint "relates back" to the date of the original complaint when "the law that provides the applicable statute of limitations allows relation back" and when "the amendment asserts a claim . . . that arose out the . . . occurrence set out…in the original pleading. Fed.R.Civ.P. 15(c) (1) (A)-(B). The ITIA allows for relation back. *Foster v. Unknown Cook Cnty. Deputy Sheriff*, 914 F.Supp.221, 224 (N.D.Ill. 1995). In addition, Stefan's assault and battery clearly arose out of the same incident alleged in Plaintiff's June 4, Complaint, and therefore Count VI and VII relate back pursuant to Rule 15(c) and Defendants' Motion to Dismiss these counts should be denied.

## CONCLUSION

For the reasons as set forth above, the Defendants' Motion to Dismiss pursuant to §§ 12(b)(6) and 12(b)(1) should be denied in its entirety. In the alternative, should this Court grant any portion of the Defendants' Motion to Dismiss, the Plaintiff hereby requests leave to amend his Complaint to address those issues.

Respectfully submitted,
ROBERTO ALAMO

By: /s/ Michael A. Faccenda
One of His Attorneys

Michael A. Faccenda
Sullivan Hincks & Conway
120 West 22nd Street, Suite 100
Oak Brook, IL 60523
Tel: (630)573-5021
michaelfaccenda@shlawfirm.com
ARDC # 6239317

A084

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTO G. ALAMO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  12 CV 04327 |
| | ) | |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| THE CITY OF CHICAGO, CHARLIE | ) | |
| BLISS and PATRICK STEFAN, in their | ) | |
| Individual Capacities, | ) | Magistrate Judge Sidney I. Schenkier |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendants City of Chicago (the "City"), Charlie Bliss, and Patrick Stefan (collectively, "Defendants"), by their attorney, Stephen R. Patton, Corporation Counsel for the City, submit the following reply memorandum of law in further support of their Motion to Dismiss Plaintiff's Third Amended Complaint.

## ARGUMENT

### I.    PLAINTIFF'S UNTIMELY TITLE VII NATIONAL ORIGIN AND ADA CLAIMS SHOULD BE DISMISSED.

#### A.    Plaintiff's National Origin and Race Claims Are Not Synonymous.

Notwithstanding Plaintiff's unexplained two-year delay in asserting his claims of national origin, Plaintiff fails to provide a cogent response to the City's argument that his national origin claims should be dismissed as untimely.  As an initial matter, Plaintiff does not dispute that the EEOC issued its right to sue letter on May 2, 2013.  (Dkt. 86, Third Amended Complaint ("TAC"), at ¶12).  It is also undisputed that the 90-day filing requirement operates as a statute of limitations.  *See Vitello v. Liturgy Training Pubs.*, 932 F.Supp. 1093, 1096 (N.D. Ill. 1996).

In his Response in Opposition to Defendants' Motion to Dismiss ("Pl. Resp."), Plaintiff contends that he timely filed his complaint within the 90-day time frame. However, Plaintiff's contention that he advanced his national origin claims in Count I of his Second Amended Complaint is contradicted by a plain reading of the Second Amended Complaint. (*Compare* Dkt. 86 *with* Dkt. 50.) Not only is Count I titled "Title VII – Race Discrimination," but the allegations in support thereof state that "Alamo is a member of a protected class by race or national origin, specifically he is Latino." Indeed, Latino is not a national origin – it is a racial classification. *See Padron*, 783 F.Supp.2d at 1048. It is well-settled that in order to allege a claim of national origin discrimination under Title VII, Plaintiff must allege that he was discriminated against because of his identified national origin, which is different than alleging discrimination based on his race. *See Padron v. Wal-Mart Stores, Inc.*, 783 F. Supp. 2d 1042, 1048-49 (N.D. Ill. 2011). In *Padron*, the court distinguished the classification of "Cuban" from "Hispanic" and explained that Cuban refers to a specific country of origin, not an ethnicity. *Id.* Consequently, the Court found that Plaintiff's self-identification as "Cuban" in his EEOC charge is not like or reasonably related to his self-identification of "Hispanic" in his complaint and dismissed the complaint allegations of race discrimination because they were outside of the scope of his charge. *Id.* at 1049.

Similarly, while Plaintiff's April 2012 EEOC charge alleged national origin discrimination based on his ethnicity of Puerto-Rican, Count II of his Second Amended Complaint alleged race discrimination based on his self-identification of Latino. (Dkt. 50, SAC at ¶ 46). Contrary to Plaintiff's contention, it was unclear from a reading of his Second Amended Complaint that he was alleging national origin discrimination. Without explanation, Plaintiff has waited until his Third Amended Complaint to allege national origin discrimination

2

A086

based on his Puerto Rican ethnic origin.  Allowing the untimely amendment to include a claim of national origin discrimination would frustrate the EEOC's purpose of filing a complaint within the 90-day jurisdictional time-frame while rewarding Plaintiff's undue delay.  Therefore, Counts I and II should be dismissed.

### B.    Plaintiff's Untimely ADA Claims Cannot Be Saved By Rule 15(c).

Although Plaintiff checked the box for disability discrimination in his April 2012 EEOC charge, it was not until his Third Amended Complaint filed in August 2014 that he first alleged disability discrimination under the ADA based on failure to accommodate. (Dkt. 86, TAC  at ¶ 70-76).  As an initial matter, Plaintiff has not cited any case law that would allow the amendment to include an ADA failure to accommodate claim over two years after the 90-day jurisdictional time limit.  Instead, Plaintiff relies generally on Federal Rule of Civil Procedure 15(c) for his contention that his untimely ADA claims of disability discrimination based on a failure to accommodate arose out of the same conduct, transaction or occurrence as his race claims under Title VII and Section 1983.   (Pl. Resp., p. 5-6).  However, Plaintiff's contention is without merit.

While Rule 15(c) allows for the relation back of amendments to the original pleading where they arise out of the same "conduct, transaction or occurrence," the original pleading must have provided the defendant with sufficient notice of the operative facts to investigate. Fed.R.Civ.P. 15(c)(1)(B).  *See King v. City of Chicago*, No. 04 CV 7796, 2006 WL 1120447, at *3 (N.D. Ill. Apr. 26, 2006)(Manning, J.), attached hereto as Exhibit A.  Here, Plaintiff has given Defendants no hint or suggestion in his Second Amended Complaint (or those that preceded it) that he was seeking to bring a disability claim under the ADA.  Indeed, his previous complaint iterations alleged only race discrimination culminating from an incident, which was alleged to

3

have occurred in September 2011.  (Dkt. 50, SAC at ¶ 14-24).  Plaintiff's Second Amended

Complaint also alleged that he was off work due to a medical leave following the September

2011 incident. (*Id*. ¶ 26).  However, there is no allegation in his Second Amended Complaint that

would put Defendants on notice that he suffered from an ADA-covered disability, and there is

certainly no allegation to suggest that his request to return to work full duty from an approved

medical leave of absence were requests for a reasonable accommodation under the ADA.  (Dkt.

50, SAC at ¶ 26).  Thus, Count V does not merely add an additional legal theory based on

conduct previously alleged.[1]   Because Plaintiff's Third Amended Complaint allegations of ADA

failure to accommodate do not relate back to any allegation in his Second Amended Complaint,

Count V of Plaintiff's Third Amended Complaint must be dismissed.

## II.   PLAINTIFF FAILS TO PLEAD ACTIONABLE TITLE VII NATIONAL ORIGIN DISCRIMINATION IN COUNTS I AND II.

### A. Plaintiff Does Not Plead Severe Or Pervasive Harassment to Support a Claim of National Origin Hostile Work Environment.

Because not all harassment is actionable under Title VII, Plaintiff must allege harassment

that is sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment.  *Pryor v. Seyfarth, Shaw*, 212 F.3d 976, 978 (7th Cir.

2000).  Courts look to "the severity of the allegedly discriminatory conduct, its frequency,

whether it is physically threatening or humiliating or merely offensive, and whether it

unreasonably interferes with an employee's work performance.  Offhand comments, isolated

---

[1] Plaintiff relies on *Smith v. Niles Township High School District 219, 2006 U.S. Dist. LEXIS 12751, *31 (attached to Plaintiff's response)* for the broad proposition that the ADA allows relation back of amendments to complaints. However, *Smith* is wholly distinguishable from the instant case.  First, *Smith* is a motion for summary judgment opinion, where evidence was considered in the court's decision to deny, in part, summary judgment.  Additionally, in *Smith*, plaintiff asserted new allegations of ADA failure to accommodate at deposition based on her existing complaint allegation of ADA failure to accommodate, which was also asserted in her EEOC charge.  The court found that the new failure to accommodate allegation was related to her existing failure to accommodate claim.  Unlike the instant case, the *Smith* plaintiff was not attempting to add new factual allegations and a new legal theory.

A088

incidents, and simple teasing do not rise to the level of conduct that alters the terms and

conditions of employment." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009).

Plaintiff attempts to support his claim of hostile work environment with the allegation

that he *informed* Bliss of co-worker "harassment" in July and August 2011 without any reference

to the dates the alleged harassment occurred.  (Dkt. 86, TAC at ¶ 15).  Even if the alleged

instances of "harassment" did occur in July and August 2011, they are insufficient to support a

claim of severe and pervasive national origin harassment.  Plaintiff does not dispute that the only

two comments that arguably implicate his national origin were alleged to be made by his

unidentified fellow firefighters when they called him a "spic" and "fucking Puerto Rican" at an

unidentified time.  (*Id*. at ¶ 15.)[2]  Although "simply calling someone of Puerto Rican descent a

'Puerto Rican' is not a racial epithet."  *Hernandez v. Forest Preserve Dist. of Cook Cnty.*, No. 08

CV 5731, 2011 WL 4398136, at * 6 (N.D. Ill., Sept. 21, 2011) (finding no hostile work

environment where the events described by the plaintiff were sporadic, isolated, and, at worst,

rude and offensive).  Moreover, evidence of a supervisor's occasional or sporadic use of a slur

directed at an employees' race, ethnicity, or national origin generally is not enough to support a

claim under Title VII.  *Nazaire v. Trans World Airlines, Inc.*, 807 F.2d 1372, 1380 (7th Cir.

1986).  Here, Plaintiff has not alleged that any supervisors used any arguably offensive terms or

that these comments were made repeatedly throughout his tenure at the Chicago Fire Department

("CFD").  Thus, without factual allegations suggesting the pervasiveness or severity of the

---

[2] Plaintiff does not allege that the term "Nigger" was directed to him or that it was used by a supervisor.
(Dkt. 86, ¶ 15.)  *See Peters*, 307 F.3d at 552 (affirming finding of no hostile work environment where, in
part, the plaintiff complained of "second-hand" harassment by a co-worker, including the use of the word
"nigger" by a co-worker).  Additionally, Plaintiff does not allege that he was "excessively detailed" or
that his food was stolen because of his Puerto Rican national origin.  (Dkt. 86, ¶ 16.)  And, the incident
involving Firefighter Dan Sheahan occurred outside of the actionable time period, in March 2011.  (*Id*.)
Finally, the alleged comment made by Defendant Patrick Stefan to Plaintiff when he said "I don't like
your kind…" does not implicate Plaintiff's Puerto Rican national origin and is not a racial epithet,
particularly when the context in which the comment was made is considered.

A089

identified harassment, Plaintiff's national origin - hostile work environment claim should be dismissed.  *See Triplett v. Starbucks Coffee*, No. 10 CV 5215, 2011 WL 3165576, at *4-5 (N.D. Ill. July 26, 2014)(Kendall, J).

    **B.**    **Plaintiff Does Not Plead An Actionable Adverse Employment Action.**

    Plaintiff's failure to plead an adverse action dooms Count II.  To survive a motion to dismiss on the basis of national origin discrimination, the plaintiff needs to allege that the employer instituted an adverse employment action against him on the basis of his national origin. *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011) (affirming dismissal of, *inter alia*, gender discrimination claim where the allegations did not suggest that gender motivated any of the purported adverse actions).   "Not everything that makes an employee unhappy is an actionable adverse employment action."  *Smart v. Ball State Univ*., 89 F.3d 437, 441 (7th Cir. 1996).  For discrimination claims, an employment action is materially adverse if there is a "significant change in the claimant's employment status, such as hiring, discharge, denial of promotion, reassignment to a position with significantly different job responsibilities, or an action that causes a substantial change in benefits."  *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004).  The harm suffered by a plaintiff must be an economic injury and/or materially alter the terms of employment in order to constitute an adverse employment action. *Markel v. Bd. of Regents*, 276 F.3d 906, 911 (7th Cir. 2002).

    In Plaintiff's response, he contends that his actionable adverse actions are as follows: "excessive detailing," "prevention of his return to work," "placement of hurdles and challenges in his return to work after a medical leave...."  (Pl. Resp., p. 10-11). Plaintiff's claim that he was "detailed excessively" is not an adverse action, as it is not alleged to have occurred because of Plaintiff's Puerto Rican national origin.  (Dkt. 86, TAC ¶ 16.)  Moreover, it is not alleged to have

A090

resulted in economic injury or materially altered the terms of Plaintiff's employment.  (*Id.*)

Since a brief assignment to a different location would not be a materially adverse employment

action, surely Plaintiff's "excessive" detailing to other locations as a CFD firefighter would not

constitute an adverse employment action.  *Oest v. Ill. Dept. of Corrs.*, 240 F.3d 605, 612 (7th Cir.

2001); *see also Smart*, 89 F.3d at 441.

  Likewise, Plaintiff's claim that "he has had hurdles and challenges placed before him in

his attempts to return to work after a medical leave of absence" also fails to qualify as a

materially adverse employment action.  (Dkt. 86, TAC ¶ 58.)   As an initial matter, Plaintiff's

allegation that he was "prevented" from returning to work and his allegation that "hurdles and

challenges" were placed before him in his attempts to return to work are inherently inconsistent.

Notwithstanding the inconsistency, Plaintiff's conclusory allegations of "hurdles and challenges"

in returning to work are not adverse actions because undefined "hurdles and challenges" are not

tangible adverse employment actions, as there has been no allegation that those hurdles and

challenges changed his pay, benefits or title.  (*Id.* at ¶ 58.)  Moreover, Plaintiff  was returned to

work and reinstated as a firefighter with the same pay, benefits and title as he had prior to his

paid medical leave of absence.  (*Id.* at ¶ 45.)

  Plaintiff's Third Amended Complaint also fails to suggest that Plaintiff's "challenges and

hurdles" were instituted *because of* Plaintiff's national origin (even assuming that they could be

considered a materially adverse employment action, which they cannot).  Rather, the facts

suggest that any delay in "reinstating" Plaintiff to his firefighter position occurred because

Plaintiff failed to timely provide the requested medical records.  (*Id.* at ¶¶ 39, 41-42, 45.)  Where

a plaintiff alleges that the defendants' behavior is just as consistent with lawful conduct as with

unlawful conduct, the plaintiff has failed to allege a plausible claim.  *See Brooks v. Ross*, 578

A091

F.3d 574, 581-82 (7th Cir. 2009) ("The behavior [the plaintiff] has alleged that the defendants

engaged in is just as consistent with lawful conduct as it is with wrongdoing. Without more, [the

plaintiff's] allegations are too vague to provide notice to defendants of the contours of his []

claim."). Thus, in the absence of any facts suggesting that the City took an adverse employment

action against Plaintiff on the basis of his national origin, Count II fails to state a claim and

should be dismissed. *See Joren*, 633 F.3d at 1146.

### C. Plaintiff Does Not Dispute That The Actionable Time-Period For His Title VII National Origin Claims Is June 2011 To April 2012.

Even if Plaintiff sufficiently stated a claim of national origin harassment based on a

hostile work environment, he cannot dispute that his allegations that occurred prior to June 9,

2011, or that exceed the scope of his administrative charge, are not actionable. In Illinois, a

complainant must file a charge with the Equal Employment Opportunity Commission ("EEOC")

within 300 days of the alleged discriminatory act. *See Doe v. Oberweis Dairy*, 456 F.3d 704,

708 (7th Cir. 2006). A plaintiff may proceed on a claim not explicitly set forth in the underlying

charge only when the claim is "like or reasonably related to the EEOC charges, and the claim in

the complaint reasonably could be expected to grow out of an EEOC investigation of the

charge." *See Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002)

(internal punctuation marks and citation omitted). A plaintiff asserting a hostile work

environment claim must file a charge "as soon as the harassment becomes sufficiently palpable

that a reasonable person would realize he had a substantial claim under Title VII." *Shanoff v. Ill.*

*Dep't of Human Servs.*, 258 F.3d 696, 703 (7th Cir. 2001).

Here, any allegations occurring prior to June 9, 2011, which support Count I of his Third

Amended Complaint are outside of the statutory time frame and are, therefore, not actionable.

(Dkt. 86, TAC at ¶ 51). *See Shanoff*, 258 F.3d at 703. Specifically, Plaintiff's claims that he was

harassed in 2010 and 2011 are time-barred to the extent they predated June 2011.  Likewise,

Plaintiff's allegations that he informed Bliss of harassment in July, August and November 2010

and April 2011 should also be dismissed as time-barred.  Plaintiff has not claimed any incidents

of harassment after June 2011, other than the September 2011 incident with Defendant Stefan.

Accordingly, the court should dismiss any allegations that predate June 2011 as untimely and not

consider those untimely allegations to support Plaintiff's claim of Title VII national origin

harassment.

**III.    PLAINTIFF FAILS TO STATE A CLAIM FOR TITLE VII RETALIATION**.

Like his Title VII national origin claims, Plaintiff fails to state a claim for actionable

retaliation.  "To state a viable retaliation claim under [Title VII], [a] plaintiff must allege that he

engaged in statutorily-protected activity, he was subjected to an adverse employment action and

there is a causal link between the two."  *Pettis v. L.A. Fitness*, No. 12-cv-2806, 2012 WL

5936296, at *2 (N.D. Ill. Nov. 27, 2012) (Guzman, J.) (dismissing claims of Title VII

discrimination and retaliation for failure to state a claim), *aff'd* 508 F. App'x 565 (7th Cir. 2013).

The employment action must be objectively adverse:  "it does not protect an employee from

trivial harms, petty slights, nor minor annoyances."  *Stephens v. Erickson*, 569 F.3d 779, 790 (7th

Cir. 2009).  For retaliation claims, adverse employment actions are those that result in a

materially adverse change in the terms, conditions or privileges of employment or are actions

that would "dissuade a reasonable worker from making or supporting a charge of

discrimination."  *Burlington N. & Santa Fe. Ry. v. White*, 548 U.S. 53, 57 (2006); *see also Hobbs*

*v. City of Chicago*, 573 F.3d 454, 463 (7th Cir. 2009).

Even read in the light most favorable to Plaintiff, he pleads only trivial harms in Count

III.  By alleging that his retaliation was based on his "report[ing] national origin harassment and

A093

an intimidating, hostile and/or offensive work environment resulting from other members of

CFD to his superiors at CFD," (Dkt. 86, TAC ¶ 62) Plaintiff makes clear that his purported

retaliation was based on his reports to Bliss, a Lieutenant on Engine Company 55 in July and

August 2011 (*id.* at ¶¶ 6, 15-16).  Plaintiff claims that the City retaliated against him for

reporting a hostile work environment by "preventing him from returning to work and placing

hurdles and challenges before him in his attempts to return to work after a medical leave of

absence."  (Dkt. 86, TAC ¶ 63.)  As explained above, "hurdles and challenges" are not tangible

employment actions.  (*See also supra* at III-C.)  Furthermore, Plaintiff was not "prevented" from

returning to work between June 2011 and April 2012, as he concedes that he was returned to

work after he provided the documentation requested by the CFD.  (*Id.*)  Before April 4, 2012,

Plaintiff only had been asked to provide additional medical records and schedule further testing.

(Dkt. 86, TAC ¶ 39.)  Being required to submit additional medical records or be medically

evaluated in order to return to work as a firefighter, a public safety position, after a 6-month

medical leave of absence for mental health reasons is at most a "mere inconvenience." *Oest*, 240

F.3d at 612.  Indeed, the Seventh Circuit has held that Fire Departments have the "obligation to

the public to ensure that its workforce is both mentally and physically capable of performing

what is doubtless mentally and physically demanding work." *Coffman v. Indianapolis Fire

Dep't*, 578 F.3d 559, 566 (7th Cir. 2009) (affirming decision for Fire Department on

discrimination and harassment claims pursuant to Title VII, Section 1983 and the ADA).  As the

City's actions in requesting additional medical records/evaluation for Plaintiff's return to work

(Dkt. 86, TAC ¶¶ 39-42) is as consistent with lawful conduct as it is with wrongdoing, Plaintiff

has failed to state a plausible claim for Title VII retaliation.  *See Brooks*, 578 F.3d at 581-82.

A094

Moreover, Plaintiff fails to allege facts suggesting that one could infer any causal link between his alleged reports to Bliss in 2010-2011 and the subsequent independent actions of Dr. Morcos and Tienda in the CFD Medical Section, which began to occur in March 2012, some three years later. (Dkt. 86, TAC ¶¶ 15-16, 39-42.) For all of these reasons, Plaintiff fails to state a claim of Title VII retaliation and Count III should be dismissed. *See Pettis*, 2012 WL 5936296, at *2.

**IV**.     **PLAINTIFF HAS NOT STATED A CLAIM OF ADA DISCRIMINATION**.

Plaintiff fails to allege sufficient facts to state a claim for ADA Discrimination – Failure to Accommodate. (Dkt. 86 ¶¶ 69-76.) To allege a failure to accommodate claim, a plaintiff must allege facts suggesting that "(1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability." *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013). To survive a motion to dismiss, a plaintiff may not simply make the conclusory statement that he is disabled and that his disability substantially limits one or more major life activities. *Jackson v. Northwestern Univ. School of Law*, No 10-CV-1986, 2010 WL 5174389, at *3 (N.D. Ill. Dec. 15, 2010) (Dow, J.) (granting defendant's motion to dismiss the plaintiff's ADA claim). Where a plaintiff "fail[s] to allege the nature of her disability as defined by the ADA, she fail[s] to sufficiently allege facts that state a claim to relief that is plausible on its face." *See, e.g.*, *Phillips v. ITT Educ. Servs., Inc.*, No. 10-CV-2441, 2010 WL 4423953, at *4 (N.D. Ill. Oct. 25, 2010) (St. Eve, J.) (granting motion to dismiss). Because Plaintiff has failed to plead facts plausibly suggesting any of these required elements, Count V should be dismissed.

In his Response, Plaintiff relies on his conclusory allegation in the Third Amended Complaint that he was "treated for possible Post-Traumatic Stress Disorder ("PTSD")" to

A095

support his claim for ADA discrimination .  (Pl. Resp., p. 16)(Dkt. 86, TAC ¶ 70).  However, there are no factual allegations supporting his claim and conclusions are of no moment when attempting to state a claim.  *See McCauley*, 671 F.3d at 618.  Nor has Plaintiff reconciled the inconsistency in the Third Amended Complaint, which mentions "possible post-traumatic stress disorder," but references an actual diagnosis of "work-related anxiety."  (TAC ¶¶ 25-26.) Importantly, while Plaintiff also concludes for the first time in his Third Amended Complaint that he "made repeated requests to return to work, thereby asking the City to make a reasonable accommodation to his disability," he fails to allege what accommodation he requested or to whom he made the alleged requests.  (Dkt. 86, ¶ 73.)  Without any facts suggesting that Plaintiff was disabled from his "possible PTSD," that he requested a reasonable accommodation in order to return to work or what accommodation he needed in order to return to work as a firefighter with PTSD, he has failed to state a claim under the ADA.  *See Jackson*, 2010 WL 5174389, at *3.  Defendants are not required to speculate as to the nature of Plaintiff's ADA claim.  As conclusory allegations do not serve to advance the complaint over the plausibility threshold, Count V also should be dismissed for failure to state a claim under the ADA.

**V.    PLAINTIFF FAILS TO STATE A SECTION 1983 CLAIM AGAINST BLISS.**

Plaintiff fails to state a Section 1983 claim against Bliss because he has not alleged that he suffered a constitutional deprivation.  Plaintiff alleges that Bliss was "aware that other employees were physically and verbally harassing [Plaintiff] because of his race and national origin, but did nothing to stop it."  (Dkt. 86, TAC ¶ 67.)  As discussed above, however, Plaintiff has failed to allege that he suffered severe or pervasive harassment actionable under Title VII, let alone that the harassment rose to the level of violating the constitution.  (*See supra* at II-B.) Plaintiff's sole allegation that he notified Bliss of comments directed to him by unknown

12

A096

firefighters at some unspecified point in his CFD career does not trigger a constitutional violation under Section 1983.  (Dkt. 86, TAC ¶ 67.)  Nor is there a constitutional right to be free from work detailing and disposal of leftover food by co-workers.  (*Id*. ¶ 16).  Where there is no constitutional harassment to condone, the supervisor has no liability under Section 1983 for not addressing it.  *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (affirming judgment for supervising individual defendant where there was no underlying constitutional violation to condone.)  Accordingly, the Section 1983 action against Bliss should be dismissed.

## VI.    PLAINTIFF'S UNTIMELY STATE LAW ASSAULT AND BATTERY CLAIMS IN COUNTS VI AND VIII SHOULD BE DISMISSED.

### A.    The IWCA Preempts Plaintiff's State Law Claims.

Contrary to Plaintiff's contention, the Illinois Workers' Compensation Act (the "IWCA") preempts Plaintiff's state law claims of assault and battery.  Plaintiff does not dispute that his claim against Stefan for assault and battery is a workplace injury that would be generally compensable under the IWCA and is, therefore, not actionable at common law.  *Damato v. Jack Phelan Chevrolet Geo, Inc.,* 927 F. Supp. 283, 290-91 (N.D. Ill. 1996) (finding that state law claim for battery was preempted).  Nor does Plaintiff dispute that the exclusivity provision of the IWCA bars employees from pursuing common law claims against their employers for injuries that were sustained during the course of their employment.  *See* 820 ILCS 305/5(a); *Juarez v. Ameritech Mobile Commns., Inc.,* 957 F.2d 317, 324 (7th Cir. 1992) (holding that state law claim based on the misconduct of the plaintiff's superior was barred by IWCA).  However, Plaintiff contends that as a firefighter, he is subject to the IWCA only with respect to claims brought under Section 8(c) of the Act.  While Section 8(c) of the Act carves out a provision for compensation of firefighters for "serious and permanent disfigurement results from burns," it does not specifically exclude a firefighter from receiving compensation from other torts,

13

including but not limited to assault and battery. *Id.* Indeed, Section 8 generally covers "the amount of compensation which shall be paid to the employee for an accidental injury not resulting in death." *See* 820 ILCS 305/11.

Here, it is undisputed that Plaintiff's state law claims are based entirely on the alleged intentional torts committed against Plaintiff by Stefan during the course of his City employment. The Illinois Supreme Court held that intentional torts are considered "accidental" under the IWCA because, from the employee and employer's point of view, the injury was unexpected and forseeable. *See Meerbrey v. Marshall Field and Co., Inc.,* 139 Ill.2d 455, 462 (1990)(finding that the battery count was preempted by the IWCA where supervisor was alleged to commit battery). Because Plaintiff has not alleged that the City expressly authorized Stefan to engage in the alleged conduct, the IWCA preempts Plaintiff's assault and battery claims. *See Tessendorf*, 393 F. Supp. 2d at 691-92.

### B.    Plaintiff's Assault And Battery Claims Against Stefan Are Time-Barred.

Even if Plaintiff's state law assault and battery claims were not preempted, they should still be dismissed as untimely pursuant to Section 8-101 of the Illinois Governmental and Governmental Employees Tort Immunity Act (the "ITIA"). "Section 8-101 . . . provides that a civil action sounding in tort asserted against a local entity or any of its employees must be 'commenced within one year from the date that the injury was received or the cause of action accrued.'" *Ferguson v. City of Chicago*, 820 N.E.2d 455, 459 (Ill. 2004) (quoting 745 ILCS 10/8-101). State law claims are not tolled by the filing of a discrimination charge with the EEOC. *Juarez*, 957 F.2d at 323.

Once again, Plaintiff relies on Rule 15 (c) in an effort to save his untimely claims that he inexplicably neglected to file earlier in the litigation. Plaintiff does not dispute that he has

14

alleged for the first time state law claims for assault and battery in his Third Amended

Complaint, which was filed in August 2014. (Dkt. 86, ¶¶ 77-90.) According to the Third

Amended Complaint, the only actions of Stefan toward Plaintiff occurred on September 13,

2011. (Dkt. 86 ¶¶ 18-19.) Those actions, however, do not relate back to Plaintiff's claims of

Title VII and Section 1983 race discrimination.   Indeed, the assault and battery allegation

against Stefan involves a discrete event in 2011, where the other allegations in the Second

Amended Complaint involve allegations against four other individual defendants spanning a time

period of three years beginning in 2009. Thus, Stefan was not placed on notice as to the

allegations of assault and battery against him. *See King v. City of Chicago*, 2006 WL 1120447,

at *3. Because Rule 15(c) cannot save his untimely claims, Plaintiff pleads himself out of court

by alleging facts establishing that his assault and battery claims accrued no later than September

2011. *See Renaud v. City of Chicag*o, No. 12-cv-08758, 2013 WL 2242304, at *6 (N.D. Ill. May

21, 2013) (Aspen, J.) (granting Defendants' motion to dismiss a state law tort claim as time-

barred under Section 8-101). For all of these reasons, Plaintiff's state law claims should be

dismissed.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court dismiss

Plaintiff's Third Amended Complaint in its entirety with prejudice.

**DATED**:         November 7, 2014                  Respectfully submitted,

                                                     STEPHEN R. PATTON
                                                     Corporation Counsel of the City of Chicago

                                         By:    *s/ Melanie Patrick Neely*
                                                     MELANIE PATRICK NEELY
                                                     Assistant Corporation Counsel

A099

City of Chicago Law Department
Employment Litigation Division
30 North LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-5453

A100

☑

# CERTIFICATE OF SERVICE
### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on ___April 27, 2016___, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ ___Douglas B. Harper_____

☐

# CERTIFICATE OF SERVICE
### Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                          address:

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

s/_____